## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA

FILED BY_____ D.C.

DEC 0 4 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

**JAMES BUCKMAN  and
MAURICE SYMONETTE**

Case No. 19-cv-24184

*Amended*

**COMPLAINT FOR:**

            **Plaintiff,**

**vs.**

1.  **QUIET TITLE**

2.  **SLANDER OF TITLE**

**LANCASTER MORTGAGE
CO.;DEUTSCHE BANK NATIONAL
TRUST CO. AS TRUSTEE UNDER THE
POOLING AND SERVICING
AGREEMENT SERIES RAST 2006-A8
(CSFB), C/O OCWEN ATTN: Vault Dept.
5720 Premier Park Drive, West Palm
Beach,FL.,33407,SECURITY
EXCHANGE COMMISSION (SEC), U.S.
DEPARTMENT OF THE TREASURY/1.
IRS.**

3.  **BANK VIOLATED 30 DAY NOTICE TO
    SALE NOTE IN VIOLATION OF FLORIDA
    STAT. 559.715**

4.  **UNJUST ENRICHMENT**

5.  **VIOLATION OF RESPA 12 U.S.C 2605**

6.  **VIOLATION FL. STAT. 697.10 NO
    CONTRACT**

7.  **FRAUD &  CONCEALMENT**

            **Defendants.**

8.  **VIOLATON OF FLORIDA STAT.
    45.031(8) PROPERTY SOLD AT
    FORECLOSURE PRICE SO
    LOW THAT IT SHOCKS THE
    CONSCIENCE**

9.  **VIOLATION OF TIMELY
    ASSIGNMENT**

10. **BANK NO CONSIDERATION MONEY
    MUST BE GIVEN TO ASSIGN NOT**

11. **ELEVENTH CAUSE OF ACTION VIOLATION
    GAAP FASB FAS 140 RULE AS
    GOVERENED BY THE SEC AND THE US
    DEPARTMENT OF THE TREASURY/ (IRS)**

## AMENDED COMPLAINT VERIFIED PETITION FOR DECLARATORY RELIEF AND JUDGMENT
## AND INJUNCTIVE RELIEF AGAINST DEFENDANT DEUTSCHE BANK N.A. TRUST TO QUIET TITLE PURSUANT TO FLORIDA STATUTES CHAPTER 65; AND MOTION FOR TEMPORARY RESTRAINING ORDER AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

COMES NOW the Plaintiff's MAURICE SYMONETTE AND JAMES BUCKMAN, who are third party persons to QUITE TITLE **AMENDED COMPLAINT VERIFIED PETITION FOR DECLARATORY RELIEF AND JUDGMENT** as to this property who were not a party to the Foreclosure According to the 3DCA Case NO: 3D19-0821 LOWER TRIBUNAL 2007-18226 CA-01 on front page of Appealle's Motion to Dismiss the appeal #3, thereby eliminating Res Judicata and Rooker Feildman on Plaintiffs, Exhibit, A2.

("Plaintiff"), complaining about the Defendants as named above, and each of them, as follows

PARTIES that Share interest in the Property:

1. Plaintiff MAURICE SYMONETTE is now, and at all times relevant to this action, a resident of the County of DADE, State of FLORIDA. and a holder of the Title to this said property

1A. Plaintiff James Buckman is now and at all times relavant to this action a resident of Dade County and a holder of title to this said property.

2. Lancaster Mortgage Bank LLC Defendant, who may have interest in the subject Property. JAMES BUCKMAN is informed and believe, and there on allege that, Defendant LANCASTER Mortgage Bank LLC, is a corporation, doing business in the County of DADE, State of FLORIDA and is the purported Sponsor for Securitized Trust and/or

2

purported participant in the imperfect securitization of Note and/or the Deed of Trust as more particularly described in this Complaint. who's address is 1794 Oregon PIKE LANCASTER P.A. 17601.

3. DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE,UNDER THE POOLING AND SERVICING AGREEMENT SERIES RAST 2006-A8 (CSFB), who claims to own the Subject Property C/O OCWEN: Vault Dept. who's address is 1761 East. Saint Andrews Place. Santa Ana California. 92705

4. U.S. TREASURY/IRS who's address is 1500 Pennsylvania Ave., N.W. Washington, D.C. 20220.

The UNITED STATES Treasury may have interest in this because the note was sold in RIMIC which by law had to destroy the Note to turn it into a Bond or a stock because the Note cannot exist at the same time as the Bond, because that would be called double-dipping and because the Note was destroyed The U.S. Internal Revenue (U.S. Treasury) gave Deutsche Bank National Trust Company As Trustee, Under The Pooling And Servicing Agreement Series Rast 2006-A8 (CSFB) a Tax wright off from the U.S. Treasury as a loss which gives The U.S. Treasury interest in the property so therefore the title must be Quieted concerning The U.S. Treasury. Quite TITLE is the sole reason that I am Suing the SEC and the us dept. of the Treasury/IRS in this Complaint. In the **ELEVENTH CAUSE OF ACTION VIOLATION GAAP FASB FAS 140 RULE AS GOVERENED BY THE SEC AND THE US DEPT. OF THE TREASURY.**

5.  SECURITY AND EXCHANGE COMMISSION who's address is 801 Brickell AVE. #1800 Miami FL. 33131.

The SECURITY AND EXCHANGE COMMISSION (SEC) may have

interest in this because the fake Note was sold on the Market Governed

by the SEC as evidenced by the fact that DEUTCHE BANK NATIONAL

TRUST COMPANY AS TRUSTEE, UNDER THE POOLING AND SERVICING

AGREEMENT SERIES RAST 2006-A8 (CSFB),  which is The PSA SEC

Stock and Bond Market therefore The Title must be Quieted Against the

SEC. Quite TITLE is the sole reason that I am Suing the SEC and the us

dept. of the Treasury/IRS in this Complaint. In the **ELEVENTH CAUSE OF**

**ACTION VIOLATION GAAP FASB FAS 140 RULE AS GOVERENED BY THE SEC**

**AND THE US  DEPT. OF THE TREASURY .**


Defendant, LANCASTER Mortgage Bank LLC Plaintiff JAMES BUCKMAN is informed
and believe, and there on allege that, Defendant LANCASTER Mortgage Bank LLC, isa
corporation, doing business in the County of DADE, State of FLORIDA and is the
purported Sponsor for Securitized Trust and/or purported participant in the imperfect
securitization of Note and/or the Deed of Trust as more particularly described in this
Complaint.


2. Defendant, LANCASTER Mortgage Bank LLC. Plaintiff JAMES BUCKMAN is informed and
believe, and thereon allege that, Defendant LANCASTER Mortgage Bank LLC, is a corporation,
doing business in the County of DADE, State of FLORIDA and is the purported Master Servicer
for Securitized Trust and/or a purported participant in the imperfect securitization of the Note
and/or the Deed of Trust as more particularly described in this Complaint.


3. At all times relevant to this action, Plaintiff JAMES BUCKMAN has owned
the Property located at 1977 NE 119th RD MIAMI FL. 33181 (the "property").


4.   Plaintiff JAMES BUCKMAN is informed and believe, and thereon allege,
that at all times herein mentioned, each of the Defendants were the agents,
employees, servant and/or the joint-ventures of the remaining Defendants, and each

of them, and in doing the things alleged herein below, were acting within the course and scope of such agency, employment and/or joint venture.

JURISDICTION

5. The transactions and events which are the subject matter of this Complaint all occurred within the County of DADE, State of FLORIDA. and the United States  DEALING WITH THE U.S. TREASURY AND THE FEDERAL SECURITIES AND EXCHANGE COMMISSION (SEC) along with Federal Violations gives this Federal Court Jurisdiction.

6. The Property is located within the County of DADE, State of FLORIDA with and address of 1977 NE 119th RD MIAMI FL. 33181. Maurice Symonette I live in the of Texas Defendants/Respondents are citizens of the States of Oregon, CA, DC, New York and Florida. There is complete diversity of citizenship between Plaintiff/Petitioner and Defendants/Respondents.

9.

Petitioners seek to quiet title to Petitioners' property. The amount in controversy exceeds $75,000.00.

10.

This is an *in rem* proceeding pursuant to Florida Statutes Chapter 65 and Federal Law, directed against Petitioners' property situated within the boundaries of Miami-Dade County.  By virtue of a unsigned fake Note and Mortgage <u>dated OCTOBER 20, 2005</u> and filed illegally for record NOV. 16, 2005, recorded in Book 23966 PAGE 3465 of the Public Records of Miami-Dade County, Florida, fraudulently saying Leroy Williams purchased the subject property and gave a Note and Mortgage in favor of Lancaster Mortgage Banking, a Massachusetts Corporation. Allegedly In favor of

Lancaster Bank the fake Mortgage was Assigned to MERS with no Notary illegally on the same day of a no Closing illegally without a 30 day notice or any notice to the fake buyer. They Assigned theMortgage to MERS Oct. 20, 2005, Attached hereto and made a part hereof as Plaintiff/Petitioner's Complaint, Exhibit "C", copy of the subject fake Assignment and Mortgage and Note. Defendant Deutsche Bank National Trust was assigned the Note by Mers Who never had an assignment and MERS was not acting as nominee for Lancaster so Deutch bank foreclosed with out any standing. Plaintiff/Petitioner challenges the legal standing of Defendants/Respondents to foreclose on the subject property or to sell the property at a foreclosure sale and Evict.

11.

Not withstanding that Deutsche Bank was not listed as a part on either the Note, allonges or Mortgage and had no legal standing to collect the note or foreclose the mortgage, Defendant/Respondent Deutsche Bank initiated a foreclosure against the subject property and obtained a Final Judgment of Foreclosure on or about December 5, 2013. Attached hereto and made a part hereof is a certified copy of the Final Judgment of Foreclosure as Plaintiff/Petitioner's

12.

The property was subsequently sold pursuant to a foreclosure sale by Deutsce bank National Trust, on February 22, 2013. See Plaintiff/Petitioner's composite Exhibit A. A certificate of Title was issued to Deutshe bank National Trust on March 5, 2013.  See Plaintiff/Petitioner's composite Exhibit A. Subsequently, the property was transferred by Quitclaim Deed from the purchaser, Deutshe bank National Trust to Plaintiff/Petitioner JAMES BUCKMAN See Plaintiff/Petitioner's

<u>Exhibit D1 and D71</u>.                              14

Rightful title in and to the subject property is in Plaintiff/Petitioner JAMES

BUCKMAN name. Although ordinarily Plaintiff/Petitioner would take the property but

must be subject

to valid first mortgage, for Defendants/Respondents to take property but have no

legal standing to collect on the note or to foreclose the mortgage, any such

foreclosure was

and is wrongful. Notwithstanding Plaintiff/Petitioner JAMES BUCKMAN purchaser of the

subject property, Defendant/Respondent Deutsche Bank National Trust Company, as

Trustee DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE, UNDER THE

POOLING AND SERVICING AGREEMENT SERIES RAST 2006-A8 (CSFB) threatens to Evict

Plaintiff's/Petitioner's from property after a fake foreclosure sale, although said Defendant/

Respondents have never produced any valid or recorded assignment, or other transfer

document or other signed proof that it owns and holds the Note and Mortgage on the subject

property.

15

1. Plaintiff/Petitioner challenges the legal standing of Defendants/

Respondents to collect the subject note or foreclose the subject mortgage. Standing

is jurisdictional, is not waived by Plaintiff/Petitioner, and can be raised at any time

Federal rules of procedure 3.1. Plaintiff/Petitioner moves for a Preliminary

Injunction/Temporary Restraining Order to restrain and enjoin the sale and

eviction of the property by Defendants/Respondents on February 19, 2014 pending

resolution of Plaintiff/Petitioner's Quiet Title claim, as more fully set forth in

Plaintiff/Petitioner's motion set forth herein below

## I.    INTRODUCTION AND <u>FACTUAL ALLEGATIONS</u>

This is an action brought by Plaintiff for declaratory judgment, injunctive and equitable

relief, and for compensatory, special, general and punitive damages. Because MERS never

got a legal Assignment from Lancaster Bank because there was no Leroy William's

Mortgage or Note that was signed and never exhisted. So Lancaster did not assign the

mortgage to MERS and MERS  could not have Assigned the Mortgage or Note to Deutsche

Bank. Which shows that this EVICTION is ILLEGAL THEFT OF THIS PROPERTY.

So we the Plaintiff, homeowners, disputes the title and ownership of the real property in

question (the"Home"), which is the subject of this action, in that the originating mortgage

lender, and others alleged to have ownership of Plaintiff's mortgage note and/or Deed of

Trust, have unlawfully sold, assigned and/or transferred their ownership and security

interest in Promissory Note and Deed of Trust related to the Property, and, thus, do not

have a lawful ownership or a security interest in Plaintiff's Home which is described in

detail herein For fraud, Intentional infliction of emotional distress, rescission, declaratory

relief based, on violations of T.I.L.A. and R.E.S.P.A., upon the facts and circumstances

surounding Plaintiff's original loan by Leroy Williams that was quit claimed to JAMES

BUCKMAN, Exhibit D1. transaction and subsequent securitization. Defendant's violations

of these laws are additional reasons this Court must quiet title in Plaintiff's property and

award damages, rescission, declaratory judgment, and injunctive relief as requested belo

16. From 1998 until the financial crash of 2008-2009, over 60 million home loans where sold by originating lender banks to investment banks to be securitized in a complex series of billions of transactions. The Plaintiff's home loan was one of the 60 million notes that were securitized.

17. Securitization is the process whereby mortgage loans are turned into securities, or bonds, and sold to investors by Wall Street and other firms. The purpose is to provide a large supply of money to lenders for originating loans, and to provide investments to bond holders which were expected to be relatively safe. The procedure for selling of the loans was to create a situation whereby certain tax laws known as the Real Estate Mortgage Investment Conduit (hereinafter "REMIC") Act were observed, and whereby the Issuing Entities and the Lenders would be protected from either entity going into bankruptcy. In order to achieve the desired "bankruptcy remoteness," numerous "true Sales" of the loans had to occur, in which loans were sold and transferred to the different parties to the Securitization.

18. A "True Sale" of the loan would be a circumstance whereby one party owned the Note and then sold it to another party. An offer would be made, accepted and compensation given to the "seller" in return for the Note. The Notes would be transferred, and the Deeds of Trust assigned to the buyers of the Note, with an Assignment made every step of the way, and furthermore, each Note would be endorsed to the next party by the previous assignee of record.

19. Each REMIC Trust created by the investment banks, usually under New York Law, would be funded with thousands to tens-of-thousands of mortgage notes. In order to maintain their bankruptcy-protected status, REMIC'S had to have closing dates by which every mortgage note that was to be sold to the REMIC had to be owned by the REMIC. Once the REMIC closed, it could accept no more mortgage notes under the terms of REMIC law, and it would begin selling securities backed by payments from homeowners on the notes it "owned".

20. How a particular mortgage loan ended up being transferred to REMIC in

the securitizations process is governed by a contract known as a pooling and Servicing Agreement ("PSA"). The PSA is a Trust Agreement required to be filed under penalty of perjury with the United States Securities and Exchange Commission ("SEC") and which, along with another document, the Mortgage Loan Purchase Agreement ("MLPA"), is the operative securitization document created by the finance and securitization industry to memorialize securitizations transactions.

21. When the Plaintiff in this case closed on her property, her original lender (or other entity claiming ownership of the note) signed a PSA that governed plaintiff's particular mortgage note. The PSA agreement, as described in more detail below, detailed the closing date by which the homeowner's loan must be "sold" to the REMIC, and describe exactly how the homeowner's note is to find it's way from the original lender to the REMIC trust.

22. A typical PSA calls for a homeowner's note to be transferred at least four times to different key parties before it comes into possession of the REMIC trustee. Here is a chart detailing the typical key party assignment chain required by a typical PSA:

23. As part of the process, the banks almost universally separated the mortgage note from the deed of trust. Under the common law, the owner of the note has the right to payments on the note, and the owner of the deed of trust has the right to foreclose on the homeowner if homeowner defaults on the note. Traditionally, before investment banks began securitizing mortgage notes, the holder of the note would universally hold the deed of trust. This made sense because the party with the right to collect payments on the note would want to be able to foreclose using the deed of trust if the homeowner defaulted.

24. However, to streamline the securitization process, the investment banks created an entity called mortgage Electronic Registrations System ("MERS"), who is one of the defendants in this case. The investment banks, in addition to using MERS' electronic database to track the buying selling and assignments of securitized mortgage notes (by passing the county clerks' offices), would transfer deeds of trust

to MERS, thereby separating the mortgage note from the deed of trust. MERS would hold the deed of trust for whoever later claimed to be the "owner" of the homeowner's mortgage note.

25. Plaintiff JAMES BUCKMAN alleges that Defendants, and each of them, cannot show proper receipt, possession, transfer, negotiations, assignment and ownership of the borrower's original Promissory Note and Deed of Trust, resulting in imperfect security interests and claims.

26. Plaintiff JAMES BUCKMAN further alleges that Defendants, and each of them, cannot establish possession and proper transfer and/or Endorsement of the Promissory Note and proper assignment of the Deed of Trust herein; therefore, none of the Defendants, and each of them, do not have the ability to establish that mortgages that secure the indebtness, or Note, were legally or properly acquired.

27. Plaintiff JAMES BUCKMAN alleges that an actual controversy has arisen and now exist between the Plaintiff and Defendants, and each of them. Plaintiff JAMES BUCKMAN desires a judicial determination and declaration of its rights with regard to the Property, especially because the Mortgage and Note was never signed and the corresponding Promissory note and Deed of Trust. Plaintiff JAMES BUCKMAN also seeks redress from Defendants identified herein for damages, for other injunctive relief and for cancellation of written instruments based upon:

a. An invalid and unperfected security interest in Plaintiff's Home herein after described;

b. Void "True Sale(s)' violating FLORIDA law and express terms of the pooling and servicing Agreement ("PSA") governing the securitization of Plaintiff's mortgage'

c. An incomplete and ineffectual perfection of a security interest in Plaintiff's Home;

**THERE IS ABSOLUTELY NO LANCASTER NOTE AT ALL**

Because Leroy Williams did not go to the Closing and did not sign the Notes to LANCASTER BANK, so then the Note was never Assigned to MERS, **exh.C.**

Assignment must be recorded within **30 days F.S. 494.0075 3. (3)** our Assignment Was RECORDED 1 YEAR AND 5 MONTHS AFTER THE SALE/CLOSING, The Assignment conveyed, sold and signed 10/20/05 **Recorded 03/21/27, exh. C** Because MERS never got a Legal Assignment from Lancaster Bank because there was no Leroy William's Mortgage Note that exhisted. So MERS did not Assign the Mortgage Note to Deustch Bank. Which shows that this EVICTION is ILLEGAL THEFT OF THIS PROPERTY, we actually have no rights to own property. here's more proof If Mortgage Note is not recorded by 1 year the Mortgage Note is void. This Note was never signed and never Recorded with Leroy Williams signature from 10/20/05 until today so Mortgage Note is void . And in violation of F.S. 695.01. and see: **Exh. A.**

The Mortgage Note has a space in the right corner of Mortgage Note for the preparer of the Note where the name and post-office address of the natural person who prepared the instrument or under whose supervision it was prepared are legibly printed, type Written  or stamped upon such instrument; this Note is void. And in violation of S. 695.26 (1) (b).F.) And then the Note was Conveyed illegally by Lancaster Bank to Mortgage Electronic Registration Systems (MERS) with no thirty day or any notice As required by Florida which renders Note unenforceable and void. F.S. 701.02(1)(2)(3). Notice requirement - The borrower must be giving 15-30 days notice before note is sold or assigned to another entity. **(RESPA Law 12 U.S. CODE § 2605)** the Mortgage Note signed 10/20/05 and the Assignment was on the same day of Sale without required Notice also in the original fraudulent mortgage note **PAGE 11 number 20** states that the sale of note or change of services the borrow must be given notice according to RESPA law which is 15 to 30 days. But the fraudulent Assignment was signed Oct. 20th 2005, **exh. C.** the same day as the fraudulent closing, written on the front page of the Mortgage Note, **exh. A.** which makes this Assignment void.F.S. 701.02(1)(2)(3).

Assignments must be recorded with in 30 days according to Florida STATUTE 494.0075. 3 (2) (3). This Assignment was recorded two years after sale was illegally signed, **exh. C.** this Assignment is totally void.  If Assignment is not recorded by 30

days the Assignment is void according to Florida Statute 695.01. The Assignment was signed and notarized Oct. 20th 2005 but was recorded May 21st 2007, one year and 5 months later. **Exh. C.**) (Mclean v. JPMorgan) says you can't foreclose before you own the Note! The Assignment from MERS to Deutsche Bank is Void because assignment was made after foreclosure started 06/20/07, exh. M. and the MERS Assignment to Deutsche Bank was 08/22/07, exh. N. and (Mclean v. JPMorgan).
ILLEGAL FAKE NOTARY PUBLIC VOIDS OWNERSHIP ON MORTGAGE NOTE
The Notary on the Mortgage Note is a VOID. The Notary stamp must contain Commission  or ID number, to identify the person if needed to varify or in court, (Our Mortgage Note for 1977 address has no commission or ID number that's at all Legible to hide their thievery see page 15 of the MORTGAGE Note of Record. n violation of F.S. 117.05 (3)(A) and F.S. 695.26 (1).This Mortgage Note does not have proof of identity of signer as required in violation of F.S. 117.05 #(5) and (5)(a) see exh. C. page 2. at middle of the paper. The Notaries name must be printed under their signature, on 1977 Mortgage Note there is no printed name under the Notary Public ignature in violation of the fake Assignment to MERS. Is void of see exh. C. Page 2. FS. 695.26 (1) (D) (E).New Jersey notary stamp rules is the same as Florida rules, the New Jersey notary of 2005 looks totally different from the Fraudulent one on our Mortgage  note, exh. P. and C. The State of New Jersey Notary stamp on our mortgage assignment is a COMEPLETLY MADE UP FRAUD! Exh. C. page 2. and is a punishable felony, S.775.082  775.083 or S.715.84.  ILLEGAL FAKE NOTARY PUBLIC VOIDS OWNERSHIP ON MORTGAGE ASSIGNMENT Must have at least one witness. There is no with witness on our Mortgage Assignment in violation of, F.S. 117.05 (b) 1.a.b.c.d.e. see exh. C. page 2. the Assignment is void. The Notary on the Assignment is a fake. The Notary stamp must contain commission or ID number, to identify the person if needed to varify or in court, (Our Mortgage Note for 1977 address has no commission or ID number to hide their thievery in violation of F.S. 117.05 (3)(A) and F. S. 695.26 (1). see exh. C. PAGE 2.The name of each person who executed such instrument is legibly printed, type written, or stamped upon such instrument immediately beneath the signature of such person and the post-office address of each such person is legibly printed, typewritten, or stamped upon such instrument in violation of F.S. 695.01 (1) AND F.S.  695.26 (1) (a) and F.S. 494. 0075 (5) and

F.S. 701.02(1)(2)(3) **exh. A.**

54.

## I FIRST CAUSE OF ACTION QUIET TITLE
## FLA. STATUE 95.11 CAL CODE CIVIL PROCEDURE 760.020

**NEWLY DISCOVERED EVIDENCE. AND FRAUD FEDERAL RULE 60 (B) (2) (4) (6) AND Fla. R. of Civ. Proc. 1540 (b) (2) STANDING CAN BE QUESTIONED AT (7) ANYTIME FEDERAL RULE 3.1** *This is total Fraud, MERS and Deutsche Bank (8) is breaking all Laws to take our property because I as Blacks for Trump have (9) been treated bad with BLACK MEGA Discrimination because of me helping (10) Republicans from BUSH, SCOTT TO TRUMP.*

Newly discovered evidence and fraud, March 4th 2018, we went to the Dade County records Department because all Mortgage Notes are Required to be Recorded with Original  Signatures F.S. 701.02(1)(2)(3) **exh. A.** and. We discovered that the Lancaster MORTGAGE NOTE has absolutely no signatures of the so called buyer (Leroy Williams) on Note as Required by F.S. 695.26 (1) (a), which caused me to search the whole record to discover that All Buyer's (Leroy William's) SIGNATURES and INTIALS are all Blacked Out and the blacked out signature as shown on gods2.com #1 showing two Dade County Clerks Jose Silva ID # 311083 and Guetty Jean ID # 217325 behind THEIR Clerk's desk behind protective glass. He's on Video red stamp the mortgage and saying the records dept. will not Record Mortgages without the original signature and She's on video after red stamping and putting my payment receipt on the Certified so called Leroy Williams showing Mortgage Note on Camera, video shows blacked out initials on Lancaster Note.  And two managers of the Clerk's office saying there's no way this Note should have been put on Recorded without the Signature, see gods2.com # AA. and AB. and I recorded this

all on docket for Leroy Williams there's no signed Mortgage, Promissory or Prepayment

Rider Recorded in Dade County. There is no lost Note count in Deustche Bank Complaint

and MERS is not listed in the Note as Nominee or anything at all, **exh. A.** Which is why they

did a Fake Mortgage Assignment which included the Promissory Note as stated on the

bottom of the Assigned note from Lancaster Bank to MERS **exh. C.**, signed by the Vice

President of Lancaster (Darlene Perera) the same lady who on the exact same date she

signed a fake Allonge to another Bank called Indy Mac Bank before  the Assignment to

from Lancaster Bank to MERS , illegal **see exhibit. CC 1-5** you can't GIVE a Note to two

different entities especially on the same date. And did not record the assignment until

2007 1 year and 5 months after sale of the Note which makes the Note Void according

to F.S. **exh. C.** Allowing an unsigned Mortgage Note to be Recorded in Florida which is a

Felony, F.S. 817.2341 and 775.082, 775.083 and 775.084. And are all forgeries that can

almost be seen under the blacked out ink when comparing that signature to the other

signatures of the other notes with the correct signature see **the Plaintiffs Lancster's**

**Recorded Note shows Note has a wrong forged signature that you can see under**

**the blacked out signature, exh. A.** This is the Correct Leroy William's real signature

from the other note from real Recorded Note of Leroy William's other property. From a

 real Closings, **see pgs. 16 and 20 of, exh. B1 and B2.** And Flamingo Title Company was

sued by Attorney Title Insurance Co. Because of money given but no Note, **exh. F,.** And

no valid Warranty Deed because Alexander Morera was not there and did not sign the

Warranty Deed, **exh. G.** One of the owners of the home 1977 ne 119th road Miami 33181,

James Buckman was not at the closing, see affidavit **exb. H**. and James Buckman did not

sign anything as it APPEARED on the fake Warrenty Deed, **exh.G.** See James Buckman's

real signature on drivers license, **exh. H2.** Someone illegally signed for James Buchman.

See Affidavit from Maurice Symonette another owner saying that he (Maurice) was their at the Angry wiped out non closing and witnessed that James Buckman, Tanner Carter, Alexander Morera nor did Leroy Williams show up to the closing and the Warranty Deed was not signed , see **exh. L.** Affidavit from James Buckman stateing that he was not at the closing so there was no Legal Warranty filed on the Record! So payments continued to Bank, **exh. S1, S2, S3.** and then EMC Mortgage Bank EMC. Mortgage co. wrote and said make all payments to INDY MAC BANK, **exh. T.** And Payments were made on time even six months after Deutsche Bank Foreclosure was started 06/20/2007, exh. M. See receipts showing payments **06/19/07 to 09/29/07 4** months after Deutsche Bank oreclosure started **exh. K1, K2,K3, K4.** And unknown Bank. Deustch Bank Lis Pendance date filed with no Due Process Notice to us, see **page 11 of Dade Docket exh. O**. This filed while Payments were still being made and on TIME, **exh.** And notice the Note blacked out the Loan Number so that you could not check it, **exh. A.** they also made big mistake and showed that Lancaster Bank Allonged the Note to IndyMac Bank FSB, **Exh. F.** So the only Bank then that could sell or Assign the Lancaster Note to MERS is IndyMac Bank, of course this was never done. Because Lancaster without Note ownership sold the NOTE illegally to MERS who then illegally Assigned the Note to DEUTSCHE BANK but after they started The Foreclosure lawsuit, see **exh.** Q. and **exh. E3,** which is also illegal according to Mclean Vs. JPMorgan. This R.   is a totally a made up Foreclosure thievery wow.

**LANCASTER MORTGAGE BANKERS, LLC may have or claim an interest in the property that is the subject of this Foreclosure action by virtue of a mortgage recorded in official**

Records Book 23966, Page 3483, or may otherwise claim an interest in the property. First Commercial CORP, may have or claim an interest in the property that is the subject of the foreclosure action by Virtue of A Fake Mortgage.

2. The interest of each Defendant are subject, Subordinate and inferior to the right, title, interest and lien of plaintiffs mortgage with the exception of any special assessments that are superior Pursuant to Florida Statues 159 (2006), and Florida Statues 170.09 (2006)

3. SEC May have an interest in the property as evidenced by DEUTSCHE Bank NATIONAL TRUST CO. AS TRUSTEE UNDER THE POOLING AND SERVICING AGREEMENT SERIES RAST 2006-A8 (CSFB), C/O OCWEN ATTN: Vault Dept. 5720 Premier Park Drive, West Palm Beach,FL.,33407 having the note on the SEC stocks or bonds market so they must.

### ALSO IF LANCASTER WAS ACTUALLY A NOTE

On or about March 1, 2006 (hereinafter referred to as "closing Date") Plaintiff James Buckman who owns the house that was owned by Leroy Williams who was supposed to enter into a consumer credit transaction with LANCASTER Mortgage Bank LLC BY OBTAINING A $1.5 million mortgage loan secured by a First Trust Deed on the Property in favor of Lancaster LLC. But the SALE NEVER HAPPENED THE FAKE loan on the house

was securitized, with the Note and not being properly transferred to Defendant, Deutsche

Bank, acting as the Trustee for the LANCASTER Mortgage Bank LLC. holding plaintiff's

note. Documents filed with the SEC by the securitization participants allegedly claim

that the note and deed of trust at issue in this case were sold, transferred and Securitized

by Defendants, with other loans and mortgages with aggregate principal balance of

approximately $1.5 million into LANCASTER Mortgage Bank LLC Balance of LLC Trust,

which is a Common Law Trust formed pursuant to New York law. A detailed description

of the mortgage loans which form the LANCASTER Mortgage Bank LLC is included in

Form 424B5 ("The prospectus"), which has been duly filled with the SEC and which c

an be accessed through the above mentioned footnote.


An expert, certified, forensic audit of the Plaintiff's loan documents reveals that Plaintiff's

mortgage note was required to at least go through this assignment chain of key parties

before it reached the REMIC trustee it was destined for:The Plaintiff's PSA requires that

his/her note or deed of trust had to be endorsed and assigned, respectively, to the trust

and executed by multiple intervening parties in the above chain of assignment before

it reached the REMIC Trustee.

Plaintiff executed a series of documents, including but not limited to the Note and Deed

of Trust, Securing the Property in the amount of the Note. The Original beneficiary and

nominee under the Deed of Trust was mers.

Plaintiff is informed and believes, and thereon alleges, that the purchase mortgage on  the

property, the debt or obligation evidenced by the Note and the deed of Trust by Plaintiff in

favor of the original lender and other Defendants, regarding the Property, was not

properly assigned and transferred to Defendants operating the pooled mortgage funds or

trusts in accordance with the PSA and/or FLORIDA law of entities making and receiving

the purported assignments to this trust. In accordance with the PSA and/or FLORIDA law

of the entities making and receiving the purported assignments to this trust.

Plaintiff alleges that the PSA requires that each Note of Trust had to endorsed and assigned, respectively , to the trust and executive by multiple interviewing parties before it reached the Trust. Here, neither the Note nor the Deed of Trust was assigned to the Securitized Trust by closing date. Therefore, under the PSA, any assignments of the Deed of Trust beyond the specified closing date for the Trust are void. Plaintiff further alleges that even if the Deed of Trust had been transferred into the trust by the closing date, the transaction is still void as the Note would not have been transferred according to the requirement for the PSA, Since the PSA requires a complete and unbroken chain of transfer and assignments too and from each intervening. Plaintiff informed and believes, and thereon alleges, that the LANCASTER Mortgage    Bank LLC had no officers or directors and no continuing duties other than to hold assets and to issue the series of certificates of investment in mortgage backed securities in the prospectus.

Identified herein below. detailed description of the mortgage loans, which form the   duly filled with the SEC and Which can be accessed through the below mentioned footnote.

Plaintiff is informed and believes, that Defendants Deutsche bank, alleges that it is the "holder and owner" of the Note and the beneficiary of the Deed of Trust , However, the Note and Deed of trust identify the mortgage and not holder as the original lender allegedly sold the mortgage loan to LANCASTER Mortgage Bank LLC

Plaintiff further alleges that no documents or records can be produced that demonstrate that prior to the closing date for LANCASTER Mortgage Bank LLC the note duly endorsed, transferred and delivered to LANCASTER Mortgage Bank LLC including all interviewing transfers. Nor can any documents or records be produced that demonstrate that prior to the closing date, the Deed of Trust was duly assigned, transferred and delivered to LANCASTER Mortgage Bank LLC including all intervening assignments.

Plaintiff further alleges that any documents that purport any interest in the Note to LANCASTER Mortgage Bank LLC after the Trust closing date are void as a matter of law, pursuant to NEW YORK trust law and relevant portions of the PSA.

Plaintiff JAMES BUCKMAN'S Leroy Williams) debt or obligation did not comply with New York law, and/or other laws and statues, and , thus, do not constitute valid and enforceable "True Sale." Any security interest in the Property was, thus , never perfected. The alleged holder of the Note is not the beneficiary of the Deed of Trust The alleged beneficiary of Plaintiff's Deed of Trust does not have the requisite title, perfected security interest or standing to proceed in a foreclosure; and/or not the real party in interest with regard to any Action taken to be taken against the property.

Plaintiff JAMES BUCKMANS is also informed and believe, and thereon alleges that at all times herein mentioned, and any assignment of a Deed of Trust without proper transfer of the Obligation that it secures is a legal nullity.

In order for the Trustee of the securitized trust to have a valid and enforceable secured claim against Plaintiff's Home, the Trustee must prove and certify to all parties that, among other things required under the PSA:There was a complete and unbroken chain of endorsements and transfers of the Note from and to each party to the securitization transaction ( which should be from the A Mortgage Originator to the (B) Sponsor to the(C) Depositor to the (D) Trust/Trustee, and that all these endorsements and transfers were completed prior to the Trust closing dates ( See Discussion below); and The Trustee of the Securitized Trust had actual physical possession of the Note at that point in time, when all endorsements and assignments had been completed. Absent such proof, Plaintiff JAMES BUCKMAN alleges Plaintiff JAMES BUCKMAN's Home that is the Subject of this action. Therefore, if the Defendants, and each of them did not hold and possess the Note on or before the closing date of Trust herein, they are estopped and precluded from asserting any secured or unsecured claim in this case

Plaintiff JAMES BUCKMAN is informed and believes, and thereon alleges, that pursuant to the terms of the PSA, the Mortgage Originator (i.e., the original lender herein) agreed to transfer and endorse to the Trustee for the Securitized trust, without recourse, including all intervening transfers and assignments, all of its right, title and interest in and to the mortgage loan (Note) of Plaintiff JAMES BUCKMAN herein and all other mortgage loans identified in the PSA. Plaintiff JAMES BUCKMAN

is further informed and believes, and thereon alleges, that the PSA provides that the transfers and assignments are absolute, were made for valuable consideration, to wit, in exchange for the certificates described in the PSA, and were intended by the parties to be a bona fide or "True sale." Since, as alleged herein below, True sales did not actually occur, Plaintiff alleges that the Defendant Trustees are estopped and precluded from asserting any secured or unsecured claim in this case.

29.     Plaintiff JAMES BUCKMAN is further informed and believes, and thereon alleges, that as a result of the PSA and other documents signed under oath in relation thereto the Mortgage Originator, sponsor and Depositor are estopped from claiming any interest in the Note that is allegedly secured by the Deed of Trust on Plaintiff JAMES BUCKMANS Home herein.

30.     Plaintiff JAMES BUCKMAN is informed and believe, and thereon allege, that the Note in this case and the other mortgage loans identified in the PSA, were never actually transferred and delivered by the Mortgage Originator to the Sponsor or to the Depositor from the Depositor to the Trustee for the Securitized Trust. Plaintiff JAMES BUCKMAN further alleges, on information and belief, that the PSA herein provides that the Mortgage Files of the Mortgages were to be delivered to LANCASTER Mortgage Bank LLC which Mortgage Files include the original Deeds of Trust, herein. Based upon the foregoing, Plaintiff JAMES BUCKMAN is further informed and believe, and thereon allege, that the following deficiencies exist, in the "True Sale" and securitization process as to this Deed of Trust which renders invalid any security interest in the Plaintiff JAMES BUCKMANS mortgage, including, but not limited to:

   a. The splitting or separation of title, ownership and interest in Plaintiff JAMES BUCKMANS Note and Deed of Trust of which the original lender is the holder, owner and beneficiary of Plaintiff JAMES BUCKMAN'S Deed of Trust;

   b. When the loan was sold to each interviewing entity, there were no Assignments of the Deed of trust to or from any interviewing entity at the time of the sale. Therefore, "True Sales" could not and did not occur;

   c. The failure to assign and transfer the beneficial interest in Plaintiff's Deed of Trust

21

to Deutsche Bank, in accordance with PSA of the Defendants, as Securitization Participants;

    d.  the failure to endorse, assign and transfer Plaintiff JAMES BUCKMANS NOTE AND/OR mortgage to Defendant Bank, as Trustee for LANCASTER Mortgage Bank LLC

    E.  No Assignments of Beneficiary or endorsements of the Note to each of the intervening entities in the transaction ever occurred under Florida Law, which is conclusive proof that no true sales occurred as required under PSA filed with the SEC; and

    F. Defendants, and each of them, violated the pertinent terms of the PSA.

    31. Plaintiff JAMES BUCKMAN, therefore, alleges, upon information and belief, that neither the securitization transaction, nor any of the Defendants in this case, hold a perfected and secured claim in the Property; and that all Defendants are estopped and precluded inserting an unsecured claim against Plaintiff JAMES BUCKMAN'S estate.

    32.  The terms of the finance transaction with LANCASTER Mortgage Bank LLC are not clear or conspicuous, nor consistent, and are illegal which violates several statues and is in essence creates a fraudulent and unenforceable loan. Further, this loan was underwritten without proper due diligence by LANCASTER Mortgage Bank LLC as evidenced by their failure to verify borrower's income utilizing signed IRS Income Tax Disclosure Form 4506T which would have provided past borrower tax returns. LANCASTER Mortgage Bank LLC also used a "GDW Cost of Savings " as the Index for basis of this loan. Because the Lender controls this Index and it is directly based upon the parent company it was not a valid index for the basis of the loan.

    33.  In addition, and unbeknownst to Plaintiff JAMES BUCKMAN, INDY MAC BANK, EMC MORTGAGE BANKERS LLC knew or should have known that Plaintiff JAMES BUCKMAN could not qualify for or afford by, for example the underwriter has approved this loan based upon credit scores and the borrower's Stated Income only Had LANCASTER Mortgage Bank LLC used a more accurate and appropriate factor, such as Tax Forms and a more determinative lever of scrutiny of determining comply with the requirement to provide Plaintiff JAMES BUCKMAN

with a Mortgage Loan Origination Agreement the debt to income ratio, Plaintiff
JAMES BUCKMAN  with a Mortgage Loan Origination Agreement the debt to income
ratio, Plaintiff  JAMES BUCKMAN WITHA MORTGAGE LOAN ORIGNATION
Agreement the debt income ratio, Plaintiff JAMES BUCKMAN would not have
qualified for the loan in the first place. Consequently, LANCASTER Mortgage Bank
LLC SOLD PLAINTIFF JAMES BUCKMAN a loan product that it knew or should have
known would never be able to be fully paid back by Plaintiff

JAMES BUCKMAN.

55.   Additionally, Defendants and each of them, neither explained the workings of the entire mortgage loan transaction, how the rates, finance charges, costs and fees were computed, nor the inherent volatility of the loan products provided by defendants.

56.   The purpose of entering into the above-described mortgage loan transactions was for Plaintiff to eventually own the Property. That purpose was knowingly and intentionally thwarted and indeed made impossible by Defendants combined actions as alleged herein.

57.     Plaintiff JAMES BUCKMAN'S title to the above-described property is derived as follows: On or about March 1, 2006 (hereinafter referred to as "Closing Date") Leroy Williams we thought entered into a consumer credit transaction with LANCASTER Mortgage Bank LLC by obtaining a $2,600,000.00 mortgage loan secured now by Plaintiff JAMES BUCKMAN'S principal residence, ( Subject Property). This note was thought to be secured by a First Trust Deed on the Property in favor of LANCASTER Mortgage Bank LLC

58.     All Defendants named herein claim an interest and estate in the property adverse to plaintiff in that defendant asserts he's is the owner of the note secured by the deed of trust to the property the subject of this suit.

59. All Defendants named herein claims an interest and estate in the property adverse to plaintiff JAMES BUCKMAN in that defendant asserts he is

The claim of all defendant are without any right whatsoever, and defendants have no right, estate, title lien or interest in or to the property, or any of the property.

60.   The claim of all defendants herein named, and each of them, claim some estate, right, title, lien or interest in or to the property adverse to Plaintiff JAMES BUCKMAN s title, and these claims constitute a cloud on plaintiff's title to the property.

61.   Plaintiff JAMES BUCKMANs, therefore, allege, upon information and belief, that none of the parties to neither the securitization transaction, nor any of the Defendants in this case, hold a perfected and secured claim in the property; and that all Defendants are estopped and precluded from asserting an unsecured claim against Plaintiff JAMES BUCKMANS estate.

62.   Plaintiff JAMES BUCKMAN requests the decree permanently enjoin and all persons claiming under them, from asserting any adverse claim to plaintiff's title to the property; and

63.   Plaintiff JAMES BUCKMAN request the court award plaintiff costs of this action, and such other relief as the court may deem proper.

### B. Defendant MERS cannot be a Real Party in Interest in a Securitized mortgage

64.   Since the creation of Plaintiff JAMES BUCKMAN'S Note herein and Deed of Trust, Defendant MERS was named the "beneficiary" of the Deed of Trust.

65.   Plaintiff is informed and believes, and thereon alleges, that Defendants MERS lacks the authority under its corporate charter to foreclose a mortgage, or to own or transfer an interest in a securitized mortgage because MERS charter limits MER's powers and duties to functioning as electronic registration system of certain types of securities.

66. Plaintiff JAMES BUCKMAN is informed and believes, and thereon alleges, that in order to conduct a foreclosure action, a person or entity must have standing.

67. Plaintiff JAMES BUCKMAN is informed and believes, and thereon alleges, that pursuant to New York law, to perfect the transfer of mortgage paper as collateral, the owner should physically deliver the note to the transferee. Without physical transfer, the sale of the note is invalid as a fraudulent conveyance or as unperfected.

68. The note is this action identifies the entity to whom it was payable, the original lender. Therefore, the Note herein cannot be transferred unless it is endorsed; the attachments to the notice of default do not establish that endorsements were made, nor are there any other notices which establish that the original lender endorsed and sold the note to another party.

69. Furthermore, insofar as the parties to the securitization of Plaintiff JAMES BUCKMAN'S Note and Deed of Trust base their claim that the Note was transferred or assigned to Defendant Deutsche Bank, the Trustee of the Securitized Mortgage herein, by the original lender, it is well established state law that the assignment of a Deed of Trust does not automatically assign the underlying promissory note and right to be paid and the security interest is incident of the debt.

70. Pursuant to state law, to perfect the transfer of mortgage papers as collateral

for a debt, the owner should physically deliver the note to the transferee. Without physical transfer, the sale of the note is invalid as a fraudulent conveyance, or as unperfected. The Note herein specially identifies the party to whom it was payable to and the Note, therefore, cannot be transferred unless it is endorsed.

71. Defendants, and each of them, cannot produce any evidence that the Promissory Note has been transferred; therefore,, Defendant MERS could only transfer whatever interest it had in the Deed of Trust herein. the Promissory Note and Deed of Trust are inseparable: an assignment of the Note carries the mortgage(i.e., Deed of Trust) with it, while an assignment of the Deed of Trust alone is a nullity. Therefore, if one party receives the Note and another party receives the Deed of Trust (as in this case), the holder of the Note prevails regardless of the order in which the interest were transferred.

69. Defendants MERS has failed to submit documents authorizing MERS, as nominee for the original lender, to assign the subject mortgage to the foreclosing trustee. Hence, MERS lacked authority as mere nominee to assign Plaintiff's mortgage, making any assignment from MERS defective.

70. In the instant action, MERS, as the nominee not only lacks authority to assign the mortgage, but cannot demonstrate the Trustee's knowledge or assent to the assignment by MERS to the foreclosing trustee.

71.  Any attempt to transfer the beneficial interest of a trust deed without actual ownership of the underlying note, is void under law. Therefore, Defendant, MERS, cannot establish that it is entitled to assert a claim in this case. For this reason, as well as the other reasons set forth herein below, MERS cannot transfer an interest in real property, and cannot recover anything from Plaintiff.

72. Defendants, and each of them, through the actions alleged above, have or claim the right to illegally commence foreclosure under the Note on the Property via a foreclosure action supported by false or fraudulent documents. Said unlawful foreclosure action has caused and continues to cause Plaintiff's great and irreparable injury in that real property is unique. FLA. STATUE 95.11 CAL CODE CIVIL PROCEDURE 760.020. Plaintiffs seeks to quiet title against the claims of the Defendants and all persons claiming any legal or equitable right, title, estate, lien, or adverse interest in the property as of the date the complaint was filed (FL . Statute 95.11 Cal Code Civil Procedure 760.020). Plaintiffs is the title holder of the property according to the terms of a grant Deed Dated Sept. 07, 14, 2006.
Lancaster Bank securitized plaintiffs single-family residential mortgage loan by Selling the Note as a Security on the stock market. Plaintiff is informed and believes that the unlawful beneficiary has been paid in full. The mortgage states in paragraph lender shall request trustee to reconvey the property and shall surrender this security instrument and all Notes evidencing debt secured this security instrument to Trustee Trustee shall reconvey the property without warranty to the person or persons legally entitled to it ... Mortgage does not state that Plaintiff must make a full payment, only that all secured sums must be paid. Plaintiff alleges that the obligations owed to Lancaster under the mortgage were fulfilled and the loan was fully paid when Lancaster received funds in excess of the balance on the NOTE as Proceeds of sale through securitization(s) of the loan and insurance proceeds from credit default swaps. We know that MERS was used to sell the NOTE in a bundle of 5000 other NOTES on the Market unendorsed so as to be able to sell it over and over again with each investor believing he owns the Note and to stop investors from going after and collecting on the investment.

73. Reconveyance upon payment of all sums secured by this security instrument, FLA. STATUE 95.11 CAL CODE CIVIL PROCEDURE 760.020 Plaintiff

74. Kelley v. Upshaw, 39 Cal. 2d 179, 192, 246 P.2d 23 (1952); Hyde v. Mangan, 88 Cal. 319, 327, 26 P.180 (1891); Polhemus v. Trainer, 30 Cal. 685, 688, 1866 WL 831 (1866). See Johnson v. Razey, Cal. 342, 344, 184 P. 657 (1919).

75. The wrongful conduct of the above specified Defendants and each of them, unless restrained and enjoined by an Order of the Court, will continue to cause great and irreparable harm to Plaintiff. Plaintiff will not have the beneficial use and enjoyment of its Home and will lose the property.

76. Plaintiff has no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to Plaintiff. Plaintiff has suffered and will continue to suffer in the future unless Defendants wrongful conduct is restrained and enjoyed because real property is inherently unique and it will be impossible for Plaintiff to determine the precise amount of damage it will suffer.

## SECOND CAUSE OF ACTION SLANDER OF TITLE

77. Plaintiff  JAMES BUCKMAN re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein .

78. Plaintiff JAMES BUCKMAN incorporates here each and every allegation set forth above.

79. Defendants, and each of them, disparaged Plaintiff JAMES BUCKMAN's exclusive valid title by and through the preparing , posting, publishing, and recording of the documents previously described herein, including, but not limited to , the Notice of Default, Notice of Trustee's Sale, and Trustee's Deed.

80. Said Defendants knew or should have known that such documents were improper in that at the time of the execution and delivery of said documents Defendants had no right, title, or interest in the Property. These documents were naturally and commonly to be interpreted as denying, disparaging, and casting doubt upon Plaintiff's legal title to the property. By posting, publishing, and recording said documents' disparagement of Plaintiff's legal title was made to the world at large.

81. As a direct and proximate result of Defendants conduct in publishing these documents, Plaintiff JAMES BUCKMAN'S title to the Property has been disparaged and slandered, and there is a cloud on Plaintiff JAMES BUCKMAN's title which was obtained by quit claim deed on 1/01/2007 see exhibit and Plaintiff has suffered, and continues to suffer, damages in an amount to be proved at trial

82.  As a further proximate result of Defendants conduct, Plaintiff James Buckman has incurred expenses in order to clear title to the property. Moreover, these expenses are continuing, and Plaintiff James Buckman will incur addition charge for such purpose until the cloud on Plaintiff's title to the property has been removed. The amounts of future expenses and damages are not ascertainable at this As a further direct and proximate result of Defendants conduct, Plaintiff James Buckman has suffered humiliation, mental anguish, anxiety, depression, and emotional and physical distress, resulting in the loss of sleep and other injuries to his and her health and well-being, and continues to suffer such injuries on an ongoing basis. The amount of such damages shall be proven at trial. At the time that the false and disparaging documents were created and published by the Defendants, Defendants knew the documents were false and created and published them with the malicious intent to injure to Plaintiff James Buckman and deprive them of their exclusive right, title, and interest in the Property, and to obtain the Property for their own

use by unlawful means. The conduct of the Defendants in publishing the documents described above was fraudulent, oppressive, and malicious. Therefore, Plaintiff James Buckman is entitled to an award of punitive damages in an amount sufficient to punish Defendants for their malicious conduct and deter such misconduct in the future.

### THIRD CAUSE OF ACTION: THE BANK VIOLATED THE THIRTY-DAY NOTICE RULE THAT SAYS BANK MUST GIVE WHEN THEY SALE OR ASSIGN THE NOTE AND CASE MUST BE DISMISSED FLA. STAT. 559.715

83. The plaintiff must give written notice within 30 days of the assignment Fla. Courts have demanded strict compliance with the Statute and have held that the required notice is a condition president to a Debt collection action predicated upon an assignment see LVNY Funding LLC. v. Harris Fla. L Weekly Supp. C23 (Fla. 11 CIR. Court June 24 2009) wherein the court Found that the Plaintiff failed to comply with the written notice of provision of F.S. §559.715 and therefore dismissed the action with prejudice) accordingly the plaintiff has never provided the Defendant the mandatory 30 day of assignment the case should also be dismissed for failure to comply with a mandatory condition precedence. Lancaster Bank LLC Assigned wrongfully the Note to MERS on the same day Closing and was done and only done as an exhibit, see exhibit F2, and not a part of the Assignment. So MERS is not owner and the Deutsche Bank Assignment from MERS is Void Completely, and MERS thus causing Plaintiffs to suffer an impaired and defective Title, plaintiffs asked for Damages.

### VIII. FOURTH CAUSE OF ACTION - UNJUST ENRICHMENT

31

## FLORIDA STATUE 697.10

84. Deutsche bank has no interest in Plaintiffs Mortgage, so the pending foreclosure on Plaintiffs property would constitute unjust enrichment. The mortgage states that all secured sums must be paid. Plaintiff alleges that the obligations under the mortgage were fulfilled when Deutsche Bank received funds in excess of the balance on the NOTE as a result of proceeds of sale through securitization to private investors many times and insurance proceeds from credit default swaps.

## FIFTH CAUSE OF ACTION - RESPA AND TILA VIOLATIONS
## RESPA 12 U.S.C. 2605

85. Deutsche Bank N.A. and its agents made material misrepresentations and omissions with respect to the terms of Plaintiffs loan in violation of the Truth In Lending Act (TILA). Plaintiffs is informed and believes that Lancaster Bank concealed the terms of the loan with the intention of inducing Plaintiffs to refrain from investigating and challenging the disclosures until the period for rescinding the loan expired.

86. Plaintiffs did not receive any documents from Lancaster Bank after his meeting to sign documents at a Florida Title Company, including disclosures required by the Truth in Lending Act, RESPA, and a notice of right to cancel.

87. Plaintiffs loan is a mortgage loan subject to the provisions of RESPA, 12 U.S.C. 2605 et. seq. and Cal. financial Code §50505.

88. On Oct. 12, 2012, Plaintiff requested a copy of his loan application and Promissory Note at a Miami branch of Defendants in Florida. A bank Officer telephoned a LANCASTER Mortgage Bank LLC office in Florida and informed Plaintiff that he would receive the loan documents in ten days. No documents have ever been received.

89. <u>Defendants have engaged in a practice of non-compliance with RESPA, including failing to respond to properly submitted QWR's see Exhibit D</u>. Plaintiff is informed and believes that this practice is designed to conceal TILA amid RESPA violations and to conceal the identity of the many investors who believe they are the owners of the NOTE, LANCASTER Mortgage Bank LLC got cash from and true beneficiary of the Loan. As a direct and proximate result of Defendants failure to comply with RESPA, Plaintiffs have suffered and continues to suffer actual damages in that he's unable to ascertain the basis for defendants claims to his property, he cannot identify the owner of the beneficiary of the Note, he cannot determine whether his payments to IndyMac Bank paid to the beneficiary and there is no evidence upon which to conclude that Defendants are acting as NOTE owner with the lawful authority in their attempts to foreclose the property. Under RESPA, Plaintiffs seeks triple damages, and also documents were ordered for Qualified Written Request. Formal Protest and Dispute Of Alleged Debt And Validity OF Alleged Loan, But never received <u>See exhibit D</u> established a two-part test for determining the legality of lender payments to mortgage brokers for table funded transactions and intermediary transactions under RESPA:

a) Whether goods or facilities were actually furnished or services were actually performed for the compensation paid and;

b) Whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services were actually performed.

90. In applying this test, HUD believes that total compensation should be scrutinized to assure that is reasonably related to the goods, facilities, or services

furnished or performed to determine whether it is legal under RESPA. The interest and income that Defendants have gained is disproportionate to the situation Plaintiff James Buckman find themselves in due directly to Defendant's failure to disclose that they will gain a financial benefit while Plaintiff JAMES Buckman suffer financially as a result of the loan product sold to Plaintiff James Buckman.

91. No separate fee agreements, regarding the use of LANCASTER Mortgage Bank LLC Cost of Savings" as the Index for the basis of this loan, Disclosures of additional income due to interest rate increases or the proper form and procedure in relation to the Borrower's Rights to Cancel.

## SIXTH CAUSE OF ACTION- NO CONTRACT
## FLORIDA STATUE 697.10

92. The Assignment from MERS to Lancaster has no Lot or Parcel Description on The Mortgage assignment see exhibit E & F which is a void and an illegal Assignment (South Florida's Citrus land Co. v. Walden, 51 So.554, 59 Fla. 606 (1910), and Garvin v. Baker, 59 SO. 2d 360 (Fla. 1952), also according to Fla. Stat. 697.10 For liability for error in mortgage deed or Note and in any action relating to real Property, if the court shall find that any person has prepared an instrument which due to an inaccurate or improper legal description impairs another person's title to real property, the court may award to the prevailing party all actual damages that she or he may have sustained as a result of such impairment of title.

93. Assignment of Mortgage was done 10/20/05 the same day as the Closing but the Lot and Parcel was put on record 09/30/05 twenty days before Closing and was done and only done as an exhibit, see exhibit F2, and not a party of the assignment. So MERS is not owner and the Deutsche Bank Assignment from MERS is Void Completely, and MERS thus causing Plaintiffs to suffer an impaired and defective Title, plaintiff asked for triple Damages.

## SEVENTH CAUSE OF ACTION: FRAUD AND CONCEALMENT
## FLORIDA STATUE 726.105(d)

Fed. Rule 3.1 Standing can be brought up any time even on Appeal. Denied Defendants Objections to Sale without Bank proving they had Standing because the

Bank filed Complaint before they owned the Note. Plaintiff foreclosed on the property before they owned it by way of making a Fraudulent Assignment and taking Defendants property without having Note ownership. This foreclosure should never have been allowed because the Bank didn't have assignment. If we look further, the Lis pendens that was used has a recorded date of 06/20/2007 an Assignment of Mortgage was recorded on that date by the clerk of court in Miami Dade as seen on exhibit C, and as seen on the same Document, the Assignment was made after Lis Pendens was filed which according to Mclean v. JPMorgan Chase Bank N.A.). This is an Illegal foreclosure, you cannot Foreclose on a property before you own it (Note), there was never any evidence of Deutsche bank ever owning the Note or having any kind of an Assignment before the recorded date of 08/22/2007 so this Assignment has no effect against the Creditor unless recorded before the Complaint, see Fla. Stat. 817.535(e)5(2)(A) a person who files or directs a filer to file with the intent to defraud or harass another, or any Instrument containing a materially false fictitious or fraudulent statement or representation that purports to affect owners interest in the property described in the instrument commits a Felony. Assignments to property cannot be made Retroactively the Assignment begins from the time that the document is recorded in the County Court. There have been numerous cases that were dismissed because of faulty Assignments such as **Mclean V. JPM. And US Bank V. Ibanez** where the Massachusetts Supreme

Court found that the mortgages were assigned to the lender after the completion of the foreclosure sale or, the Court decided that the foreclosures were void because the lenders lacked legal authority to foreclose and then there was a Balch v. LaSalle Bank N. A. 171 So. 3d 207, 209 (Fla. 4*DCA 2015) reversing a Foreclosure Judgment in part because "the assignment [of Mortgage] was executed after the complaint was filed, also see Abdel Darwiche and Batoul Darwiche v. Bank of New York Mellon, when the assignment of mortgage upon The Bank of New York relied to establish its standing, the Appellate court agreed With the homeowners/ that the general issues of material fact remained As to Whether the assignment of mortgage was sufficient to establish BNYM's Standing at the inception of the suit and also see Darlene Angelini and Joseph Angelini v. HSBC BANK, et at., 4D14-216 the banks testimony did not establish The relevant: that it held the note at the time the complaint was filed.

Although The Bank was clearly the holder at the time it introduced the blank indorsed Note at trial, "[a] plaintiffs lack of standing at the inception of the case and is not a Defect that may be cured by the acquisition of standing after the case is filed. And cannot be established retroactively by acquiring standing to file a lawsuit after the fact. "La France V. U.S. Bank Nat'l Assn. 141 So. 3d 754, 756 (Fla.*DCA 2014) and McClean v. JPMorgan. Therefore Deutsche Bank does not have Standing to Foreclose, and here Deutsche Bank is at fault and should pay trebble.

## EIGHTH CAUSE OF ACTION: PROPERTY SOLD AT PRICE SO LOW THAT IT SHOCKS THE CONSCIENCE
## FLORIDA STATUE 45.031-(8)

The Plaintiffs property was sold at a price so low it shocked the conscience the clerk sold plaintiffs $2.1 million house for a mere $42,000.00 see exb. DI, in which was purchased by the same bank which is (DEUTSCHE BANK NATIONAL TRUST COMPANY AS Trustee Under The Pooling And Servicing Agreement Series Rast 2006-A8{CSFB} this price is so low it shocks the conscience according to Fl. Stat. 45.031 -(8)  Maurice Symonette did file objection to sale and demands that it be heard and has found new information to further strengthen our case to show that the bank is knowingly illegally taking this property. Deutsche Bank bought the property at auction in the foreclosure sale of the said property on 6/22/2017 for forty two thousand three hundred Dollars that price is so low that it shocks the conscience according to Fl. Stat. 45.031-(8) which VOIDS the SALE and Rule 702.Fl.Stat. 702(5). F.S.A. Mitchell V. Mason and also see, First bank V. Fisher Frichtel Inc. which says (if the case is so inadequate as to raise an inference of fraud then the foreclosure can be voided) All this done to by pass Tax, Doc Stamps and do away with all the liens and monies owed attached to the property. And some days later after realizing that we saw the $42,300.00 sales price for the $2.1 million and that we owed and that defendants saw that the sales price was so low and against the Law that it shocked the conscience, that when Defendants came back to question the Clerk about our Bankruptcy and wanted to show the manager how ridiculously low that sales was. Mysteriously they show Defendants another Deutsche Bank different from the first Deutsche Bank that

Clerk showed us just days earlier selling $42,300.00 but now it showed Defendant's property sold for $888,000.00 in which we discovered later was done on the same date 6/22/2017 with different bank (Deutsche Bank National Trust Company As Trustee for RESIDENATIAL ASSET SECURITIZATION trust Series 2006-A8 MORTGAGE PASS - THROUGH CERTIFICATES SERIES 2006-H), even after them seeing us tape them saying mouth, giving it to us in writing and showing us on their Government computer the sales price at $42,300.00 with witnesses see YouTube: (Dade Clerks are lawless) see exb. D1. This shows Fraud and Collusion against the Defendants to just take the property wrongfully which is the main reasons for the Objection to sale and this complaint is that the sale price is so low that it shocks the conscience. The foreclosure amount owed was 2.6 million and the estimated value is $1,810,000.00 but shockingly the sale was forty two thousand three hundred. And the Foreclosure was started while defendants were in good Standing with our payments, even after paying on time to the Bank and we have proof that we were making the payments before and after the Bank started the foreclosure on us see exhibits 1,2,3,4,5, and 6, this foreclosure sale needs to be voided and recalled due to the clerk of the court careless and fraudulent activity.

## NINTH CAUSE OF ACTION: VIOLATION OF TIMELY ASSIGNMENT FLA. STAT. 702.02 AND FLA. STAT. 726105(D)

Also the instant assignment was also untimely in order for the foreclosure to be legal the assignment to the mortgage must be entered in a timely manner, that is it should be entered before the foreclosure, in this case it was not, the Lis Pendens was recorded 06/20/2007, exhibit B, and the assignment was recorded 08/22/2007 which was at least 63 days after the Foreclosure see Exhibit C, thus Deutsche Bank foreclosed before they even owned the Note and they knew it and tried it anyway hoping that they could get away with it, an assignment cannot Be Assigned retro actively see Progressive Exp. Ins. Co. V Mcgrath Comty. Chiropractic, 913 So. 2d 1281, (Fla. 2d DCA 2005), the plaintiffs lack of standing at the inception of the case is not a defect that may be cured by the acquisition of standing after the case is filed. Thus a party is not permitted to establish the right to maintain an action retroactively by Acquiring standing to file a Lawsuit after the fact.. Mclean v. JPMorgan. Therefore Deutsche Bank Has no Standing in the ownership of the said

property and for Deutsche to amend the complaint to start over would only suggest

fraud (Pino v. Bank of New York) as it already is by the nature of the transaction

the transaction it's self is deceptive and to have this fault of an assignment written

after the Complaint is filled, but Deutsche Bank N.A. Still claim they have standing

is an action of fraud as have been tried by so many other cases and the Banks that

did them lost ( US Bank N.A. v Ibanez ), Murray v. HSBC Bank USA 2006 OP1) and (

Powers v. HSBC BANK USA 2006). A fraudulent Transfer is one when one is

threatened with suit before assignment of property is made, Fl. Stat. 726.105 (D),

and also UCC Article 3 line #6 says assignments or endorsements must be

effectuated Before suit is filed. Progressive Exp. Ins. Co. v. Mcgarth Comty, Also Fla.

Fourth DCA and UCC F.S. DH 673 ARTICLE 3 OF THE UCC: says they must prove

they own the Note before they foreclose. On Note this case is void, Deutsche Bank

has no standing in this case and property should be awarded to plaintiffs or

Monetary damages.

## <u>TENTH CAUSE OF ACTION: THERE WAS NO CONSIDERATION THE BANK CONSIDERED</u>
## <u>MONEY MUST BE GIVEN TO ASSIGN A NOTE. FLA. STATUE 701.02(1)(2)</u>

Florida Contract (Mail Box Law) (4) says you must in order to consummate a contract or an

assignment you must give consideration money. The Judge Erred and is in Violation of Florida

Contract Law (4) for not Dismissing the Case because the Assignment has no Consideration

Money on the Assignment between Lancaster Bank LLC and MERS not only did they violate

the 30 day notice on the Assignment by trying to sale the Note on the same day and they also

never Consummated the contract with money consideration, see exb. B and C. Plea and effect

of .--Sworn plea of consideration throws burden on plaintiff.---Smith v.Le Vesque, 25 Fla .,

464: White v. Camp , 1 Fla., 94. Plea of want of consideration as against bona fide holder of

negotiable promissory note ---- Hancock v. Hale, 17 Fla., 808. Section does not obviate

necessity of exhibition of instrument to the jurr; when exhibited, consideration pre-

assignment or endorsement ----Sinclair v. Gray, 9 FLA., 342. EFFECT OF SWORN AND

unsworn plea of want of considerartion.----Ib. Plea must set forth facts.---Ahrens v. Willis, 6

Fla., 359. How drawn and what should contain ---- White v. Camp, 1 Fla., 94 Must not be

equivalent to illegality or failure of consideration--- Orman v barnard, 5 Fla., 528. Effect of

unsworn plea by administrator -- Knight v Knight, 9Fla., 283. MERS is not on the original note

as a nominee or anything at all and the Note shows at the endorsement page of the Lancaster bank's note that all payments are due to LANCASTER Mortgage Bank LLC on Oct.20*,2005 and Lancaster on the same day signed the note to MERS without a 30 day notice and' with no money consideration and LANCASTER Mortgage Bank LLC according to Lancaster was now the note holder as stated on the back of the note but LANCASTER Mortgage Bank LLC did assign the note over to MERS ( see exhibit C,) so MERS according to Lancaster's money consideration failure and to Lancaster is not the owner of the Note and MERS never did buy the Note or the assignment because they never consummated the assignment with the consideration money, so therefore the assignment from Mers to Deutsche Bank is Invalid because MERS could not sign a note to Deutsche Bank when they don't own the Note. And don't forget the assignment was late, Filed after the lis Pendens was filed in violation of Florida DCA third district court of appeal, Mclean v. JPMorgan.

## 11. ELEVENTH CAUSE OF ACTION VIOLATION GAAP FASB FAS 140 RULE AS GOVERENED BY THE SEC AND THE US DEPT. OF THE TREASURY

This is what I'm Quieting the Title against the SEC and Treasury for.  The Federal GAAP FASB FAS 140 Rule says that when a NOTE is sold on the market as a security, the NOTE must be burned and destroyed and can never be as a foreclosure instrument because that is SEC Fraud because the IRS has written the destroyed loss off, then the insurance paid the loss off and then sold it on the market. The NOTE was also seperated form the mortgage when the original Promissory NOTE was not recorded along with Mortgage at the county level. Additionally, the Mortgage was separated form the Note when the loan was bundled together with hundreds or thousands of other loans to create municipal bond funds, in order to sell and trade on Wall Street. When the Original Note was bundled it was destroyed and given a number to prevent others form double-dipping, that is, to prevent others from reselling the promissory Note again. By learning this information, the original wet blue ink promissory Note cannot be produced, because it was destroyed when it was bundled together and put into a securitized loan trust to sell and trade on wallstreet. To seperate the NOTE from the mortgage is to collapse the trust. See Carpenter v. Longan, 83 U.S. at 274 (finding that an assignment of the mortgage without the Note is a nullity); Landmark Nat'l Bank v. Kesler, 216 P. 3d 158, 166-67 (Kan.2009)("In the Event that a

mortgage loan somehow separates interest of the Note and the deed of trust, with the deed of trust lying with some independent entity, the mortgage may become unenforceable"). See also 37 Fla. Jur. Mortgages and Deeds of Trust '240 (One who does not have the ownership, possession, or the right to possession of the mortgage and the obligation secured by it, may not foreclose the mortgage). "The mortgage follows the note. An assignment of the Note carries the mortgage with it, while an assignment of the later alone is a nullity." ( Capitol Investors Co. vs. Executors of the Estate of Morison,484 F.2d 1157, 1163n. "When a note is secured by a mortgage is assigned, the mortgage follows the note into the hands of the mortgagee. "In other words, the note is held and owned by the certificate holders of trust, and  the mortgage follows the Note.

### ALSO IF LANCASTER WAS ACTUALLY A NOTE

On or about March 1, 2006 (hereinafter referred to as "closing Date") Plaintiff  James

Buckman who owns the house that was Quit Claimed to and owned by Leroy Williams

who was supposed to enter into a consumer credit transaction with LANCASTER Mortgage

Bank LLC BY OBTAINING A $1.5 million mortgage loan secured by a  First Trust Deed on the

Property in favor of Lancaster LLC. But the SALE NEVER HAPPENED THE FAKE loan on the house

was securitized, with the Note and not being properly transferred to Defendant, Deutsche

Bank, acting as the Trustee for the LANCASTER Mortgage Bank LLC. holding plaintiff's

Note. Documents filed with the SEC by the securitization participants allegedly claim

that the note and deed of trust at issue in this case were sold, transferred and Securitized

by Defendants, with other loans and mortgages with aggregate principal balance of

approximately $1.5 million into LANCASTER Mortgage Bank LLC Balance of LLC Trust,

which is a Common Law Trust formed pursuant to New York law. A detailed description

of the mortgage loans which form the LANCASTER Mortgage Bank LLC is included in

Form 424B5 ("The prospectus"), which has been duly filled with the SEC and which c

an be accessed through the above mentioned footnote.


An expert, certified, forensic audit of the Plaintiff's loan documents reveals that Plaintiff's

mortgage note was required to at least go through this assignment chain of key parties

before it reached the REMIC trustee it was destined for: The Plaintiff's PSA requires that

his/her note or deed of trust had to be endorsed and assigned, respectively, to the trust

and executed by multiple intervening parties in the above chain of assignment before

it reached the REMIC Trustee.

Plaintiff executed a series of documents, including but not limited to the Note and Deed

of Trust, Securing the Property in the amount of the Note. The Original beneficiary and

nominee under the Deed of Trust was mers.

Plaintiff is informed and believes, and thereon alleges, that the purchase mortgage on   the

property, the debt or obligation evidenced by the Note and the deed of Trust by Plaintiff in

favor of the original lender and other Defendants, regarding the Property, was not

properly assigned and transferred to Defendants operating the pooled mortgage funds or

trusts in accordance with the PSA and/or FLORIDA law of entities making and receiving

the purported assignments to this trust. In accordance with the PSA and/or FLORIDA law

of the entities making and receiving the purported assignments to this trust.

Plaintiff alleges that the PSA requires that each Note of Trust had to endorsed and

assigned, respectively , to the trust and executive by multiple interviewing parties before

it reached the Trust. Here, neither the Note nor the Deed of Trust was assigned to the

Securitized Trust by closing date. Therefore, under the PSA, any assignments of the Deed

of Trust beyond the specified closing date for the Trust are void. Plaintiff further alleges

that even if the Deed of Trust had been transferred into the trust by the closing date, the

transaction is still void as the Note would not have been transferred according to the

requirement for the PSA, Since the PSA requires a complete and unbroken chain of

transfer and assignments too and from each intervening. Plaintiff informed and believes,

and thereon alleges, that the LANCASTER Mortgage      Bank LLC had no officers or

directors and no continuing duties other than to hold assets and to issue the series of certificates of investment in mortgage backed securities in the prospectus.

Identified herein below. detailed description of the mortgage loans, which form the   duly filled with the SEC and Which can be accessed through the below mentioned footnote.

Plaintiff is informed and believes, that Defendants Deutsche bank, alleges that it is the "holder and owner" of the Note and the beneficiary of the Deed of Trust , However, the Note and Deed of trust identify the mortgage and not holder as the original lender allegedly sold the mortgage loan to LANCASTER Mortgage Bank LLC

Plaintiff further alleges that no documents or records can be produced that demonstrate that prior to the closing date for LANCASTER Mortgage Bank LLC the note duly endorsed, transferred and delivered to LANCASTER Mortgage Bank LLC including all interviewing transfers. Nor can any documents or records be produced that demonstrate that prior to the closing date, the Deed of Trust was duly assigned, transferred and delivered to LANCASTER Mortgage Bank LLC including all intervening assignments.

Plaintiff further alleges that any documents that purport any interest in the Note to LANCASTER Mortgage Bank LLC after the Trust closing date are void as a matter of law, pursuant to NEW YORK trust law and relevant portions of the PSA.

Plaintiff JAMES BUCKMAN'S Leroy Williams) debt or obligation did not comply with New York law, and/or other laws and statues, and , thus, do not constitute valid and enforceable "True Sale." Any security interest in the Property was, thus , never perfected. The alleged holder of the Note is not the beneficiary of the Deed of Trust The alleged beneficiary of Plaintiff's Deed of Trust does not have the requisite title, perfected security interest or standing to proceed in a foreclosure; and/or not the real party in interest with regard to any Action taken to be taken against the property.

Plaintiff JAMES BUCKMANS is also informed and believe, and thereon alleges that at all times herein mentioned, and any assignment of a Deed of Trust without proper transfer of the Obligation that it secures is a legal nullity.

42

In order for the Trustee of the securitized trust to have a valid and enforceable secured claim against Plaintiff's Home, the Trustee must prove and certify to all parties that, among other things required under the PSA:There was a complete and unbroken chain of endorsements and transfers of the Note from and to each party to the securitization transaction ( which should be from the A Mortgage Originator to the (B) Sponsor to the(C) Depositor to the (D) Trust/Trustee, and that all these endorsements and transfers were completed prior to the Trust closing dates ( See Discussion below); and The Trustee of the Securitized Trust had actual physical possession of the Note at that point in time, when all endorsements and assignments had been completed. Absent such proof, Plaintiff JAMES BUCKMAN alleges Plaintiff JAMES BUCKMAN's Home that is the Subject of this action. Therefore, if the Defendants, and each of them did not hold and possess the Note on or before the closing date of Trust herein, they are estopped and precluded from asserting any secured or unsecured claim in this case

Plaintiff JAMES BUCKMAN is informed and believes, and thereon alleges, that pursuant to the terms of the PSA, the Mortgage Originator (i.e., the original lender herein) agreed to transfer and endorse to the Trustee for the Securitized trust, without recourse, including all intervening transfers and assignments, all of its right, title and interest in and to the mortgage loan (Note) of Plaintiff JAMES BUCKMAN herein and all other mortgage loans identified in the PSA. Plaintiff JAMES BUCKMAN is further informed and believes, and thereon alleges, that the PSA provides that the transfers and assignments are absolute, were made for valuable consideration, to wit , in exchange for the certificates described in the PSA, and were intended by the parties to be a bonafide or "True sale." Since, as alleged herein below, True sales did not actually occur, Plaintiff alleges that the Defendant Trustees are estopped and precluded from asserting any secured or unsecured claim in this case.

34.      Plaintiff JAMES BUCKMAN is further informed and believes, and thereon alleges, that as a result of the PSA and other documents signed under oath in relation thereto the Mortgage Originator, sponsor and Depositor are estopped from claiming any interest in the Note that is allegedly secured by the Deed of Trust on Plaintiff JAMES

BUCKMANS Home herein.

35.        Plaintiff JAMES BUCKMAN is informed and believe, and thereon allege, that the Note in this case and the other mortgage loans identified in the PSA, were never actually transferred and delivered by the Mortgage Originator to the Sponsor or to the Depositor from the Depositor to the Trustee for the Securitized Trust. Plaintiff JAMES BUCKMAN further alleges, on information and belief, that the PSA herein provides that the Mortgage Files of the Mortgages were to be delivered to LANCASTER Mortgage Bank LLC which Mortgage Files include the original Deeds of Trust, herein. Based upon the foregoing, Plaintiff JAMES BUCKMAN is further informed and believe, and thereon allege, that the following deficiencies exist, in the "True Sale" and securitization process as to this Deed of Trust which renders invalid any security interest in the Plaintiff JAMES BUCKMANS mortgage, including, but not limited to:

e.  The splitting or separation of title, ownership and interest in Plaintiff JAMES BUCKMANS Note and Deed of Trust of which the original lender is the holder, owner and beneficiary of Plaintiff JAMES BUCKMAN'S Deed of Trust;

f.  When the loan was sold to each interviewing entity, there were no Assignments of the Deed of trust to or from any interviewing entity at the time of the sale. Therefore, "True Sales" could not and did not occur;

g.   The failure to assign and transfer the beneficial interest in Plaintiff's Deed of Trust to Deutsche Bank, in accordance with PSA of the Defendants, as Securitization Participants;

h.   the failure to endorse, assign and transfer Plaintiff JAMES BUCKMANS NOTE AND/OR mortgage to Defendant Bank, as Trustee for LANCASTER Mortgage Bank LLC

G.   No Assignments of Beneficiary or endorsements of the Note to each of the intervening entities in the transaction ever occurred under Florida Law, which is conclusive proof that no true sales occurred as required under PSA filed with the SEC; and

H. Defendants, and each of them, violated the pertinent terms of the PSA.

36. Plaintiff JAMES BUCKMAN, therefore, alleges, upon information and belief, that

neither the securitization transaction, nor any of the Defendants in this case, hold a perfected and secured claim in the Property; and that all Defendants are estopped and precluded inserting an unsecured claim against Plaintiff JAMES BUCKMAN'S estate.

37.     The terms of the finance transaction with LANCASTER Mortgage Bank LLC are not clear or conspicuous, nor consistent, and are illegal which violates several statues and is in essence creates a fraudulent and unenforceable loan. Further, this loan was underwritten without proper due diligence by LANCASTER Mortgage Bank LLC as evidenced by their failure to verify borrower's income utilizing signed IRS Income Tax Disclosure Form 4506T which would have provided past borrower tax returns. LANCASTER Mortgage Bank LLC also used a "GDW Cost of Savings " as the Index for basis of this loan. Because the Lender controls this Index and it is directly based upon the parent company it was not a valid index for the basis of the loan.

38.     In addition, and unbeknownst to Plaintiff JAMES BUCKMAN, INDY MAC BANK, EMC MORTGAGE BANKERS LLC knew or should have known that Plaintiff JAMES BUCKMAN could not qualify for or afford by, for example the underwriter has approved this loan based upon credit scores and the borrower's Stated Income only Had LANCASTER Mortgage Bank LLC used a more accurate and appropriate factor, such as Tax Forms and a more determinative lever of scrutiny of determining comply with the requirement to provide Plaintiff JAMES BUCKMAN with a Mortgage Loan Origination Agreement the debt to income ratio, Plaintiff JAMES BUCKMAN  with a Mortgage Loan Origination Agreement the debt to income ratio, Plaintiff  JAMES BUCKMAN WITHA MORTGAGE LOAN ORIGNATION Agreement the debt income ratio, Plaintiff JAMES BUCKMAN would not have qualified for the loan in the first place. Consequently, LANCASTER Mortgage Bank LLC SOLD PLAINTIFF JAMES BUCKMAN a loan product that it knew or should have known would never be able to be fully paid back by Plaintiff

JAMES BUCKMAN.

72.   Additionally, Defendants and each of them, neither explained the workings of the entire mortgage loan transaction, how the rates, finance charges, costs and fees were computed, nor the inherent volatility of the loan products provided by defendants.

73.   The purpose of entering into the above-described mortgage loan transactions was for Plaintiff to eventually own the Property. That purpose was knowingly and intentionally thwarted and indeed made impossible by Defendants combined actions as alleged herein.

74.   Plaintiff JAMES BUCKMAN'S title to the above-described property is derived as follows: On or about March 1, 2006 (hereinafter referred to as "Closing Date") Leroy Williams we thought entered into a consumer credit transaction with LANCASTER Mortgage Bank LLC by obtaining a $2,600,000.00 mortgage loan secured now by Plaintiff JAMES BUCKMAN'S principal residence, ( Subject Property). This note was thought to be secured by a First Trust Deed on the Property in favor of LANCASTER Mortgage Bank LLC

75.   All Defendants named herein claim an interest and estate in the property adverse to plaintiff in that defendant asserts he's is the owner of the note secured by the deed of trust to the property the subject of this suit.

76. All Defendants named herein claims an interest and estate in the property adverse to plaintiff JAMES BUCKMAN in that defendant asserts he is

. The claim of all defendant are without any right whatsoever, and defendants have no right, estate, title lien or interest in or to the property, or any of the property.

77.   The claim of all defendants herein named, and each of them, claim some estate, right, title, lien or interest in or to the property adverse to Plaintiff JAMES BUCKMAN s title, and these claims constitute a cloud on plaintiff's title to the property.

78.   Plaintiff JAMES BUCKMANs, therefore, allege, upon information and belief, that none of the parties to neither the securitization transaction, nor any of the Defendants in this case, hold a perfected and secured claim in the property; and that all Defendants are estopped and precluded from asserting an unsecured claim against Plaintiff JAMES BUCKMANS estate.

79.   Plaintiff JAMES BUCKMAN requests the decree permanently enjoin and all persons claiming under them, from asserting any adverse claim to plaintiff's title to the property; and

80.   Plaintiff JAMES BUCKMAN request the court award plaintiff costs of this action, and such other relief as the court may deem proper.

## B. <u>Defendant MERS cannot be a Real Party in Interest in a Securitized mortgage</u>

81.   Since the creation of Plaintiff JAMES BUCKMAN'S Note herein and Deed of Trust, Defendant MERS was named the "beneficiary" of the Deed of Trust.

82.   Plaintiff is informed and believes, and thereon alleges, that Defendants MERS lacks the authority under its corporate charter to foreclose a mortgage, or to own or transfer an interest in a securitized mortgage because MERS charter limits MER's powers and duties to functioning as electronic registration system of certain types of securities.

78.  Reconveyance upon payment of all sums secured by this security instrument, FLA. STATUE 95.11 CAL CODE CIVIL PROCEDURE 760.020 Plaintiff

74. Kelley v. Upshaw, 39 Cal. 2d 179, 192, 246 P.2d 23 (1952); Hyde v. Mangan, 88 Cal. 319, 327, 26 P.180 (1891); Polhemus v. Trainer, 30 Cal. 685, 688, 1866 WL 831 (1866). See Johnson v. Razey, Cal. 342, 344, 184 P. 657 (1919).

94. The wrongful conduct of the above specified Defendants and each of them, unless restrained and enjoined by an Order of the Court, will continue to cause great and irreparable harm to Plaintiff. Plaintiff will not have the beneficial use and enjoyment of its Home and will lose the property.

95.  Plaintiff has no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to Plaintiff. Plaintiff has suffered and will continue to suffer in the future unless Defendants wrongful conduct is restrained and enjoyned because real property is inherently unique and it will be impossible for Plaintiff to determine the precise amount of damage it will suffer.

<u>PRAYER FOR RELIEF</u>

WHEREFORE Plaintiff , James Buckman will ask for the following for each Cause of Action to be Awarded:  And under the penalty of perjury, verifies that he has read the foregoing Petition for Declaratory Relief to Quiet Title and Motion for Temporary Restraining Order and that the facts contained therein are true and correct.

James Buckman
1977 NE 119th rd.
Miami, Fl. 33181

SYMONETTE  MAURICE
4711 LI Parkway Sugarland Tx.
77479 UNIT 4208

83. Plaintiff JAMES BUCKMAN is informed and believes, and thereon alleges, that in order to conduct a foreclosure action, a person or entity must have standing.

84. Plaintiff JAMES BUCKMAN is informed and believes, and thereon alleges, that pursuant to New York law, to perfect the transfer of mortgage paper as collateral, the owner should physically deliver the note to the transferee. Without physical transfer, the sale of the note is invalid as a fraudulent conveyance or as unperfected.

85. The note is this action identifies the entity to whom it was payable, the original lender. Therefore, the Note herein cannot be transferred unless it is endorsed; the attachments to the notice of default do not establish that endorsements were made, nor are there any other notices which establish that the original lender endorsed and sold the note to another party.

86. Furthermore, insofar as the parties to the securitization of Plaintiff JAMES BUCKMAN'S Note and Deed of Trust base their claim that the Note was transferred or assigned to Defendant Deutsche Bank, the Trustee of the Securitized Mortgage herein, by the original lender, it is well established state law that the assignment of a Deed of Trust does not automatically assign the underlying promissory note and right to be paid and the security interest is incident of the debt.

87.  Pursuant to state law, to perfect the transfer of mortgage papers as collateral

for a debt, the owner should physically deliver the note to the transferee. Without physical transfer, the sale of the note is invalid as a fraudulent conveyance, or as unperfected. The Note herein specially identifies the party to whom it was payable to and the Note, therefore, cannot be transferred unless it is endorsed.

88. Defendants, and each of them, cannot produce any evidence that the Promissory Note has been transferred; therefore,, Defendant MERS could only transfer whatever interest it had in the Deed of Trust herein. the Promissory Note and Deed of Trust are inseparable: an assignment of the Note carries the mortgage(i.e., Deed of Trust) with it, while an assignment of the Deed of Trust alone is a nullity. Therefore, if one party receives the Note and another party receives the Deed of Trust (as in this case), the holder of the Note prevails regardless of the order in which the interest were transferred.

74. Defendants MERS has failed to submit documents authorizing MERS, as nominee for the original lender, to assign the subject mortgage to the foreclosing trustee. Hence, MERS lacked authority as mere nominee to assign Plaintiff's mortgage, making any assignment from MERS defective.

75. In the instant action, MERS, as the nominee not only lacks authority to assign the mortgage, but cannot demonstrate the Trustee's knowledge or assent to the assignment by MERS to the foreclosing trustee.

The threatened loss of Plaintiff/Petitioner's home constitutes irreparable injury.

WHEREFORE, Petitioners respectfully request that this honorable Court immediately take jurisdiction of this matter and enter an Order granting temporary injunctive relief expressly precluding and cancelling the foreclosure Eviction presently not scheduled as yet for the reasons set forth herein, and that the Court grant such other and further relief as the Court deems equitable, appropriate and just.

Respectfully submitted this____day of  OCTOBER, 2019.

JAMES BUCKMAN
1977 NE 119TH RD
MIAMI FLA. 33181

SYMONETTE MAURICE
4711 L J PARKWAY SUGARLAND TX.
77479 UNIT 4208
786-859-9421

VERIFICATION

Plaintiff/Petitioner James Buckman hereby verifies, under penalty of perjury, verifies that he has read the foregoing Petition for Declaratory Relief to Quiet Title and Motion for Temporary Restraining Order and that the facts contained therein are true and correct.

James Buckman
1977 NE 119th rd.
Miami, Fla.33181