# Exhibit A

IN THE CIRCUIT COURT OF THE ELEVENTTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

19-30415CA20

JAMES BUCKMAN and
MAURICE SYMONETTE

Case No.

Plaintiff,

vs.                                    1906

COMPLAINT FOR:

1. QUIET TITLE
2. SLANDER OF TITLE
3. BANK VIOLATED 30 DAY NOTICE TO SALE NOTE IN VIOLATION OF FLORIDA STAT. 559.715
4. UNJUST ENRICHMENT
5. VIOLATION OF RESPA 12 U.S.C 2605
6. VIOLATION FL. STAT. 697.10 NO CONTRACT
7. FRAUD & CONCEALMENT
8. VIOLATON OF FLORIDA STAT. 45.031(8) A PRICE SO LOW IT SHOCKS THE CONSCIENCE
9. VIOLATION OF TIMELY ASSIGNMENT
10. BANK NO CONSIDERATION MONEY MUST BE GIVEN TO ASSIGN NOT

LANCASTER MORTGAGE CO.; ONE WEST BANK, EMC MORTGAGE BANKERS LLC MORTGAGE ELECTRONIC REGISTRATION SYSTEM, AKA "MERS" DEUTSCHE BANK NATIONAL TRUST CO. AS TRUSTEE UNDER THE POOLING AND SERVICING AGREEMENT SERIES RAST 2006-A8 AND DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE OF THE RESIDENTIAL ASSET SECURITIZATION TRUST 2006-A8, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-H UNDER THE POOLING AND SERVICING AGREEMENT, SECURITY AND EXCHANGE COMMISSION AND THE U.S. TREASURY, BLANK ROME LLC

Defendants.

1

**MOTION FOR INJUCTION FEDERAL RULE 65 AND 73, TO STOP UNLAWFUL CRIMINAL EVICTION BY DEUTSCHE BANK N.A DEUTSCHE BANK COMMITED FRAUD BY CREATING A FAKE MORTGAGE AND PROMISSORY NOTE TO STEAL PROPERTY THAT I NEVER SOLD OR SIGNED FOR! WITH DISCOVERED EVIDENCE OF FRAUD. FEDERAL RULE 60 (B) (2) (4)(6) AND Fla. R. of Civ. Proc. 1540 (b) (2) STANDING A THEIVERY CAN BE QUESTIONED ATANYTIME FEDERAL RULE 3.1**

**QUIET TITLE VERIFIED PETITION FOR DECLARATORY RELIEF AND JUDGMENT AND INJUNCTIVE RELIEF AGAINST DEFENDANT DEUTSCHE BANK N.A. TRUST TO QUIET TITLE PURSUANT TO FLORIDA STATUTES CHAPTER 65; AND MOTION FOR TEMPORARY RESTRAINING ORDER AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

COMES NOW the Plaintiff, ("MAURICE SYMONETTE"), PLAINTIFF MAURICE SYMONETTE AND PLAINTIFF JAMES BUCKMAN.

("Plaintiff"), complaining of the Defendants as named above, and each of them, as follows

PARTIES:

1. Plaintiff MAURICE SYMONETTE is now, and at all times relevant to this action, a resident of the County of DADE, State of FLORIDA.

1A. Plaintiff James Buckman is now and at all times relavant to this action a resident of Dade County and a holder of title to this said property.

2. Defendant, LANCASTER Mortgage Bank LLC now known as LANCASTER Mortgage Co. located at 1794 Oregon PIKE LANCASTER P.A. 17601, is doing business in the County of DADE, State of FLORIDA. Plaintiff JAMES BUCKMAN is further informed and believes, and thereon alleges, that LANCASTER Mortgage Bank LLC is the Originator of the loan. The Securities and Exchange Commission Located at 801 Brickell Ave # 1800. Miami FL, 33131, THE U.S. TREASURY located at 1500 Pennsylvania Ave.,N.W. Washington, D.C. 20220 and Blank Rome LLC which is located at 500 E. Broward Blvd Suite 2100 Ft. Laud Fl. 33394 are also Defendants in this case.

2

3. Defendant, Deutsche Bank National Trust Company (hereafter "Deutsche Bank"), as Trustee for securitized trust LANCASTER Mortgage Bank LLC. Plaintiff JAMES BUCKMAN is informed and believe thereon allege that, Defendant Deutsche Bank, is a national banking association Located at 1761 E. St. Andrews Place, Santa Ana, CA 92705, doing business in the County of DADE, State of FLORIDA and is the purported Master Servicer for Securitized Trust and/or purported participant in the imperfect securitization of the Note and/or the Deed of Trust as more particularly described in this Complaint.

4. Defendant, LANCASTER Mortgage Bank LLC. Plaintiff JAMES BUCKMAN is informed and believe, and thereon allege that, Defendant LANCASTER Mortgage Bank LLC is a corporation, doing business in the County of DADE, State of FLORIDA and is the purported Sponsor for Securitization Trust and/or a purported participant in the imperfect securitization of the Note and/or the Deed of Trust as more particularly described in this complaint.

5. Defendant, LANCASTER Mortgage Bank LLC Plaintiff JAMES BUCKMAN is informed and believe, and there on allege that, Defendant LANCASTER Mortgage Bank LLC, is a corporation, doing business in the County of DADE, State of FLORIDA and is the purported Sponsor for Securitized Trust and/or purported participant in the imperfect securitization of Note and/or the Deed of Trust as more particularly described in this Complaint.

6. Defendant, LANCASTER Mortgage Bank LLC. Plaintiff JAMES BUCKMAN is informed and believe, and thereon allege that, Defendant LANCASTER Mortgage Bank LLC, is a corporation, doing business in the County of DADE, State of FLORIDA and is the purported Master Servicer for Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Deed of Trust as more particularly described in this Complaint.

7. Defendant, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., aka MERS ("MERS"), Plaintiff JAMES BUCKM,AN is informed and believe, and thereon allege, that MERS is a corporation duly organized and existing under the laws of BROWARD, Whose last known address is 1818 Library Street, Suite 300, Reston, Virginia 20190; website: http://www.mersinc.org. MERS is doing business in the County of BROWARD, State of FLORIDA Plaintiff JAMES BUCKMAN is further

2

3

informed and believe and thereon allege, that Defendant MERS is the purported Beneficiary under the Deed of Trust and/or is a purported participant in the imperfect securitization of the Note and/or the Deed of Trust, as more particularly described in this Complaint.

8. At all times relevant to this action, Plaintiff JAMES BUCKMAN has owned the Property located at 1977 NE 119th RD MIAMI FL. 33181 (the "property").

9. Plaintiff JAMES BUCKMAN does not know the true names, capacities, or basis for liability of Defendants sued herein as Does 1 through 100, inclusive, as each fictitiously named Defendant is in some manner liable to Plaintiff JAMES BUCKAM is informed and believe, and therefore allege, that at all relevant times mentioned in this Complaint, each of the fictitiously named Defendants are responsible in some manner for the injuries and damages to Plaintiff JAMES BUCKMAN so alleged and that such injuries and damages were proximately caused by such Defendants, and each of them.

10. Plaintiff JAMES BUCKMAN is informed and believe, and thereon allege, that at all times herein mentioned, each of the Defendants were the agents, employees, servant and/or the joint-ventures of the remaining Defendants, and each of them, and in doing the things alleged herein below, were acting within the course and scope of such agency, employment and/or joint venture.

JURISDICTION

11. The transactions and events which are the subject matter of this Complaint all occurred within the County of DADE, State of FLORIDA.

12. The Property is located within the County of DADE, State of FLORIDA with and address of 1977 NE 119th RD MIAMI FL. 33181. Maurice Symonette I am a citizen of of the state of Texas Defendants/Respondents are citizens of the States of New York and Florida. There is complete diversity of citizenship between

4

Plaintiff/Petitioner and Defendants/Respondents.

9.

Petitioners seek to quiet title to Petitioners' property. The amount in controversy exceeds $75,000.00.

10.

This is an *in rem* proceeding pursuant to Florida Statutes Chapter 65 and Federal Law, directed against Petitioners' property situated within the boundaries of Miami-Dade County. By virtue of a Note and Mortgage dated OCTOBER 20, 2005 and filed for record NOVEMBER 16, 2005, recorded in Book 23966 PAGE 3465 of the Public Records of Miami-Dade County, Florida, Leroy Williams purchased the subject property and gave a Note and Mortgage in favor of Lancaster Mortgage Banking, a Massachusetts Corporation. Allegedly In favor of Lancaster Bank the Note was assigned on the contract to MERS on the same day of Closing illegally without a 30 day notice or any notice to buyer They assigned the note to Mers October 20, 2005, Attached hereto and made a part hereof as Plaintiff/Petitioner's Exhibit "C" is a copy of the subject assignment and note. Neither the Note nor either of the assignment list Defendant/Respondent Deutsche Bank National Trust as a party and the Mortgage does not list MERS as Nominee and no where on the Note is Mers found Defendant Deutsche Bank National Trust was assigned the Note by Mers Who never had an assignment and was not acting as nominee for lancaster so Deutch bank forclosed without any withstanding. Plaintiff/Petitioner challenges the legal standing of Defendants/Respondents to foreclose on the subject property or to sell the property at a foreclosure sale.

11.

Notwithstanding that Deutsche Bank was not listed as a part on either the

5

Note, allonges or Mortgage and had no legal standing to collect the note or foreclose the mortgage, Defendant/Respondent Deutsche Bank initiated a foreclosure against the subject property and obtained a Final Judgment of Foreclosure on or about December 5, 2013. Attached hereto and made a part hereof is a certified copy of the Final Judgment of Foreclosure as Plaintiff/Petitioner's

12.

The property was subsequently sold pursuant to a foreclosure sale by Deutsce bank National Trust, on February 22, 2013. See Plaintiff/Petitioner's composite Exhibit A. A certificate of Title was issued to Deutshe bank National Trust on March 5, 2013. See Plaintiff/Petitioner's composite Exhibit A. Subsequently, the property was transferred by Quitclaim Deed from the purchaser, Deutshe bank National Trust to Plaintiff/Petitioner JAMES BUCKMAN See Plaintiff/Petitioner's Exhibit D1 and D71.

14

Rightful title in and to the subject property is in Plaintiff/Petitioner JAMES BUCKMAN Although ordinarily Plaintiff/Petitioner would take the property subject to any valid first mortgage, as Defendants/Respondents have and had no legal standing to collect the note or to foreclose the mortgage, any such foreclosure was and is wrongful.

Notwithstanding Plaintiff/Petitioner JAMES BUCKMAN purchase of the subject property, Defendant/Respondent Deutsche Bank National Trust Company, as Trustee for Soundview Home Loan Trust 2005-OPT4 Asset-Backed Certificates threatens to Evict Plaintiff/Petitioner's property after a foreclosure sale, although said Defendant/Respondent has never produced any valid or recorded assignment, or other transfer document or other proof that it owns and holds the mortgage on the subject property.

6

15

Plaintiff/Petitioner challenges the legal standing of Defendants/ Respondents to collect the subject note or foreclose the subject mortgage. Standing is jurisdictional, is not waived by Plaintiff/Petitioner, and can be raised at any time Federal rules of procedure 3.1. Plaintiff/Petitioner moves for a Preliminary Injunction/Temporary Restraining Order to restrain and enjoin the sale and eviction of the property by Defendants/Respondents on February 19, 2014 pending resolution of Plaintiff/Petitioner's Quiet Title claim, as more fully set forth in Plaintiff/Petitioner's motion set forth herein below

## INTRODUCTION

13. This is an action brought by Plaintiff for declaratory judgment, injunctive and equitable relief, and for compensatory, special, general and punitive damages.

14. Because MERS never got a Legal Assignment from Lancaster Bank because there

15. was no Leroy William's Mortgage Note that exhisted. So MERS did not Assign the

16. Mortgage Note to Deustch Bank. Which shows that this EVICTION is ILLEGAL THEFT

17. OF THIS PROPERTY, we actually have no rights to own property. here's more proof.

13. Plaintiff, homeowner, disputes the title and ownership of the real

14. property in question (the "Home"), which is the subject of this action, in that the originating mortgage lender, and others alleged to have ownership of Plaintiff's mortgage note and/or Deed of Trust, have unlawfully sold, assigned and/or transferred their ownership and security interest in Promissory Note and Deed of Trust related to the Property, and, thus, do not have a lawful ownership or a security interest in Plaintiff's Home which is described in detail herein For fraud, international infliction of emotional distress, rescission, declaratory relief based,

and violations of T.I.L.A. and R.E.S.P.A., upon the facts and circumstances surrounding Plaintiff's original loan by Leroy williams that was quit claimed to JAMES BUCKMAN the Exhibit D1 transaction and subsequent securitization. Defendant's violations of these laws are additional reasons this Court should quiet title in Plaintiff's property and award damages, rescission, declaratory judgment, and injunctive relief as requested below.

16. From 1998 until the financial crash of 2008-2009, over 60 million home loans where sold by originating lender banks to investment banks to be securitized in a complex series of billions of transactions. The Plaintiff's home loan was one of the 60 million notes that were securitized.

17. Securitization is the process whereby mortgage loans are turned into securities, or bonds, and sold to investors by Wall Street and other firms. The purpose is to provide a large supply of money to lenders for originating loans, and to provide investments to bond holders which were expected to be relatively safe. The procedure for selling of the loans was to create a situation whereby certain tax laws known as the Real Estate Mortgage Investment Conduit (hereinafter "REMIC") Act were observed, and whereby the Issuing Entities and the Lenders would be protected from either entity going into bankruptcy. In order to achieve the desired "bankruptcy remoteness," numerous "true Sales" of the loans had to occur, in which loans were sold and transferred to the different parties to the Securitization.

18. A "True Sale" of the loan would be a circumstance whereby one party owned the Note and then sold it to another party. An offer would be made, accepted and compensation given to the "seller" in return for the Note. The Notes would be transferred, and the Deeds of Trust assigned to the buyers of the Note, with an Assignment made every step of the way, and, furthermore, each Note would be endorsed to the next party by the previous assignee of record.

19. Each REMIC Trust created by the investment banks, usually under New York Law, would be funded with thousands to tens-of-thousands of mortgage notes.

8

In order to maintain their bankruptcy-protected status, REMIC'S had to have closing dates by which every mortgage note that was to be sold to the REMIC had to be owned by the REMIC. Once the REMIC closed, it could accept no more mortgage notes under the terms of REMIC law, and it would begin selling securities backed by payments from homeowners on the notes it "owned".

20. How a particular mortgage loan ended up being transferred to REMIC in the securitizations process is governed by a contract known as a pooling and Servicing Agreement ("PSA"). The PSA is a Trust Agreement required to be filed under penalty of perjury with the United states Securities and Exchange Commission ("SEC") and which, along with another document, the Mortgage Loan Purchase Agreement ("MLPA"), is the operative securitization document created by the finance and securitization industry to memorialize securitizations transactions.

21. When the Plaintiff in this case closed on her property, her original lender (or other entity claiming ownership of the note) signed a PSA that governed plaintiff's particular mortgage note. The PSA agreement, as described in more detail below, detailed the closing date by which the homeowner's loan must be "sold" to the REMIC, and describe exactly how the homeowner's note is to find it's way from the original lender to the REMIC trust.

22. A typical PSA calls for a homeowner's note to be transferred at least four times to different key parties before it comes into possession of the REMIC trustee. Here is a chart detailing the typical key party assignment chain required by a typical PSA:

23. As part of the process, the banks almost universally separated the mortgage note from the deed of trust. Under the common law, the owner of the note has the right to payments on the note, and the owner of the deed of trust has the right to foreclose on the homeowner if homeowner defaults on the note. Traditionally, before investment banks began securitizing mortgage notes, the holder of the note would universally hold the deed of trust. This made sense because the party with the right to collect payments on the note would want to be able to foreclose using the deed of trust if the homeowner defaulted.

9

24. However, to streamline the securitization process, the investment banks created an entity called mortgage Electronic Registrations System ("MERS"), who is one of the defendants in this case. The investment banks, in addition to using MERS' electronic database to track the buying selling and assignments of securitized mortgage notes (by passing the county clerks' offices), would transfer deeds of trust to MERS, thereby separating the mortgage note from the deed of trust. MERS would hold the deed of trust for whoever later claimed to be the "owner" of the homeowner's mortgage note.

25. Plaintiff JAMES BUCKMAN alleges that Defendants, and each of them, cannot show proper receipt, possession, transfer, negotiations, assignment and ownership of the borrower's original Promissory Note and Deed of Trust, resulting in imperfect security interests and claims.

26. Plaintiff JAMES BUCKMAN further alleges that Defendants, and each of them, cannot establish possession and proper transfer and/or Endorsement of the Promissory Note and proper assignment of the Deed of Trust herein; therefore, none of the Defendants, and each of them, do not have the ability to establish that mortgages that secure the indebtness, or Note, were legally or properly acquired.

27. Plaintiff JAMES BUCKMAN alleges that an actual controversy has arisen and now exist between the Plaintiff and Defendants, and each of them. Plaintiff JAMES BUCKMAN desires a judicial determination and declaration of its rights with regard to the Property and the corresponding Promissory note and Deed of Trust. Plaintiff JAMES BUCKMAN also seeks redress from Defendants identified herein for damages, for other injunctive relief and for cancellation of written instruments based upon:

    a. An invalid and unperfected security interest in Plaintiff's Home herein after described;

    b. Void "True Sale(s)' violating FLORIDA law and express terms of the

10

pooling and servicing Agreement ("PSA") governing the securitization of Plaintiff's mortgage'

c. An incomplete and ineffectual perfection of a security interest in Plaintiff's Home;

## I. FACTUAL ALLEGATIONS

## THERE IS ABSOLUTELY NO LANCASTER NOTE AT ALL

Because Leroy Williams did not go to the Closing and did not sign the Notes to LANCASTERBANK, so then the Note was never Assigned to MERS, **exh.C.** Assignment must be recorded within **30 days F.S. 494.0075 3. (3)** our Assignment Was RECORDED 1 YEAR AND 5 MONTHS AFTER THE SALE/CLOSING, The Assignment conveyed, sold and signed 10/20/05 **Recorded 03/21/27, exh. C** Because MERS never got a Legal Assignment from Lancaster Bank because there was no Leroy William's Mortgage Note that exhisted. So MERS did not Assign the Mortgage Note to Deustch Bank. Which shows that this EVICTION is ILLEGAL THEFT OF THIS PROPERTY, we actually have no rights to own property. here's more proof

If Mortgage Note is not recorded by 1 year the Mortgage Note is void. This Note was never signed and never Recorded with Leroy Williams signature from 10/20/05 until today so Mortgage Note is void . And in violation of F.S. 695.01. and see: **Exh. A.**

The Mortgage Note has a space in the right corner of Mortgage Note for the preparer of the Note where the name and post-office address of the natural person who prepared the instrument or under whose supervision it was prepared are legibly printed, type Written or stamped upon such instrument; this Note is void. And in violation of S. 695.26 (1) (b).F.) And then the Note was Conveyed illegally by Lancaster Bank to Mortgage Electronic Registration Systems (MERS) with no thirty day or any notice As required by Florida which renders Note unenforceable and void. F.S. 701.02(1)(2)(3). Notice requirement - The borrower must be giving 15-30 days notice before note is sold or assigned to another entity. **(RESPA Law 12 U.S. CODE § 2605)** the Mortgage Note signed 10/20/05 and the Assignment was on the same day of Sale without required Notice also in the original fraudulent mortgage note **PAGE 11 number 20** states

11

that the sale of note or change of services the borrow must be given notice according to RESPA law which is 15 to 30 days. But the fraudulent Assignment was signed Oct. 20th 2005, **exh. C.** the same day as the fraudulent closing, written on the front page of the Mortgage Note, **exh. A.** which makes this Assignment void.F.S. 701.02(1)(2)(3).

Assignments must be recorded with in 30 days according to Florida STATUTE 494.0075. 3 (2) (3). This Assignment was recorded two years after sale was illegally signed, **exh. C.** this Assignment is totally void. If Assignment is not recorded by 30 days the Assignment is void according to Florida Statute 695.01. The Assignment was signed and notarized Oct. 20th 2005 but was recorded May 21st 2007, one year and 5 months later. **Exh. C.**) (Mclean v. JPMorgan) says you can't foreclose before you own the Note! The Assignment from MERS to Deutsche Bank is Void because assignment was made after foreclosure started 06/20/07, exh. M. and the MERS Assignment to Deutsche Bank was 08/22/07, exh. N. and (Mclean v. JPMorgan). ILLEGAL FAKE NOTARY PUBLIC VOIDS OWNERSHIP ON MORTGAGE NOTE The Notary on the Mortgage Note is a VOID. The Notary stamp must contain Commission or ID number, to identify the person if needed to varify or in court, (Our Mortgage Note for 1977 address has no commission or ID number that's at all Legible to hide their thievery see page 15 of the MORTGAGE Note of Record. n violation of F.S. 117.05 (3)(A) and F.S. 695.26 (1).This Mortgage Note does not have proof of identity of signer as required in violation of F.S. 117.05 #(5) and (5)(a) see exh. C. page 2. at middle of the paper. The Notaries name must be printed under their signature, on 1977 Mortgage Note there is no printed name under the Notary Public ignature in violation of the fake Assignment to MERS. Is void of see exh. C. Page 2. FS. 695.26 (1) (D) (E).New Jersey notary stamp rules is the same as Florida rules, the New Jersey notary of 2005 looks totally different from the Fraudulent one on our Mortgage note, exh. P. and C. The State of New Jersey Notary stamp on our mortgage assignment is a COMEPLETLY MADE UP FRAUD! Exh. C. page 2. and is a punishable felony, S.775.082 775.083 or S.715.84. ILLEGAL FAKE NOTARY PUBLIC VOIDS OWNERSHIP ON MORTGAGE ASSIGNMENT Must have at least one witness. There is no with witness on our Mortgage Assignment in violation of, F.S. 117.05 (b) 1.a.b.c.d.e. see exh. C. page 2. the Assignment is void. The Notary on the Assignment is a fake.

12

The Notary stamp must contain commission or ID number, to identify the person if needed to varify or in court, (Our Mortgage Note for 1977 address has no commission or ID number to hide their thievery in violation of F.S. 117.05 (3)(A) and F. S. 695.26 (1). see exh. C. PAGE 2.The name of each person who executed such instrument is legibly printed, type written, or stamped upon such instrument immediately beneath the signature of such person and the post-office address of each such person is legibly printed, typewritten, or stamped upon such instrument in violation of F.S. 695.01 (1) AND F.S. 695.26 (1) (a) and F.S. 494. 0075 (5) and F.S. 701.02(1)(2)(3) **exh. A.**

54.

## I FIRST CAUSE OF ACTION QUIET TITLE
## FLA. STATUE 95.11 CAL CODE CIVIL PROCEDURE 760.020

NEWLY DISCOVERED EVIDENCE. AND FRAUD FEDERAL RULE 60 (B) (2) (4) (6) AND Fla. R. of Civ. Proc. 1540 (b) (2) STANDING CAN BE QUESTIONED AT (7) ANYTIME FEDERAL RULE 3.1 *This is total Fraud, MERS and Deutsche Bank* (8) *is breaking all Laws to take our property because I as Blacks for Trump have* (9) *been treated bad with BLACK MEGA  Discrimination because of me helping* (10) *Republicans from BUSH, SCOTT TO TRUMP.*

Newly discovered evidence and fraud, March 4th 2018, we went to the Dade County records Department because all Mortgage Notes are Required to be Recorded with Original  Signatures F.S. 701.02(1)(2)(3) **exh. A.** and. We discovered that the Lancaster MORTGAGE NOTE has absolutely no signatures of the so called buyer (Leroy Williams) on Note as Required by F.S. 695.26 (1) (a), which caused me to search the whole record to discover that All Buyer's (Leroy William's) SIGNATURES and INTIALS are all Blacked Out and the blacked out signature as shown on gods2.com #1 showing two Dade County Clerks Jose Silva ID # 311083 and Guetty Jean ID # 217325 behind THEIR Clerk's desk

13

behind protective glass. He's on Video red stamp the mortgage and saying the records dept. will not Record Mortgages without the original signature and She's on video after red stamping and putting my payment receipt on the Certified so called Leroy Williams showing Mortgage Note on Camera, video shows blacked out initials on Lancaster Note. And two managers of the Clerk's office saying there's no way this Note should have been put on Recorded without the Signature, see gods2.com # AA. and AB. and I recorded this all on docket for Leroy Williams there's no signed Mortgage, Promissory or Prepayment Rider Recorded in Dade County. There is no lost Note count in Deustche Bank Complaint and MERS is not listed in the Note as Nominee or anything at all, **exh. A.** Which is why they did a Fake Mortgage Assignment which included the Promissory Note as stated on the bottom of the Assigned note from Lancaster Bank to MERS **exh. C.**, signed by the Vice President of Lancaster (Darlene Perera) the same lady who on the exact same date she signed a fake Allonge to another Bank called Indy Mac Bank before the Assignment to from Lancaster Bank to MERS , illegal **see exhibit. CC 1-5** you can't GIVE a Note to two different entities especially on the same date. And did not record the assignment until 2007 1 year and 5 months after sale of the Note which makes the Note Void according to F.S. **exh. C.** Allowing an unsigned Mortgage Note to be Recorded in Florida which is a Felony, F.S. 817.2341 and 775.082, 775.083 and 775.084. And are all forgeries that can almost be seen under the blacked out ink when comparing that signature to the other signatures of the other notes with the correct signature see **the Plaintiffs Lancster's Recorded Note shows Note has a wrong forged signature that you can see under the blacked out signature, exh. A.** This is the Correct Leroy William's real signature from the other note from real Recorded Note of Leroy Williams other property. From a real Closings, **see pgs. 16 and 20 of, exh. B1 and B2.** And Flamingo Title Company was

14

sued by Attorney Title Insurance Co. Because of money given but no Note, **exh. F**,. And no valid Warranty Deed because Alexander Morera was not there and did not sign the Warranty Deed, **exh. G**. One of the owners of the home 1977 ne 119th road Miami 33181, James Buckman was not at the closing, see affidavit **exh. H**. and James Buckman did not sign anything as it APPEARED on the fake Warrenty Deed, **exh.G**. See James Buckman's real signature on drivers license, **exh. H2**. Someone illegally signed for James Buchman. See Affidavit from Maurice Symonette another owner saying that he (Maurice) was their at the Angry wiped out non closing and witnessed that James Buckman, Tanner Carter, Alexander Morera nor did Leroy Williams show up to the closing and the Warranty Deed was not signed , see **exh. L**. Affidavit from James Buckman stateing that he was not at the closing so there was no Legal Warranty filed on the Record! So payments continued to Bank, **exh. S1, S2, S3**. and then EMC Mortgage Bank EMC. Mortgage co. wrote and said make all payments to INDY MAC BANK, **exh. T**. And Payments were made on time even six months after Deutsche Bank Foreclosure was started 06/20/2007, exh. M. See receipts showing payments **06/19/07 to 09/29/07 4** months after Deutsche Bank oreclosure started **exh. K1, K2,K3, K4**. And unknown Bank. <u>Deustch Bank Lis Pendance date filed with no Due Process Notice to us,</u> see **page 11 of Dade Docket exh. O**. This filed while Payments were still being made and on TIME, **exh.** And notice the Note blacked out the Loan Number so that you could not check it, **exh. A**. they also made big mistake and showed that Lancaster Bank Allonged the Note to IndyMac Bank FSB, **Exh. F**. So the only Bank then that could sell or Assign the Lancaster Note to MERS is IndyMac Bank, of course this was never done. Because Lancaster without Note ownership

15

sold the NOTE illegally to MERS who then illegally Assigned the Note to DEUTSCHE BANK but after they started The Foreclosure lawsuit, see **exh. Q.** and **exh. E3**, which is also illegal according to Mclean Vs. JPMorgan. This **R.** is a totally a made up Foreclosure thievery wow.

## ALSO IF LANCASTER WAS ACTUALLY A NOTE

On or about March 1, 2006 (hereinafter referred to as "closing Date") Plaintiff James Buckman who owns the house that was owned by Leroy Williams who was supposed to entere into a consumer credit transaction with LANCASTER Mortgage Bank LLC BY OBTAINING A $1.5 million mortgage loan secured by a First Trust Deed on the Property in favor of Lancaster LLC. But the SALE NEVER HAPPENED THE FAKE loan on the house was securitized, with the Note and not being properly transferred to Defendant, Deutsche Bank, acting as the Trustee for the LANCASTER Mortgage Bank LLC. holding plaintiff's note. Documents filed with the SEC by the securitization participants allegedly claim that the note and deed of trust at issue in this case were sold, transferred and Securitized by Defendants, with other loans and mortgages with aggregate principal balance of approximately $1.5 million into LANCASTER Mortgage Bank LLC Balance of LLC Trust, which is a Common Law Trust formed pursuant to New York law. A detailed description of the mortgage loans which form the LANCASTER Mortgage Bank LLC is included in Form 424B5 ("The prospectus"), which has been duly filled with the SEC and which c

16

an be accessed through the above mentioned footnote.

An expert, certified, forensic audit of the Plaintiff's loan documents reveals that Plaintiff's mortgage note was required to at least go through this assignment chain of key parties before it reached the REMIC trustee it was destined for. The Plaintiff's PSA requires that his/her note or deed of trust had to be endorsed and assigned, respectively, to the trust and executed by multiple intervening parties in the above chain of assignment before it reached the REMIC Trustee.

Plaintiff executed a series of documents, including but not limited to the Note and Deed of Trust, Securing the Property in the amount of the Note. The Original beneficiary and nominee under the Deed of Trust was mers.

Plaintiff is informed and believes, and thereon alleges, that the purchase mortgage on the property, the debt or obligation evidenced by the Note and the deed of Trust by Plaintiff in favor of the original lender and other Defendants, regarding the Property, was not properly assigned and transferred to Defendants operating the pooled mortgage funds or trusts in accordance with the PSA and/or FLORIDA law of entities making and receiving the purported assignments to this trust. In accordance with the PSA and/or FLORIDA law of the entities making and receiving the purported assignments to this trust.

Plaintiff alleges that the PSA requires that each Note of Trust had to endorsed and assigned, respectively, to the trust and executive by multiple interviewing parties before it reached the Trust. Here, neither the Note nor the Deed of Trust was assigned to the Securitized Trust by closing date. Therefore, under the PSA, any assignments of the Deed of Trust beyond the specified closing date for the Trust are void. Plaintiff further alleges that even if the Deed of Trust had been transferred into the trust by the closing date, the transaction is still void as the Note would not have been transferred according to the requirement for the PSA, Since the PSA requires a complete and unbroken chain of transfer and assignments too and from each intervening. Plaintiff informed and believes, and thereon alleges, that the LANCASTER Mortgage Bank LLC had no officers or directors and no continuing duties other than to hold assets and to issue the series of certificates of investment in mortgage backed securities in the prospectus.

Identified herein below. detailed description of the mortgage loans, which form the   duly

17