IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI DADE COUNTY, FLORIDA

JAMES BUCKMAN and
MAURICE SYMONETTE

Plaintiff,

vs.

Case No. 19-~~030115~~
24184

**SECOSAESSSSSECOND AMENDED COMPLAINT**

FILED BY ____ D.C.

AUG 17 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

LANCASTER MORTGAGE LLC
CO.,DEUTSCHE BANK NATIONAL
TRUST CO. AS TRUSTEE UNDER THE
POOLING AND SERVICING
AGREEMENT SERIES RAST 2006-A8
(CSFB), C/O OCWEN ATTN: Vault Dept.
5720 Premier Park Drive, West Palm
Beach,FL.,33407,SECURITY
EXCHANGE COMMISSION (SEC), U.S.
DEPARTMENT OF THE TREASURY/1.
IRS.

Defendants.

1. QUIET TITLE

2. SLANDER OF TITLE

3. BANK VIOLATED 30 DAY NOTICE TO
   SALE NOTE JN VIOLATION OF FLORIDA
   STAT. 559.715

4. UNJUST ENRICHMENT

5. VIOLATION OF RESPA 12 U.S.C 2605

6. VIOLATION FL. STAT. 697.10 NO
   CONTRACT

7. FRAUD & CONCEALMENT

8. VIOLATON OF FLORIDA STAT.
   45.031(8) PROPERTY SOLD AT
   FORECLOSURE PRICE SO
   LOW THAT IT SHOCKS THE
   CONSCIENCE

9. VIOLATION OF TIMELY
   ASSIGNMENT

10. BANK NO CONSIDERATION
    MONEY MU5T BE G 1 VEN TO
    ASSIGNNOTC

11. ELEVENTH CAUSE OF ACTION
    VIOLATION GAAP FASB FAS 140
    RULE AS GOVERENED BY THE SEC
    AND THE US DEPARTJY?ENT OF THE
    TREASURY/ (IRS)

12. WRONGFUL FORECLOSURE
    FLA.STAT 695.14

**13. Florida Deceptive and Unfair Trade Practice**

**14. Illegal Consumer Collection** *, Rico and Conspiracy*

**15 VIOLATION OF THE 1964 CIVIL RIGHTS**

ACT

## COMPLAINT FOR QUIET TITLE,

*Civil Rights Violation, and violation Fed. Rules and Violation of Bankruptcy*

COMES NOW the Plaintiffs MAURICE SYMONETTE AND JAMES BUCKMAN, who are third party persons to QUITE TITLE **AMENDED COMPLAINT VERIFIED PETITION FOR DECLARATORY RELIEF AND JUDGMENT** as to this property who were not a party to the Foreclosure According to the 3DCA Case NO: 3D19-0821 LOWER TRIBUNAL 2007- 18226 CA-01 on front page of Appealle's Motion to Dismiss the appeal #3, thereby eliminating Res Judicata and Rooker Feildman on Plaintiffs, Exhibit, A2.

## [P JURY TRIAL DEMANDED

("Plaintiff"), complaining about the Defendants as named above, and each or them, as follows

PARTIES that Share interest in the Property:

1. Plaintiff MAURICE SYMON ETTE is now, atld at all times relevant to this action, a resident of the County of DADE, State of FLORIDA. and a holder of the Title to this said property

1A. Plaintiff James Buckman is now and at all times relavant to this action a resident of Dade County and a holder of title to this said property.

2. Lancaster Mortgage Bank LLC Defendant, who may have interest in the subject Property. JAMES BUCKMAN is informed and believe, and there on allege that, Defendant LANCASTER Mortgage Bank LLC, is a corporation, doing business in the County of DADE, State of FLORIDA and is the purported Sponsor for Securitized Trust and/or

purported participant in the imperfect securitization of Note and/or the Deed of Trust as more particularly described in this Complaint. who's address is 1794 Oregon PIKE LANCASTER P.A. 17601.

3. DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE, UNDER THE POOLING AND SERVICING AGREEMENT SERIES RAST 2006-A8 (CSFB), who claims to own the Subject Property C/O OCWEN: Vault Dept. who's address is 1761 East. Saint Andrews Place. Santa Ana California. 92705

4. U.S. TREASURY/IRS who's address is 1500 Pennsylvania Ave., N.W. Washington, D.C. 20220.

The UNITED STATES Treasury may have interest in this because the note was sold in RIMIC which by law had to destroy the Note to turn it into a Bond or a stock because the Note cannot exist at the same time as the Bond, because that would be called double-dipping and because the Note was destroyed The U.S. Internal Revenue (U.S. Treasury) gave Deutsche Bank National Trust Company As Trustee, Under The Pooling And Servicing Agreement Series Rast 2006-A8 (CSFB) a Tax wright off from the U.S. Treasury as a loss which gives The U.S. Treasury interest in the property so therefore the title must be Quieted concerning The U.S. Treasury. Quite TITLE is the sole reason that 1 am Suing the SEC and the us dept. of the

5.  SECURITY AND EXCHANGE COMMISSION who's address is 801 Brickell AVE. #1800 Miami FL. 33131.

## CLAIM OF RELIEF

. Plaintiffs Brings this action against DEUTSCHE BANK NATJONAL TRUST COMPANY AS TRUSTEE, UNDER THE POOLING AND SERVICING AGREEMENT SERIES RAST 2006-A8 (CSFB) from now seen as DEUTSCHE BANK NATJONAL TRUST. and Does 1- 88 for selling Plaintiff's property At a Foreclosure sale to Deprive plaintiffs of their Residence without any lawful claim to the property because we never signed or did any Warrety Deed, Mortgage or Note at all with Deffendants. And for using **RACISM** and **DISCRIMINATION** by DEUTSCHE BANK NATJONAL TRUST to Evict us out of a White Neighborhood because we are Black and lying to the Police saying we are not allowed in the house who removed us from the house without legally evicted violating our Bankruptcy earlier to evict us out of the house without a Court Order several times and stealing my furnishings property and four story 74 ft. yacht because we are ***BLACK and helpless***. And for RICO Colluding with DADE COUNTY JUDGES, CLERK OF THE COURTS, DADE COUNTY RECORDS NOTARY'S, ATTORNEYS TITLE INSURANCE FUND, DADE COUNTY SHERIFFS DEPT. AND DEUTSCHE BANK NATJONAL TRUST COMPANY AS TRUSTEE, UNDER THE POOLING AND SERVICING AGREEMENT SERIES RAST 2006-A8 (CSFB) from now seen as DEUTSCHE BANK NATJONAL TRUST. and Does 1- 88, LANCASTER Mortgage Ban LLC, MERS AND INDY MAC BANK to steal our house OF WHO I REPORTED TO THE FBI AND WILL LATTER SUE

The SECURITY AND EXCHANGE COMMISSION (SEC) may have interest in this because the fake Note was sold on the Market Governed by the SEC as evidenced by the fact that DEUTCHE BANK NATIONAL

SERVICING AGREEMENT SERIES RAST 2006—A8 (CSFB), which is

The PSA S.E.C.

<u>Stock and Bond Market therefore The Title must be quieted</u>

<u>Against the SEC. Quite TITLE is the sole reason that I am Suing the</u>

<u>SEC and the us dept. of the Treasury/IRS in this Complaint.</u>

Defendant, LANCASTER Mortgage Bank LLC Plaintiff JAMES
BUCKMAN is informed and believe, and there on ailege that,
Defendant LANCASTER Mortgage Bank LLC, is a corporation, doing
business in the County of DADE, State of FLORIDA and is the
purported Sponsor for Securitized Trust and/or purported participant
in the imperfect securitization of Note and/or the Deed of Trust as
more particularly described in this Complaint.

2. Defendant, LANCASTER Mortgage Bank LLC. Plaintiff  JAMES BUCKMAN is
informedand believe, and thereon allege that, Defendant LANCASTER
Mortgage Bank LLC, is a corporation, doing business in the County of DADE,
State of FLORIDA and is the purported Master Servicer for Securitized Trust
and/or a purported participant in the imperfect securitization of the Note
and/or the Deed of Trust as more particularly ascribed in this Complaint,

3. At all times relevant to this action, Plaintiff JAMES
BUCKMAN has owned the Property located at 1977 NE 119th RD
MIAMI Eh. 33181 (the"property").

4.  Plaintiff JAMES BUCKMAN is informed and believe, and
thereon allege, that at all times herein mentioned, each of the
Defendants were the agents, employees, servant and/or the joint-

course and scope of such agency, employment and/or joint venture.

## INTRODUCTION JURISDICTION AND VENUE

5.   The transactions and events which are the subject matter of this Complaint all occurred within the County of DADE, State of FLORIDA. and the United States DEALING WITH THE U.S. TREASURY AND THE FEDERAL SECURITIES AND EXCHANGE COMMISSION (SEC) along with Federal Violations gives this Federal Court Jurisdiction.

6.   The Property is located within the County of DADE, State of FLORI DA with and address of 1977 NE 119th RD MIAMI FL. 33181.  Maurice  Symonette  I  live  in  the  of  Texas Defendants/Respondents are citizens of the States of Oregon, CA, DC, New York and Florida. There is complete diversity of citizenship between   Plaintiff/   Petitioner   and   Defendants/Respondents. Petitioners seek to quiet title to Petitioners' property. The amount in controversy exceeds $75,000.00.

## BACKGROUND

16. On information and belief, Deutshe Bank & Lancaster could not prove the terms of the instrument and its right to enforce the instrument. The court  may  not  enter  judgment  in  favor  of  the  person  seeking enforcement  unless  it  finds  that  the  person  required  to  pay  the

(3)(A) and

F. S. 695.26 (1). see exh. C. PAGE 2.The name of each person who

executed such instrument is legibly printed, type written, or stamped

upon such instrument immediately beneath the signature of such person

and the po,st-office address of each such person is legibly printed,

typewritten, or stamped upon such instrument in violation of F.S. 695.01

(1) AND F.S. G9S.26 (1) (a) and F..S. 494. 0075 (5) and

F.S. 701.02 (1)(2)(3) exh. A.

54.

## I FIRST CAUSE OF ACTION QUIET TITLE
## FLA. STATUE 95.11 CAL CODE CIVIL PROCEDURE 760.020

**NEWLY DISCOVERED EVIDENCE. AND FRAUD.FEDERAL RULE 60 (B) (2) (4)**

**(6) AND Fla. R. of Civ. Proc. 1540 fbl f2l STANDING CAN BE QUESTIONED AT**

**(7) ANYTIME FEDERAL RULE 3.1** *This is total Fraud,* **MERS and Deutsche Bank**

**(8)** *is* **breaking all Laws** *to take* **our** *property because we are black in a white neighborhood*

*As said to us by a Deustche Bank Rep who said we whites don't want Blacks in this*

*Neighborhood  and  the police took my yacht because my Neighbor said he didn't Niggers on*

*Yachts in his Neighborhood see  Gods2.com video 10A*

Newly discovered  evidence and fraud, March 4tl /018, we went to the Dade

County records Department because all Mortgage Notes are Required to be

Recorded with Original Signatures F.S. 701.02 (1)(2)(3) exh. A. and. We

discovered that the Lancaster MORTGAGE NOTE has absolutely no signatures of

the so called buyer (Leroy Williams) on Note as Required by F.S. 695.26 (1) (a),

which caused me to search the whole record to discover that All Buyer's (Leroy

William's) SIGNATURES and INTIALS are all Blacked Out and the blacked out

signature as shown on gods2.com #1 showing two Dade County Clerks Jose

Silva lD # 311083 and Guetty Jean 1 D # 21732S behind THElR Clerk's desk

behind protective glass. He's on Video red stamp the mortgage and saying the

records dept. will not Record Mortgages without the original signature and She's

on video after  red stamping and putting my payment i eceipt on the Certified so

called Leroy Williams showing Mortgage Note on Camera, video shows blacked

out initials on Lancaster  Note.

 And two managei s of the Clerk's office saying there's no way this Note should

have been put on Recorded without the Signature, see gods2.coin # AA. and AB.

and I recorded this

all on docket for Leroy Williams there's no signed Mortgage, Promissory or Prepayment Rider Recorded in Dade County. There is no lost Note count in Deustche Bank Complaint and MERS is not listed in the Note as NOminee or anything at all, exh. A. Which is why they did a Fake Mortgage Assignment which incl uded the Promissory Note as stated on the bottom of the Assigned note from Lancaster Bank to MERS exh. C., signed by the Vice President of Lancaster (Darlene Perera) the same lady who on the exact same date she signed a fake Allonge to another Bank called lndy Mac Bank before the Assignment to

from Lancaster Bank to MERS , illegal **see exhibit. CC 1-5** you can't GIYS a Note to two different entities especially on the same date. And did not record the assignment until 2007 1 year and 5 months after sale of the Note which makes the Note Void according to F.S. exh. C. Allowing an unsigned Mortgage Note to be Recorded in Florida which is a Felony, F.S. 817.2341 and 775.082, 775.083 and 775.084. And are all forgeries that can almost be seen under the blacked out ink when comparing that signature to the other signatures of the other notes with the correct signature see **the Plaintiffs Lancster's Recorded Note shows Note has a wrong forged signature that you can see under the blacked out signature, exh. A.** This is the Correct Leroy William's real signature from the other note from real Recoided Note of Leroy William's other nronerty. From a

 real Closings, see pgs. 16 and Z0 of, exh. B1 and B2. And Flamingo Title

Company was sued by Attorney Title Insurance Co. Because of money given

but no Note, exh. F,. find no valid Warranty Deed because Alexander Morera

was not there and did not sign the Warranty Deed, exh. G. One of the owners of

the home 1977 ne 119th road Miami 33181, James Buckman was not at the

closing, see affidavit exb. H. and James Buckman did not sign anything as it

APPEARED on the fake Warrenty Deed, **exh.G.** See James Buckman's

real signature on ilrivers license, exh. H2. Someone illegally signed for

James Buchman. See Affidavit from Maurice Symonette another owner

saying that he (Maurice] was their at the Angry wiped out non closing and

witnessed that James Buckman, Tanner Carter, Alexander Morera nor did

Leroy Williams show up to the closing and the Warranty Deed was not

signed , see exh. L. Affidavit from James Buckman stateing that he was not

at the closing so there was no Legal Warranty filed on the Record! So

payments continued to Bank, exh. SP, S2, S3. and then EMC Mortgage Bank

EMC. Mortgage  co. wrote  and  said make all payments to INDY MAC BANK.

And Payments were made on time even six months after Deutsche Bank

Foreclosure was started 06/20/2007, exh. M. See receipts showing

payments 06/19/07 to 09/29/07 4 months after Deutsche Bank oreclosure

started exh  K1, K2,K3, K4. And unknown Bank. Deustch Bank Lis

Pendance date filed with no Due Process Notice to us, see page 11 of Dade Docket

exh. 0. This filed while Payments were still being made and on TIME, exh.

And notice the Note blacked out the Loan Number so that you could

not check it, exh. A. they also made big mistake and showed that Lancaster

Bank Allonged the Note to IndyMac Bank FSB, Exh. F. So the only Bank

then that could sell or Assign the Lancaster Note to MERS is IndyMac Bank,

of course this was never done. Because Lancaster without Note ownership

sold the NOTE illegally to MERS who then illegally Assigned the Note to

DEUTSCHE BANK but after they started The Foreclosure lawsuit, see exh.

Q. and exh. E3, which is also illegal according to Mclean Vs. JPMorgan. This

R. is a totally a made up Foreclosure thievery wow.

LANCASTER MORTGAGE BANKERS, LLC may have or claim an interest in the

property that is the subject of this Foreclosure action by virtue of a

mortgage recorded in official **Records Booh** 23966, **Page** 3483, or **may otherwise**

**claim an interest in** the property. Pirst Commercial **CORP,** may have or claim an interest

in the property that is the subject of the foreclosure action by Virtue of A Fake Mortgage.


2. The interest of each Defendant are subject, Subordinate and inferior to the

right, title, **interest** and **lien of** plaintiffs mortgage with the exception of any

special **assessments** that are **superior** Pursuant to Florida Statues 159 (2006),

and Florida Statues 170.09 (2006)


3. SEC May have an interest in the **property as** evidenced by DEUTSCHE **Bank**

NATIONAL TRUST CO. AS TRUSTEE UNDER THE POOLING AND SERVICING

AGREEMENT SERIES RAST 2006-A8 (CSFB), C/O OCWEN ATTN: Vault Dept.

19

57Z0 **Premier** Park Drive,

West Palm Beach, FL., 33407 having the note on the SEC **stocks** or bonds market so they must. ALSO IF LANCASTER WAS ACTUALLY A NOTE

On or about March 1, 2006 (hereinafter referred to as "closing Date")

Plaintiff James Buckman who owns the house that was owned by Leroy

Williams who was supposed to enter into a consumer credit transaction

with LANCASTER Mortgage Bank LLC BY OBTAINING A $1.5 million

mortgage loan secured by a First Trust Deed on the Property

in favor of Lancaster LLC. But the SALE NEVER HAPPENED THE MAKE loan on the house

was securitized, with the Note and not being properly transferred to Defendant,

Deutsche Bank, acting as the Trustee for the LANCASTER Mortgage Bank LLC.

holding plaintiffs note. Documents filed with the SEC by the securitization

participants allegedly claim

that the note and deed of trust at issue in this case were sold, transferred and

Securitized by Defendants, with other loans and mortgages with aggregate

principal balance of approximately $1.5 million into LANCASTER Mortgage

Bank LLC Balance of CCC Trust, which is a Common law Trust formed

pursuant to New York law. A detailed description of the mortgage loans

which form the LANCASTER Mortgage Bank LLC is included in Form 424BS

("The prospectus"), which has been duly filled with the SEC and which c

an be accessed through the above mentioned footnote.

 An expert, certified, forensic audit of the Plaintiffs loan documents reveals that
Plaintiffs mortgage note was required to at least go through this assignment
chain of key parties before it reached the REMIC trustee it was destined
for:The Plaintiffs PSA requires that his/her note or deed of trust had to be
endorsed and assigned, respectively, to the trust and executed by multiple
intervening parties in the above chain of assignment before
 it reached the REMIC Trustee.
Plaintiff executed a series of documents, including but not limited to the Note
and Deed of Trust, Securing the Property in the amount of the Note.The

Original beneficiary and nominee under the Deed of Trust was mers. Plaintiff is informed and believes, and thereon alleges, that the purchase mortgage on the property, the debt or obligation evidenced by the Note and the deed of Trust by Plaintiff in favor of the original lender and other Defendants, regai'ding the Property, was not properly assigned and transferred to Defendants operating the pooled mortgage funds or trusts in accordance with the PSA and/or FLORIDA lay of entities making and receiving the purported assignments to this trust. In accordance with the PSA and/or FLORIDA law

of the entities making and receiving the purported assignments to this trust. Plaintiff alleges that the PSA requires that each Note of Trust had to endorsed and assigned, respectively , to the trust and executive by multiple interviewing parties before it reached the Trust. Here, neither the Note nor the Deed of Trust was assigned to the Securitized Trust by closing date. Therefore, under the PSA, any assignments of the Deed of Trust beyond the specified closing date for the Trust are void. Plaintiff further alleges that even if the Deed of Trust had been transferred into the trust by the closing date, the transaction is still void as the Note would not have been transferred according to the requirement for the PSA, Since the PSA requires a complete and unbroken chain of transfer and assignments too and from each intervening. Plaintiff informed and believes, and thereon alleges, that the LANCASTER Mortgage                          Bank LLC had no officers or directors and no continuing duties other than to hold assets and tO issue the series of certificates of investment in mortgage backed securities in the prospectus.

Identified herein below. detailed description of the mortgage loans,which  form the

dul
y filled with the SEC and Which can be accessed through the below mentioned footnote.

Plaintiff is informed and believes, that Defendants Deutsche bank, alleges that it is the "holder and owner" of the Note and the beneficiary of the Deed of Trust , However, the Note and Deed of trust identify the mortgage and not holder as the original lender allegedly sold the mortgage loan to LANCASTER Mortgage Bank LLC
Plaintiff further alleges that no documents or records can be produced that demonstrate that prior to the closing date for LANCASTER Mortgage Bank

23

LLC the note duly endorsed, transferred and delivered to LANCASTER Mortgage Bank LLC including all interviewing transfers. Nor can any documents or records be produced that demonstrate that prior to the closing date, the Deed of Trust was duly assigned, transferred and delivered to LANCASTER Mortgage Bank LLC including all intervening assignments.

Plaintiff further alleges that any documents that purport ai·y interest in the Note to LANCASTER Mortgage Bank LLC after the Trust closing date are void as a matter of law, pursuant to NEW YORK triist law an.d relevant portions of the PSA.

Plaintiff JAMES BUC KMAN'S Leroy Williams) debt or obligation did notcomply with New York law, and/or other laws and 5tatues, and , thus, do not constitute valid and enforceable "True Sale." Any security interest in the Property was, thus , never

perfected. The alleged holder of the Note is not the beneficiary of the Deed of Trust The alleged beneficiary of Plaintiffs Deed of Trust does not have the requisite title, perfected security interest or standing to proceed in a foreclosure; and/or not the real party in interest with regard to any Action taken to be taken against the property.

Plaintiff JAMES BUCKMANS is also informed and believe, and thereon alleges that at all times herein mentioned, and any assignment of a Deed of Trust without proper transfer of the Obligation that it secures is a legal nullity.

In order for the Trustee of the securitized trust to have a valid and enforceable secured claim against Plaintiffs Home, the Trustee must prove and certify to all parties that, among other things required under the PSA: There was a complete and unbroken chain of endorsements and transfers of the Note from and to each party to the securitization transaction ( which should be from the A Mortgage 0 riginator to th e (B) Sponsor tothe(C) Depositor to the (D) Trust/Trustee, anti that all these endorsements and transfers were completed prior to the Trust closing ilates ( See Discussion below); and The Trustee of the Securitized Trust had actual physical possession of the Note at that point in time, when all endorsements and assignments had been completed. Absent such proof, Plaintiff JAMES BUCKMAN alleges Plaintiff JAMES BUCKMAN's Home that is the Subject of this action.

Therefore, if the Defendants, and each of them did not hold and possess the Note on or before the closing date of Trust herein, they are estopped

and precluded from asserting any secured or unsecured claim in this
case

Plaintiff JAMES 8UCKMAN is informed and believes, and thereon alleges,
that pursuant to the terms of the PSA, the Mortgage Originator (i.e., the
original lender herein) agreed to transfer and endorse to the Trustee for
the Securitized trust, without recourse, including all intervening transfers
and assignments, all of its right, title and interest in and to the mortgage ioan
(Note) of Plaintiff JAMES BUCKMAN herein and all other mortgage loans
identified in the PSA. Plaintiff JAMES BUCKMAN

is further informed and believes, and thereon alleges, that the PSA pro
ides that the transfers and âSSÎgnments are absolute, were made for
valuable consideration, to wit, in exchange for the certificates described
in the PSA, and were intended by the parties to be a bonafide or "True
sale." Since, as alleged herein below, True sales did not actually occur,
Plaintiff alleges that the Defendant Trustees are estopped and precluded
from asserting any secured or unsecured claim in this case.

Plaintiff JAMES BUCKMAN is further informed and believes, and thereon
alleges, that as a result of the PSA and other documents signed under oath in
relation thereto the Mortgage Origitlator, sponsor and Depositor are
estopped from claiming any interest in the Note that is allegedly secured
by the Deed of Trust on Plaintiff JAMES BUCKMANS Home herein.

29.      Plaintiff JAMES BUCKMAN is informed and believe, and
thereon allege, that the Note in this case and the other mortgage loans
identified in the PSA, were never actually transferred and delivered by the
Mortgage Originator to the Sponsor or to the Depositor from the Depositor to
the Trustee for the Securitized Trust. Plaintiff JAMES BUCKMAN further alleges,
on information and belief, that the PSA herein provides that the Mortgage Files of
the Mortgages were to be delivered to LANCASTER Mortgage Bank LLC which
Mortgage Files include the original Deeds of Trust, herein. Based upon the
foregoing, Plaintiff JAMES BUCKMAN is further informed and believe, and
thereon allege, that the following deficiencies exist, in the "True Sale" and
securitization process as to this Deed of *trust* whirhrenders invalid any *security*
interest in the Plaintiff JAMES BUCKMANS mortgage, including, but not limited
to:

a The splitting *or* separation of title, ownership and interest in Plaintiff
JAMES BUCKMANS Note and Deed or Trust of which the original lender is the

holder, owner and beneficiary of Plaintiff JAMES BUCKMAN'S Deed or Trust;

   h When the loan was sold to each interviewing entity, there were no Assignments of the Deed of trust to or from any interviewing entity at the time of the sale. Therefore, "True Sales" could not and did not occur;

   c   The failure to assign and *tryusher* the beneficial interest in Plaintiff s Deed of Trust

z1

to Deutsche Bank, in accordance with PSA of the Defendants, as Securitization Participants;

    d  the failure to endorse, assign and transfer Plaintiff JAMES BUCKMANS NOTE AND/OR mortgage to Defendant Bank, as Trustee for LANCASTER Mortgage Bank LLC

    E. No Assignments of Beneficiary or endorsements of the Note to each of the intervening entities in the transaction ever ocrurred under Florida Law, which is conclusive proof that no true sales occurred as required under PSA filed with the SEC; and

    F. Defendants, and each of them, violated the pertinent terms of the PSA.

    30. Plaintiff )AMES BUCKMAN, therefore, alleges, upon information and belief, that neither the securitization transaction, nor any of the Defendants in this case, hold a perfected and secured claim in the Property; and that all Defendants nre estopped and precluded inserting an unsecured claim against Plaintiff JAMES BUCKMAN'S estate.

    31.    The terms of the finance transaction with LANCASTER Mortgage Bank LLC are not clear or conspicuous, nor consistent, and are illegal which violates several statues and is in essence creates a fraudulent and unenforceable loan. further, this loan was underwritten without proper due diligence by LANCASTER Mortgage Bank LLC as evidenced by their fail ure to verify borrower's income utilizing signed IRS Income Tax Disclosure Eorm 4S06T which would have provided past borrower tax returns. LANCASTER Mortgage Bank LLC also used a "GDW Cost of Savings " as the Index for basis of this loan. Because the Lender controls this lnder and it is directly based upon the parent company it was not a valid index for the basis of the loan.

32.    In addition, and unbeknownst to Plaintiff JAMES BUCKMAN, INDY MAC BANK, EMC MORTGAGE BANKERS LLC knew or should have known that Plaintiff JAMES LUCKMAN could not qualify for or afford by, for example the underwriter has approved this loan based upon credit scores and the borrower's Stated Income only Had LANCASTER Mortgage bank LLC used a more accurate and appropriate factor, such as Tax Forms and a more determinative lever of scrutiny of determining comply with the requirement to provide Plaintiff JAMES BUCKMAN

22

with a Mortgage Loan Origination Agreement the debt to income ratio,
Plaintiff JAMES BUCKMAN with a Mortgage Loan Origination Agreement
the debt to income ratio, Plaintiff JAMES BUCKMAN WITHA MORTGAGE
LOAN ORIGNATION

Agreement the debt income ratio, Plaintiff JAMES BUCKMAN would not
have qualified for the loan in the first place. Consequently, LANCASTER
Mortgage Bank LLC SOLD PLAINTIFF JAMES BUCKMAN a loan product
that it knew or should have known would never be able to be fully paid
back by Plaintiff

JAMES BUCKMAN.

55. Additionally, Defendants and each or them, neither
explained the workings of the entire mortgage loan transaction,
how the rates, rinance charges, costs and fees were computed,
nor the inherent volatility of the loan products provided by
defendants.

56. The purpose of entering into the above-described mortgage
loan transactions was for Plaintiff to eventually own the Property. That
purpose was knowingly and intentionally thwarted and indeed made
impossible by Defendants combined actions as alleged herein.

S7,    Plaintiff JAMES BUCKMAN'S title to the above-described
property is derived as follows: On or about March 1, 2006 (hereinafter
referred to as "Closing Date") Leroy Williams we thought entered into a
consumer credit transaction with LANCASTER Mortgage Bank LLC by
obtaining a $2,600,000.00 mortgage loan secured now by Plaintiff
JAMES BUCKMAN'S principal residence, ( Subject Property). This note
was thought to be secured by a First Trust Deed on the Property in
favor of LANCASTER Mortgage Bank LLC

58.    All Defendants named herein claim an interest and estate in the property adverse to plaintiff in that defendant asserts he's is the owner of the note secured by the deed of trust to the property the subject o *f* this suit.

59. All Defendants named herein claims an interest and estate in the property adverse to plaintiff JAMES 8UCKMAN in that defendant asserts he is

23

The claim of all defendant are without any right whatsoever, and defendants have no right, estate, title lien or interest in or to the property, or any of the property.

60.  The claim of all defendants herein named, and each of them, claim some estate, right, title, lien or interest in or to the property adverse to Plaintiff JAMES BUCKMAN s title, and these claims constitute a cloud on plaintiffs title to the property.

61.  Plaintiff JAMES BUCKMANs, therefore, allege, upon information and belief, that none of the parties to neither the securitization transaction, nor any of the Defendants in this case, hold a perfected and secured claim in the property; and that all Defendants are estopped and precluded from asserting an unsecured claim against P1aintiff]AMES BUCKMANS estate.

62.  Plaintiff JAMES BUCKMAN requests the decree permanently enjoin and all persons claiming under them, from asserting any adverse claim to plaintiffs title to the property; and

63.  Plaintiff JAM US BUCKMAN request the court award plaintiff costs of this action, and such other relief as the court may deem proper.

B. **Defendant MERS cannot be a Real Party in Interest in a Securitized mortgage**

64.  Since the creation of Plaintiff JAMES BUCKMAN'S Note herein and Deed of Trust, Defendant MERS was named the "beneficiary" of the Deed of Trust.

65. Plaintiff is informed and believes, and thereon alleges, that

2

DefendantsMERS lacks the authority under its corporate charter to foreclose a mortgage, or to own or transfer an interest in a securitized mortgage because MERS charter limits MER's powers and duties to functioning as electronic registration system of certain types of securities. Plaintiff JAMES BUC kMAN iS inforined and believes, and thereon alleges, that in order to conduc a foreclosure action, a person or entity musthave standing.

66. Plaintiff JAMES BUCKMAN is informed and believes, and thereon alleges, that pursuant to New York law, to perfect the transfer of mortgage paper as collateral, the owner should physically deliver the note to the transferee. Without physical transfer, the sale of the note is invalid as a fraudulent conveyance or as unperfected.

67. The note is this action identifies the entity to whom it was payable, the original lender. Therefore. the Note herein cannot be transferred unless it is endorsed; the attachments to the notice of default do not establish that endorsements were made, nor are there any other notices which establish that the original lender endorsed and sold the note to another party.

68. Furthermore, insofar as the parties to the securitization of Plaintiff JAMES BUCKMAN'S Note and Deed of Trust base their claim that the Note was transferred or assigned to Defendant Deutsche Bank, the Trustee of the Securitized Mortgage herein, by the original lender, it is well established state law that the assignment of a Deed of Trust does not automatically assign the underlying promissory note and right to be paid and the security interest is incident of the debt.

Pursuant to state law, to perfect the transfer of mortgage papers as collateralfor a debt, the owner should physically deliver the note to the transferee. Without physical transfer, the sale of the note is invalid as a fraudulent conveyance, or as unperfected. The Note herein specially identifies the party to whom it was payable to and the Note, therefore, cannot be transferred unless it is endorsed .

69. Defendants, and each of them, cannot produce any evidence that the Promissory Note has been transferred; therefore,, Defendant MERS could only transfer whatever interest it had in the Deed of Trust her ein. the Promissory Note and Deed or Trust are inseparable: an assignment of the Note carries the mortgage(i.e., Deed of Trust) with it, while an assignment of the Deed of Trust alone is a nullity. Therefore, if one party receives the Note and another party receives the Deed of Trust (as in this case), the holder of the Note prevails regardless of the order in which the interest were

transferred.

69. Defendants MERS has failed to submit documents authorizing MERS, as nominee for the original lender, to assign the subject mortgage to the foreclosing trustee. Hence, MERS lacked authority as mere nominee to assign Plaintiff's mortgage, making any assignment from MERS defective.

70. In the instant action, MERS, as the nominee not only lacks authority toassign the mortgage, but cannot demonstrate the Trustee's knowledge or assent to the assignment by MEHS to the foreclosing trustee.

71. Any attempt to transfer the beneficial interest of a trust deed withoutactual ownership of the underlying note, is void under law. Therefore, Defendant, MERS, cannot establish that it is entitled to assert a claim in this case. For this reason, as well as the other reasons set forth herein below, MERS cannot transfer an interest in real property, and cannot recover anything from Plaintiff.

72. Defendants, and each of them, through the actions alleged above, have or claim the right to illegally commence foreclosure under the Note on the Property viaa foreclosure action supported by false or fraudulent documents. Said unlawrul foreclosure action has caused and continues to cause Plaintiffs great and irreparable injury in that real property is unique. FLA. STATU E 95.11 CAL CODE CIVIL PROCEDURE 760.020. Plaintiffs seeks to quiet title against the claims of the Defendants and all persons claiming any legal or equitable right, title, estate, lien, or adverse interest in the property as of the date the complaint was filed (FL. Statute 95.11 Cal Code Civil Procedure 760.020). Plaintiffs is the title holder of the property according to the terms of a grant Deed Dated Sept. 07, 14, 2006. Lancaster Bank securitized plaintiffs single-family residential mortgage loan by Selling the Note as a Security on the stock market. Plaintiff is informed and believes that the unlawful beneficiay has been paid in full. The mortgage states in paragraph lender shall request trustee to reconvey the property and shall surrender this security instrument and all Notes evidencing debt secured this security instrument to Trustee Trustee shall reconvey the property without warranty to the person or persons legally entitled to it ... Mortgage does not state that Plaintiff must make a full payment, only that all secured sums must be paid. Plaintiff alleges that the obligations owed to Lancaster under the mortgage were fulfilied and the loan was fully paid when Lancaster received funds in excess of the balance

2

on the NOTE as Proceeds of sale through securitization(s) of the loan and insurance proceeds from credit default swaps. We know that MERS was used to sell the NOTE in a bundle of 5000 other NOTES on the Market unendorsed so as to be dble to sell it over and over again with each investor believing he owns the Note and to stop ir vestoi s from going afl er and collecting on the investment.

73. Reconveyance upon payment of all sums secured by this security instrument, FLA. STATUE 95.11 CAL CODE CIVIL PROCEDURE 760.020 Plaintiff

74. Kelley v. U pshaw, 39 Cal. 2d 179, 192, 246 P.2d 23 (1952); Hyde v. Mangan, 88 Cal. 319, 327, 26 P.180 (1891); Polhemus v. Trainer, 30 Cal. 685, 688, 1866 WL 831 (1866). See Johnson v. Razey, Cal. 342, 344, 184 P. 657 (1919).

75. The wrongful conduct of the above specified Defendants and each of them, unless restrained and enjoined by an Order of the Court, will continue to cause great and irreparable harm to Plaintiff. Flaintiff will not have the beneficial use and enjoyment of its Home and will lose the property.

76. Plaintiff has no other plain, speedy or adequate remedy and the injunctive relief prayed ror below is necessary and appropriate at this time to prevent irreparable loss to Plaintiff. Plaintiff has surfered and will continue to suffer in the future unless Defendants wrongful conduct is restrained and enjoyed because real property is inherently unique and it will be impossible for Plaintiff to determine the precise amount of damage it will suffer.

## SECOND CAUSE OF ACTION SLANDER OF TITLE

77. Plaintiff JAMES BUCKMAN re-alleges and incorporates by reference all preceding paragraphs as thoug:1 fully set forth herein.

78. Plaintiff JAMES BUCKMAN incorporates here each and every allegation set forth above.

79. Defendants, and each of them, disparaged Plaintiff JAMES BUCKMAN's eKclusive valid title by and th rough the preparing ,

posting, publishing, and recording of the documents previously described herein, including, but not limited to , the Notice of Default, Notice of Trustee's Sale, and Ti ustee's Deed.

80. Said Defendants knew or should have known that such documents were improper in that at the time of the execution and delivery of said documents Defendants had no right, title, or interest in the Property. These documents were naturally and commonly to be interpreted as denying, disparaging, and casting doubt upon Plaintiff s **legal** title to the property. By posting, publishing, and recording said documents' disparagement of Plaintiffs legal title was made to the world at large.

81. As a direct and proximate result of Defendants conduct in publishing these documents, Plaintiff JAMES BUCKMAN'S title to the Property has been disparaged and slandered, and there is a cloud on Plaintiff JAMES BUCKMAN's title which was obtained by quit claim deed on 1/01/2007 see exhibit and Plaintiff has suffered, and continues to suffer, damages in an amount to be proved at trial

82. AS a further piOKimate result of Defendants conduct, Plaintiff James Buckman has incurred expenses in order to clear title to the property. Moreover, these expenses are continuing, and Plaintiff James 8uckman will incur addition charge for such purpose until the cloud on Plaintiffs title to the property has been removed. The amounts of future expenses and damages are not ascertainable at this As a further direct and proKimate result of Defendants conduct, Plaintiff James Buckman has suffered humiliation, mental anguish, anxiety, depression, and emotional and physical distress, resulting in the loss of sleep and other injuries to his and her health and well-being, and continues to suffer such injuries on an ongoing basis. The amount of such damages shall be proven at trial. At the time that the false

anddisparaging documents were created and published by the Defendants, Defendants knew the documents were false and created and published them with the malicious intent to injure to Plaintiff James Buckman and deprive them of their exclusive right, title, and interest in the Property, and to obtain the Property for their oivn

use by unlawful means. The conduct of the Defendants in publishing the documents described above was fraudulent, oppressive, and malicious. Therefore, Plaintiff James Buckman is entitled to an award of punitive damages in an amount sufficient to punish Defendants for their malicious conduct and deter such misconduct in the future.

### THIRD CAUSE OF ACTION: THE BANK VIOLATED THE THIRTY-DAY NOTICE RULE THAT SAYS BANK MUST GIVE WHEN THEY SALE OR ASSIGN THE NOTE AND CASE MUST BE DISMISSED FLA. STAT. 559.715

83. The plaintiff must give written notice within 30 days of the assignment Fla. Courts have demanded strict compliance with the Statute and have held that the required notice is a condition president to a Debt collection action predicated upon an assignment see LVNY Funding LLC. v. Harris Fla. L Weekly Supp. C23 (Fla. 11 CIR. Court June 24 2009) wherein the court Found that the Plaintiff failed to comply with the written notice of provision of F.S. §559.715 and therefore dismissed the action with prejudice) accordingly the plaintiff has never provided the Defendant the mandatory 30 day of assignment the case should also be dismissed for failure to comply with a mandatory condition precedence. Lancaster Bank LLC Assigned wrongfully the Note to MERS on the same day the fake Closing was done and only done

as an exhibit, see exhibit F2, and not a part of the Assignment. So MERS was never the owner and the Deutsche Bank Assignment from MERS is Void Completely and MERS thus causing Plaintiffs to suffer an impaired and defective Title, plaintiffs asked for Damages.

## VIII. FOURTH CAUSE OF ACTION - UNJUST ENRICHMENT
## FLORIDA STATUE 697.10

84. Deutsche bank has no interest in Plaintiffs Mortgage, so the foreclosure on Plaintiffs property would constitute unjust enrich ment. The mortgage states that all secured sums must be paid. Plaintiff alleges that the obligations under the mortgage were fulfilled when Deutsche Bank received funds in excess of the balance on the NOTE as a result of proceeds of sale through securitization to private investors many times and insurance proceeds fromcredit default swaps. And they have a property free and clear to just sale and keep all the Money

## FIFTH CAUSE OF ACTION - RESPA AND TILA VIOLATIONS
## RESPA 12 U.S.C. 2605

85. Deutsche Bank N.A. and its agents made material misrepresentations and omissions with respect to the terms of Plaintiffs loan in violation of the Truth In Lending Act (TILA). Plaintiffs is informed and believes that Lancaster 8ank concealed the terms of the loan with the intention of inducing Plaintiffs to refrain

rrom investigating and challenging the disclosures until the period for rescinding thefake loan expired.

86. Plaintiffs never went to any closing to receive any documents from Lancaster 8ank at a Florida Title Company, including disclosures required by the Truth in Lending Act, RESPA, and a notice of right to cancel.

87. Plaintiffs loan would have been a mortgage loan subject to the provisions of

88. RESPA, 12 U.S.C. 2605 et. seq. and Cal. financiai Code §50505.


BUT IF WE SAW THE REQUESTED INFO WE WOULD HAVE SEEN THAT DEUTSCHE BANK WAS REPRESENTING THAT THEY WERE FROM LANCASTER BANK NOT COUNTRY WIDE BANK AND WE WOULD CAUGHT ON TO THE FACT THAT WE NEVER CLOSED THAT LOAN WITH LANCASTER BANK AND THEY WOULD HAVE BEEN DESTROYED LIKE THE NEW FBI COMMERCIAL SAYS THAT FRAUD IS TRICKSTERS JUST SIGN YOUR PROPRTY OVER TO THEMSELVES (DEUSTCHE BANK) AND, FORECLOSE AND EVICT YOU WHILE YOUR MAKING PAYMENTS TO ANOTHER

BANK On Oct. 12, 2012, Plaintif because we were tricked into believing that we requested a copy of the loan application and Promissory Note at a Miami branch of Defendants in FJorida, A bank OCR cer telephoned a LANCASTER Mortgage Bank LLC office in Florida that we thought was I and informed Plaintiff that he would receive the loan documents in ten days. No documents have ever been received. Because they knew they didn't have a signed note and mortgage and they knew thought that Lancaster and DEUTSCHE BANK NATJONAL TRUSTwas Indy Mac as servicer to COUNTRY WIDE BANK the Bank we were making payments to after the LANCASTER BANK didn't close on failed . So DEUTSCHE BANK NATJONAL TRUST tricked us into thinking they were the bank we was to ask the questions to about the MORTGAGE and NOTE with the Federal RESPA 12 U.S.C 2605 OUALIFIDE

WRITTEN REQUEST to make them show theier ownership of the property and our exact Dept owed to them and DEUTSCHE BANK NATJONAL TRUST would't reply in violation of RESPA 12 U.S.C 2605 federal law and in Dade County courts we have been asking for this with our Federal RESPA 12 U.S.C 2605 QUALIFIDE WRITTEN REQUEST form sinse the beginning of this fake Forclosure case began, EXH.

89. Defendants have engagedin a practice of non-compliance with RESPA, Including failing to respond to properly submitted QWR's, see Exh. . Plaintiff is informed and belives that this practice is designed to conceal TILA and RESPA Federal violations and to conceal the identity of the many investors who believe they are the owners of the NOTE, LANCASTER Mortgage Bank LLC got cash from and true beneficiary of the Loan. As a direct and proximate result of Defendants failure to comply with RESPA, Plaintiffs have suffered and continues to suffer actual damages in that he's unable to ascertain the basis for defendants claims to his property, he cannot identify the owner of the beneficiary of the Note, he can not determine whether his payments to IndyMac Bank paid to the beneficiary and there is no evidence upon which to conclude that Defendants are acting as NOTE owner with the lawful authority to foreclose the property. Under RESPA, Plaintiffs seeks triple damages, and also documents were ordered for Qualified Written Request. Formal Protest and Dispute of Alleged Debt And Validity of Alleged Loan, But never received See exhibit D established a two-part test for determining the legality of lender payments to mortgage brokers for table funded transactions and intermediary transactions under RESPA:

a) Whether goods or facilities were actually furnished or ser vices were actually performed for the compensation paid and;

b) Whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services were actually performed.

90. In applying this test, HUD believes that total compensation should be scrutinized to assure that is r easonobly related to the goods, facilities, or services furnished or performed to determine whether it is legal under RESPA. The interest

and income that Defendants have gained is disproportionate to the situation Plaintiff
James Buckman find themselves in due directly to Defendant's failure to disclose
that they will gain a rnancial benefit while Plaintiff JAMES Buckman suffer
financially as a result of the loan product sold to Plaintiff James Buckman.

91. No separate fee agreements, regarding the use of the fake LANCASTER
Mortgage Bank LLC Cost of Savings" as the Index for the basis of this loan,
Disclosures of additional income due to interest rate increases or the proper form
and procedure in relation to the Borrower's Rights to Cancel the fake NOTE and
MORTGAGE.

## SIXTH CAUSE OF ACTION- NO CONTRACT
## FLORIDA STATUE 697. t0

92. The Assignment from MERS to Lancaster has no Lot or Parcel
Description on The Mortgage assignment see exhibit E & F which is a
void and an illegal Assignment (South Florida's Citrus land Co. v. Walden,
51 So.554, 59 Fla. 606 (1910), and Garvin v. Baker, 59 SO. 2d 360 (Fla.
1952), also according to Fla. Stat. 697.10 For liability for error in
mortgage deed or Note and in any action relating to real Property. If the
court shall find that any person has prepared an instrument which due to
an inaccurate or improper legal description impairs another person's
title to real property, the court may award to the prevailing party all
actual damages that she or he may have sustained as a result of such
impairment of title.

93. Must have at least one witness. But There is no witness on our
mortgage assignment in violation of, 117.05(b) 1.a.b.c.d.e. see exh. C
Page 2. the assignment is void.

94. The Notary on the assignment is a fake. The Notaary stamp
must contain commission or ID number, to identify the person if needed
to verify or in court, (our mortgage note for 1977 address has n

commission or ID number to

95. hide their thevery in the violation of F.S. 117.05 (3)(A) and F.S. 695.26(1) **see exh**. The name of each person who executed such instrument is legibly printed, tupe written , or stamped upon such instrument immediatelybeneath the signature of such person and the post-office address of each such person is legibly printed, type written, or sstamped upon such instrument in violation of F.S. 695.01 (1) and F.S. 695.26 (1)(a) and F.S. 494. 0075 (5) and F.S. 701.02 (1)(2)(3) exh. A

96. ~~Assignment of Mortgage was done 10/20/05 the same~~ ~~Closing but the Lot~~ day as the and ~~Parcel was put~~ on recor ~~d 09/30/05 tw~~ en ~~ty days before~~ Fake C)osing and was done *as an* exhibit. *see* exhibit F2. and not a party of the assignment. So MERS is not owner and the Deutsche Bank Assignment from MERS is Void Completely, and MERS thus causing Plaintiffs to suffer an impair ed and defective Title, plaintiff asked for triple Damages.

## SEVENTH CAUSE OF ACTION: FRAUD AND CONCEALMENT

## FLORIDA STATUE 726.105fdJ

Fed. Rule 3.1 Standing can be brought up any time even on Appeal. Denied Defendants Objections to Sale without Bank proving they had Standing because the Bank filed Complaint before they owned the Note. Plaintiff foreclosed on the property before they owned it      by way of making a Fraudulent Assignment and taking Defendants property without having Note ownership. This foreclosure should never have been allowed because the Bank didn't have assignment. If we look further, the Lis pendens that was used has a recorded date of 06/20/2007 an Assignment of Mortgage was recorded on that date by the clerk of court in Miami Dade as seen on exhibit C, and as seen on the same Document, the Assignment was made after Lis Pendens was filed which according to Mclean v. JPMorgan Chase Bank N.A.).

This is an Illegal foreclosure, you cannot Foreclose on a property before you own it (Note), there was never any evidence of Deutsche Bank ever owning the Note or having any kind of an Assignment before the recorded date of 08/22/2007 so this Assignment has no effect against the Creditor unless recorded before the Complaint, see Fla. Stat. 817.535(e)5(2)(A) a person who files or directs a filer to file with the intent to defraud or harass another, or any Instrument containing a materially false fictitious *or* fraudulent statement or representation that purports Bank filed Complaint before they owned the Note. Plaintiff foreclosed on the property before they owned it by way of making a Fraudulent Assignment and taking Defendants property without having Note ownership. This foreclosure should never have been allowed because the Bank didn't have assignment. If we look further, the Lis pendens that was used has a recorded date of 06/20/2007 an Assignment of Mortgage was recorded on that date by the clerk

of court in Miami Dade as seen on exhibit C, and as seen on the same Document, the Assignment was made after Lis Pendens was filed which according to Mclean v. JPMorgan Chase Bank N.A.). This is an Illegal foreclosure, you cannot Foreclose on a property before you own it (Note), there was never any evidence of Deutsche bank ever owning the Note or having any kind of an Assignment before the recorded date of 08/22/2007 so this Assignment has no effect against the Creditor unless recorded before the Complaint, see Fla. Stat. 817.535(e)5(2)(A) a person who files or directs a filer to file with the intent to defraud or harass another, or any Instrument containing a materially false fictitious or fraudulent statement or representation that purports to affect owners interest in the property described in the instrument commits a Felony. Assignments to property cannot be made Retroactively the Assignment begins from the time that the docu ment is recorded in the County Court. There have been numerous cases that were dismissed because of faulty Assignments such as **Mclean V. JPM. And US Bank V. Ibanez** where the Massachusetts Supreme

Court found that the mortgages were assigned to the lender after the completion of the foreclosure sale or, the Court decided that the foreclosures were void because the lenders lacked legal authority to foreclose and then there was a Batch v. I aSaile Bank N.A. 171 So. 3d 207, 209 (Fla. 4*DCA 2015) reversing a Foreclosure Judgment in part because "the assignment [of Mortgage] was executed after the complaint was filed, also see Abdel Darwiche and Batoul Darwiche v. Bank of New York Mellon, when the assignment of mortgage upon The Bank of New York relied to establish its standing, the Appellate court agreed With the homeowners/ that the general issues of material fact remained As to Whether the assignment of mortgage was sufficient to establish BNYM's Standing at the inception of the suit and also see Darlene Angelini and Joseph Angelini v. HSBC BANK, et at., 4D14-216 the banks testimony did not establish The relevant: that it held the note at the time the complaint

was filed.

Although The Bank was clearly the holder at the time it introduced the blank indorsed Note at trial, "[a] plaintiffs lack of standing at the inception of the case and is not a Defect that may be cured by the acquisition of standing after the case is filed. And cannot be established retroactively by acquiring standing to file a lawsuit after the fact." La France V.U.S. Bank Nat'l Assn. 141 So. 3d 754, 756 (Fla.*DCA 2014) and McClean v. JPMorgan. Therefore Deutsche Bank does not have Standing to Foreclose, and here **Deutsche Bank is at fault and should pay trebble.**

## EIGHTH CAUSE OF ACTION: PROPERTY SOLD AT PRICE SO LOW THAT IT SHOCKS THE CONSCIENCE
## FLORIDA STATUE 4S.031-f8]

The Plaintiffs property was sold at a price so low it shocked the conscience the clerk sold plaintiffs $2.1 million house for a mere $42,000.00 see eKb. DI, in which was purchased by the same bank which is (DEUTSCHE BANK NATIONAL TRUST COMPANY AS Trustee Under The Pooling And Servicing Agreement Series Rast 2006- A8(CSFB} this price is so low it shocks the conscience according to Fl. Stat. 45.031 -

(8) Maurice Symonette did file objection to sale and demands that it be heard and has found new information to further strengthen our case to show that the bank is knowingly illegally taking this property. Deutsche Bank bought the property at auction in the foreclosure sale of the said property on 6/22/2017 for forty two thousand three hundred Dollars that price is so low that it shocks the conscience according to Fl. Stat. 45.031-(8) which VOIDS the SALE and Rule 702.Fl.Stat. 702(5).

36

F.S.A. Mitchell V. Mason and also see, First bank V. Fisher Frichtel Inc. which says (if the case is so inadequate as to raise an inference of fraud then the foreclosure can be voided) <u>All this done to by nass Tax. *Ooc* Stamns and do away with all the liens and monies owed attached to the pronerty.</u> And some days later after realizing that we saw the $42,300.00 sales price for the $2.1 million and that we owed and that defendants saw that the sales price was so low and against the Law that it shocked the conscience, that when Defendants came back to question the Clerk about our Bankruptcy and wanted to show the manager how ridiculously low that sales was. Mysteriously they show Defendants another Deutsche Bank different from the first Deutsche Bank that

Clerk showed us just days earlier selling $42,300.00 but now it showed Defendant's property sold for $888,000.00 in which we discovered later was done on the same date 6/22/2017 Wfth different bank (Deutsche Bank Nätf0flal Trust Company As Trustee for RESIDENATIAL ASSET SECURITIZATION trust Series 2006-A8 MORTGAGE PASS-THROUGH CERTIFICATES SERl ES 2006-H), even after them seeing us tape them saying mouth, giving it to us in writing and showing us on their Government computer the sales price at $42,300.00 with witnesses see YouTube: (Dade Clerks are lawless) see

Exb. 1. This shows Fraud and Collusion against the Defendants to just take the property wrongfully which is the main reasons for the Objection to sale and this complaint is that the sale price is so low that it shocks the conscience. The foreclosure amount owed was 2.6 million and the estimated value is $1,810,000.00 but shockingly the sale was forty two thousand three ~e~ ants were in good standing without payments, even after paying on time to the hundred. And the Foreclosure was started while def nd Bank and we have nroof that we were makine the navments before and after the Bank started the foreclosure on us see exhibits 1,2,3,4,5, and 6. this foreclosure sale needs to be voided and recalled due to the clerk of the court careless and fraudulent activity.


## NINTH CAUSE OF- ACTION; V10LATION OF TIMELY ASSIGNMENT FLA. STAT. 702.02 AND FLA. STAT. 726105fD)


Also the instant assignment was also untimely in order for the foreclosure to be legal the assignment to the mortgage must be entered in a timely manner, that is it should be entered before the foreclosure, in

this case it was not, the Lis Pendens was recorded 06/20/2007, exhibit B, and the assignment was recorded 08/22/2007 which was at least 63 days after the Foreclosure see Exhibit C, thus Deutsche Bank foreclosed before they even owned the Note and they knew it and tried it anyway hoping that they could get away with it, an assignment cannot Be ASSigned retro actively see Progressive Exp. Ins. Co. Y Mcgrath Comty. Chiropractic, 913 So. 2d 1281, (Fla. 2d DCA 2005), the plaintiffs lack of standing at the inception of the case is not a defect that may be cured by the acquisition of standing after the case is filed. Thus a party is not permitted to establish the right to mainta in an action retroactively by Acquiring standing to file a lawsuit after the fact.. Mclean v. JPMorgan. Therefore Deutsche Bank Has no Standing in the ownership of the said

property and for Deutsche to amend the complaint to start over would only suggest fraud (Pino v. Bank of New York) as it already is by the nature of the transaction the transaction it's self is deceptive and to have this fault of an assignment written after the Complaint is filled, but Deutsche Bank N.A. Still claim they have standing is an action of fraud as have been tried by so many other cases and the Banks that did them lost ( US Bank N,A. v Ibanez ), Murray v, HSBC Rank USA 2006 0 P1) ana ( Powers v. HSBC BANK USA 2006). A fraudulent Transfer is one when one is threatened with suit before assignment of property is made, FI. Stat. 726.105 (D), and also UCC Article 3 line #6 says assignments or endorsements must be effectuated 8efore suit is filed. Progressive Exp. Ins. Co. v. Mcgarth Comty, Also Fla. Fourth DCA and UCC F,S. DH 673 ARTICLE 3 OF THE UCC: says they must prove they own the Note before they foreclose. On Note this case is void, Deutsche Bank has no standing in this case and property should be awarded to plaintiffs or Monetary damages.

RED

## TENTH CAUSE OF ACTION: THERE WAS NO CONSIDERATIO N THE BANK CONSIDE

## MONEY MUST BE GIVEN TO ASSIGN A NOTE. FLA. STATUE 701.02(1)(2)

Florida Contract (Mail Box Law) (4) says you must in order to consummate a contract or an assignment you must give consideration money. The Judge Erred and is in Violation of Florida Contract Law (4) for not Dismissing the Case because the Assignment has no Consideration Money on the Assignment between Lancaster Bank LLC and MERS not only did they violate the 30 day notice on the Assignment by trying to sale the Note on the same day and they also never Consummated the contract with money consideration, see exb. B and C. Plea and effect of .--Sworn plea of consideration throws burden on piaintiff.---Smith v.Le Yesque, 25 Fla ., 464: White v. Camp , 1 Fla., 94. Plea of want of consideration as against bona fide holder of negotiable promissory note        Hancock v. Hale, 17 Fla., 808. Section does not obviate

necessity of exhibition of instrument to the jurr; when exhibited, consideration pre- assignment or endorsement        Sinclair v. Gray, 9 FLA., 342. EFFECT OF SWORN AND

unsworn plea of want of considerartion.----Ib. Plea m ust set forth facts.---Ahrens v. Willis, 6 fila., 359. How drawn and what should contaili        White v. Camp, 1 Fla., 94 Must riot be

equivalent to illegality or failure of consideration--- Orman v barnard, 5 Fla., 528. Effect of

unsworn plea by administrator        Knigh t v Knight, '?Fla., 253. MERS is not on the original note

3fias a nominee or anything at all and the Note shows at the endorsement page of the Lancaster bank's note that all payments are due to LANCASTER Mortgage Bank LLC on Oct.20*,2005 and Lancaster on the same day signed the note to MERS without a 30 day notice and' with no money consideration and LANCASTER Mortgage P ank LLC according to Lancaster was

now the note holder as stated on the back of the note but LANCASTER Mortgage Bank LLC did assign the note over to MERS ( see exhibit C,) so MERS according to Lancaster's money consideration failure and to Lancaster is not the owner of the Note and MERS never did buy the Note or the assignment because they never consummated the assignment with the consideration money, so therefore the assignment from Mers to Deutsche Bank is Invalid because MERS could not sign a note to Deutsche Bank when they don't own the Note. And don't forget the assignment was late, Filed after the lis Pendens was filed in violation of Florida DCA third district court of appeal, Mclean v. JPMorgan.

## 11. ELEVENTH CAUSE OF ACTION VIOLATION GAAP FASB FAS 140 RULE AS GOVERENED BY THE SEC AND THE US DEPT. OF THE TREASURY

This is what I'm Quieting the Title against the SEC and Treasury for. The Federal GAAP FASB FAS 140 Rule says that when a NOTE is sold on the market as a security, the NOTE must be burned and destroyed and can never be as a foreclosure instrument because that is SEC Fraud because the IRS has written the destroyed loss off, then the insurance paid the loss off and then sold it on the market. The NOTE was also seperated form the mortgage when the original Promissory NOTE was not recorded along with Mortgage at the county level. Additionally, the Mortgage was separated form the Note when the loan was bundled together with hundreds or thousands of other loans to create municipal bond funds, in order to sell and trade on Wall Street. When the Original Note was bundled it was destroyed and given a number to present others form double-dipping, that is, to prevent others from reselling the promissory Note again. By learning this information, the original wet blue ink promissory Note cannot be produced, because it was destroyed when it was bundled together and put into a securitized loan ti ust to sell and trade on

Case 6:12-cv-00690-RAE-EAG Document 24 Filed 05/30/20 Page 51 of 161

wallstreet. To seperate the NOTE from the mortgage is to collapse the trust. See Carpenter v. Longan, 83

U.S. at 274 (finding that an assignment of the inortgage without the Note is a nullity); Landmark Nat'l Bank v. Kesler, 216 P. 3d 158, 166-67 (Kan. 2009)("In the Event that a

mortgage loan somehow separates interest of the Note and the deed of trust, with the deed of trust lying with some independent entity, the mortgage may become unenforceable"). See also 37 Fla. Jur. Mortgages and Deeds of Trust '240 (One who does not have the ownership, possession, or the right to possession of the mortgage and the obligation secured by it, may not foreclose the mortgage). "The mortgage rollows the note. An assignment of the Note carries the mortgage with it, while an assignment of the later alone is a nullity." ( Capitol Investors Co. vs. Executors of the Estate of Morison, 484 F.2d 1157, 1163n. "When a note is secured by a mortgage is assigned, the mortgage follows the note into the hands of the mortgagee. "In other words, the note is held and owned by the certificate holders of trust, and the mortgage follows the Note.

## ALSO IF LANCASTER WAS ACTUALLY A NOTE

On or about March 1, 2006 (hereinafter referred to as "closing Date") Plaintiff James 8uckman who owns the house that was Quit Claimed to and owned by Leroy Williams who was supposed to enter into a consumer credit transaction with LANCASTER Mortgage Bank LLC BY 0 BTAIN ING A $1.5 million mortgage loan secured by a First Trust Deed on the Property in favor of Lancaster LLC. But the SALE NEVER HAPPENED THE FAKE loan on the house was securitized, with the Note and not being properly transferred to Defendant, Deutsche Bank, acting as the Trustee for the LANCASTER Mortgage Bank LLC. holding plaintiffs Note. Documents filed with the SEC by the securitization participants allegedly claim that the note and deed of trust at issue in this case were sold, transferred and Securitized by Defendants, with other loans and

40

mortgages with aggregate principal balance of approximately $1.5 million

into LANCASTER Mortgage Bank LLC Balance of LLC Trust, which is a Common

Law Trust formed pursuant to New York law. A detailed description

of the mortgage loans which form the LANCASTER Mortgage Bank LLC is included in Form 424BS ("The prospectus"), which has been duly filled with the SEC and which c an be accessed through the above mentioned footnote.

An expert, certified, forensic audit of the Plaintiffs loan documents reveals that Plaintiffs mortgage note was required to at least go through this assignment chain of key parties before it reached the REMIC trustee it was destined for: The Plaintiffs PSA requires that his/her note or deed of trust had to be endorsed and assigned, respectively, to the trust and executed by multiple intervening parties in the above chain of assignment before it reached the REM IC Trustee.

Plaintiff executed a serie5 of documents, including but not limited to the Note and Deed of Trust, Securing the Property in the amount of the Note. The Original beneficiary and nominee under the Deed of Trust was mers. Plaintiff is informed and believes, and thereon alleges, that the purchase mortgage on the property, the debt or obligation evidenced by the Note and the deed of Trust by Plaintiff in favor of the original lender and other Defendants, regarding the Property, was not properly assigned and transferred to Defendants operating the pooled mortgage funds oi trusts in accordance with the PSA and/or FLORIDA law of entities making and receiving the purported assignments to this trust. In accordance with the PSA and/or FLORIDA law of the entities making and receiving the purported assignments to this trust. Plaintiff alleges that the PSA requires that each Note of Trust had to endorsed and ass igned, respectively , to the trust and executive by multiple interviewing parties before it reached the Trust. Here, neither the Note nor the Deed of Trust was assigned to the Securitized Trust by closing date. Therefore, under

false documents.

**WHEREFORE,** Plaintiff requests actual and special damages including attorneys fees and costs against these Defendants jointly and severally for abuse of legal process.

## COUNT 15 VIOLATION OF THE 1964 CIVIL RIGHTS ACT

*breaking all Laws to take our property because we are black in a white Neighbor* ***As said to us by a Deustche Bank Rep who said we whites don't want Blacks in this Neighborhood*** *and* ***the police took my yacht because my Neighbor said he didn't Niggers on Yachts in his Neighborhood see*** *Gods2.com video 10A*

**Illegal Consumer Collection**
(FDCPA claims against all defendants except SF)
FCCPA claims against all defendants)

Plaintiff realleges and incorporates paragraphs 1-58 as though fully set forth in this paragraph.

**Illegal Consumer Collection**
(FDCPA claims against all defendants except SF)
FCCPA claims against all defendants)

Plaintiff realleges and incorporates paragraphs 1-58 as though fully set forth in this paragraph.

aa. The FDCPA was enacted to protect all consumers from debt collectors who seek to collect debts through illegal lnCans and who engage in unfair or out right theivery and/or deceptive practices during the collection of a debt. Plaintiff,s are defending themselves from Deutshe Bank or Lancaster who is Foreclosing on us as "consumers" within the meaning of FDCPA 15 U.S.C. §1692a(3)

the utter lies perpetuated upon her including the Plaintiffs attorney's fees and costs associated with each case. Attorneys fees and costs are sought pursuant to Fla. Stat. §501.2105.

WHEREFORE, Plaintiff 1espectfiilly request that this Court award damages, ,kand any other just and appropriate relief under the law, including but not limitedto, attorneys' fees and costs.

## COUNT

### Illegal Consumer Collection
(FDCPA claims against all defendants except SF) FCCPA claims against all defendants)

Plaintiff realleges and incorporates paragraphs 1-58 as though fully set forth in this paragraph.

r. The FDCPA was enacted to protect all consumers from debt collectors who seek to collect debts through illegal lnCans and who engage in unfair or out right theivery and/or deceptive practices during the collection of a debt. Plaintiff,s are defending themselves from Deutshe Bank or Lancaster who is Foreclosing on us as "consumers" within the meaning of FDCPA, 15 U.S.C. §1692a(3).

James Buckman

Maurice S MAURICE
Symonette

Curent Exhibits

*1977*

CFN 2007R0290646
OR Bk 25468 Pss 0289 - 291; (3pss)
RECORDED 03/21/2007 13:14:02
HARVEY RUVIN, CLERK OF COU~
MIAMI-DADE COUNTY, FLORIDA

*Exhibit "[C]"*
*pg 1*

This Instrument Prepared By:

After Recording Return To:

Brb Abstracting, Inc
6412 S Howell Ave.
Oak Creek, WI 53154

—————— [Space Above This Line For Recording Data] ——————

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to

Mortgage Electronic Registration Systems, Inc.            P.O. Box 2026
                                                          Flint, MI 48501-2026

whose mailing address is

all of the undersigned's right, title and interest in, to and under that certain Mortgage dated
OCTOBER 20, 2005                    executed by   LEROY WILLIAMS, AN UNMARRIED
MAN

                                                                        , as mortgagor,

to   LANCASTER MORTGAGE BANKERS, A LIMITED LIABILITY COMPANY

                                                                        , as mortgagee,

and recorded either

☐ concurrently herewith; or
☐ as Instrument No. 2005R1193500 on 11/16/05                    in book 23966,

page 3465        , in the Official Records in the County Recorder's office of     MIAMI-DADE     County,

FLORIDA
                                                            , describing land therein as:

A.P.N. #: 0622280113400

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon
with interest, and all rights accrued or to accrue under said Mortgage.



MIN: 1000554012254005581
FLORIDA ASSIGNMENT OF MORTGAGE/CORPORATION OR PARTNERSHIP
                          Page 1 of 2

DocMagic eForms 800-849-1362
www.docmagic.com

File.asm   122540058

Miami-Dade Official Records – Print Document

[c] pg. 2

Signed, sealed and delivered in the presence of:
Witnesses:

LANCASTER MORTGAGE BANKERS, LLC

_Darlene Pereira_
DARLENE PEREIRA
VICE PRESIDENT

STATE OF ~~FLORIDA~~ New Jersey )
                                 ) SS.
COUNTY OF ~~MIAMI-DADE~~ Essex  )

The foregoing instrument was acknowledged before me this 20th day of OCTOBER, 2005 by VICE PRESIDENT as for LANCASTER MORTGAGE BANKERS

Signature _____

REBECCA M. GONZALEZ
NOTARY PUBLIC OF NEW JERSEY
(Print, Type or Stamp Commissioned Name of Notary Public)

Personally known _____ or
Produced Identification _____
Type of Identification Produced: _____

My Commission expires:

REBECCA M. GONZALEZ
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Mar. 13, 2008

(Seal)

(Affix Notarial Seal)

FLORIDA ASSIGNMENT OF MORTGAGE/CORPORATION OR PARTNERSHIP
Page 2 of 2

DocMagic EForms   800-649-1362
www.docmagic.com

Book25468/Page290    CFN#20070290646    **Page 2 of 3**

Miami-Dade Official Records - Print Document

[F2]

OR BK 25468 PG 0291
LAST PAGE

FROM :TITLE                    FAX NO. :9547335336           Sep. 30 2005 05:40AM P2

*separate date from ASSIGNMENT*

Pg.

(3)

**Exhibit A**

*Exhibit ONLY*

LOT 103, BLOCK 14, SANS SOUCI ESTATES, according to the Plat thereof as recorded in Plat Book 50, Page 86 of the Public Records of Miami-Dade County, Florida

Parcel Identification Number: 0622280113400

File Number: 854-138

DoubleTimes

...ment.aspx?OS=YaoUfOzxrv2drm6C9V'kJxom·UCo8vr5uK5ntOtrDnA1uk6tqe6nl1qUIDRbZ...

Exhibit #1
(C2)

IN THE CIRCUIT COURT OF THE ELEVENTH
JUDICIAL CIRCUIT IN AND FOR DADE COUNTY, FLORIDA
CIVIL ACTION

DEUTSCHE BANK NATIONAL TRUST COMPANY AS
TRUSTEE UNDER THE POOLING AND SERVICING
AGREEMENT SERIES RAST 2006-A8 (CSFB),

        Plaintiff,

07 - 18 2 2 6 CA 0 2

vs.
                             CASE NO.
                             DIVISION

JAMES LITTLE JOHN A/K/A JAMES LITTLEJOHN; THE UNKNOWN SPOUSE OF JAMES
LITTLE JOHN A/K/A JAMES LITTLEJOHN;  LEROY WILLIAMS;  MACK WELLS;
CYNTHIA L. WILCOXSON;  ANY  AND  ALL  UNKNOWN  PARTIES  CLAIMING  BY,
THROUGH, UNDER, AND AGAINST THE HEREIN NAMED INDIVIDUAL DEFENDANT(S)
WHO ARE NOT KNOWN TO BE DEAD OR ALIVE, WHETHER SAID UNKNOWN PARTIES
MAY CLAIM AN INTEREST AS SPOUSES, HEIRS, DEVISEES, GRANTEES, OR OTHER
CLAIMANTS; ATTORNEYS' TITLE INSURANCE FUND, INC.; LANCASTER MORTGAGE
BANKERS, LLC;  FIRST COMMERCIAL CORP.;  CITY OF NORTH MIAMI;  STATE OF
FLORIDA - DEPARTMENT OF REVENUE; CAPITAL ONE BANK; TENANT #1, TENANT #2,
TENANT #3, and  TENANT #4 the names being fictitious to account for parties in possession

        Defendant(s).
_____/

### MORTGAGE FORECLOSURE COMPLAINT

       Plaintiff, DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE UNDER THE POOLING
AND SERVICING AGREEMENT SERIES RAST 2006-A8 (CSFB), sues Defendants, JAMES LITTLE JOHN
A/K/A JAMES LITTLEJOHN,  THE UNKNOWN SPOUSE OF JAMES LITTLE JOHN A/K/A JAMES
LITTLEJOHN,  LEROY WILLIAMS,  MACK WELLS,  CYNTHIA L. WILCOXSON; ANY AND ALL
UNKNOWN PARTIES CLAIMING BY, THROUGH, UNDER, AND AGAINST THE HEREIN NAMED
INDIVIDUAL DEFENDANT(S) WHO ARE NOT KNOWN TO BE DEAD OR ALIVE, WHETHER SAID
UNKNOWN PARTIES MAY CLAIM AN INTEREST AS SPOUSES, HEIRS, DEVISEES, GRANTEES, OR
OTHER CLAIMANTS:  ATTORNEYS' TITLE INSURANCE FUND, INC.;  LANCASTER MORTGAGE
BANKERS, LLC;  FIRST COMMERCIAL CORP.;  CITY OF NORTH MIAMI;  STATE OF FLORIDA -
DEPARTMENT OF REVENUE;  CAPITAL ONE BANK;  TENANT #1,  TENANT #2,  TENANT #3 and
TENANT #4; the names being fictitious to account for parties in possession, and alleges:

FILE_NUMBER: F07015531



DOC_ID: M000100

1.    This is an in rem action to foreclose a mortgage on real property located and situated in DADE County, Florida.

2.    This firm has complied with the notice requirement of the Fair Debt Collection Practices Act, 15 U.S.C. § 1601, as amended. The Notice(s) previously mailed by the firm is attached hereto and incorporated herein as an Exhibit.

3.    On October 20, 2005, there was executed and delivered a Promissory Note ("Mortgage Note") and a Mortgage ("Mortgage") securing the payment of the Mortgage Note. The Mortgage was recorded on November 16, 2005, in Official Records Book 23966 at Page 3465 of the Public Records of DADE County, Florida, (All subsequent recording references are to the public records of DADE County, Florida) and mortgaged the real and personal property ("Property") described therein, then owned by and in possession of the Mortgagor(s). Copies of the original Mortgage Note and Mortgage are attached hereto and incorporated herein as an Exhibit.

4.    Plaintiff is now the holder of the Mortgage Note and Mortgage.

5.    The Property is now owned of record by Defendant(s), JAMES LITTLE JOHN A/K/A JAMES LITTLEJOHN.

6.    The Mortgage Note and Mortgage are in default. The required installment payment of January 1, 2007, was not paid, and no subsequent payments have been made. The Mortgage is contractually due for the January 1, 2007, payment. The last payment received was applied to the December 1, 2006, installment, and no subsequent payments have been applied to the loan.

7.    Plaintiff declares the full amount payable under the Mortgage Note and Mortgage to be now due.

8.    Plaintiff must be paid $1,487,023.13 in principal on the Mortgage Note and Mortgage, together with interest from December 1, 2006, late charges, and all costs of collection including title search expenses for ascertaining necessary parties to this action and reasonable attorney's fees.

9.    All conditions precedent to the acceleration of the Mortgage Note and foreclosure of the Mortgage have been performed or have occurred.

10.    Plaintiff has retained the law firm of Echevarria, Codilis & Stawiarski, in this action and is obligated to pay it a reasonable fee for its services in bringing this action as well as all costs of collection.

11.    The interests of each Defendant are subject, subordinate, and inferior to the right, title, interest, and lien of Plaintiff's Mortgage with the exception of any special assessments that are superior pursuant to Florida Statutes §159 (2006) and Florida Statutes §170.09 (2006).

12.    THE UNKNOWN SPOUSE OF JAMES LITTLE JOHN A/K/A JAMES LITTLEJOHN may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of homestead rights, possession, or any right of redemption, or may otherwise claim an interest in the Property.

2



13.    LEROY WILLIAMS may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of possible defects in that certain Quit Claim Deed recorded in Official Records Book 25192 at Page 3749 relating to the lack of the required marital status and/or caption reciting homestead status of the grantor, if married; and Execution of that certain Mortgage recorded in Official Records Book 23966, Page 3465, or may otherwise claim an interest in the Property.

14.    MACK WELLS may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of a Claim of Lien recorded in Official Records Book 25253, Page 3151, or may otherwise claim an interest in the Property.

15.    CYNTHIA L. WILCOXSON may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of a Certificate of Delinquency recorded in Official Records Book 19694, Page 868, or may otherwise claim an interest in the Property.

16.    ATTORNEYS' TITLE INSURANCE FUND, INC. may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of a Subordination Agreement recorded in Official Records Book 25543, Page 4948; an Assignment of Mortgage recorded in Official Records Book 25543, Page 4947; and a Mortgage recorded in Official Records Book 22809, Page 1269, or may otherwise claim an interest in the Property.

17.    LANCASTER MORTGAGE BANKERS, LLC may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of a Mortgage recorded in Official Records Book 23966, Page 3483, or may otherwise claim an interest in the Property.

18.    FIRST COMMERCIAL CORP. may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of a Notice of Lis Pendens recorded in Official Records Book 25329, Page 2612, or may otherwise claim an interest in the Property.

19.    CITY OF NORTH MIAMI may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of a Code Enforcement Lien recorded in Official Records Book 24828, Page 4284; Official Records Book 24828, Page 4288; Official Records Book 25416, Page 1976; and Official Records Book 25457, Page 4277;, or may otherwise claim an interest in the Property.

20.    STATE OF FLORIDA - DEPARTMENT OF REVENUE may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of a Certificate of Delinquency recorded in Official Records Book 19694, Page 868, or may otherwise claim an interest in the Property.

21.    CAPITAL ONE BANK may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of a Final Judgment recorded in Official Records Book 22806, Page 4761, or may otherwise claim an interest in the Property.

22.    TENANT #1, TENANT #2, TENANT #3 and TENANT #4, the names being fictitious to account for parties in possession may claim some interest in the Property that is the subject of this foreclosure action by virtue of an unrecorded lease or purchase option, by virtue of possession, or may otherwise claim an interest in the Property. The names of these Defendants are unknown to the Plaintiff.

WHEREFORE, Plaintiff requests that the Court ascertain the amount due Plaintiff for principal and interest on the Mortgage Note and Mortgage and for late charges, abstracting, taxes, expenses and costs, including attorney's fees, plus interest thereon; that if the sums due Plaintiff under the Mortgage Note and Mortgage are not paid immediately, the Court foreclose the Mortgage and the Clerk of the Court sell the Property securing the indebtedness to satisfy Plaintiff's mortgage lien in accordance with the provisions of Florida Statutes §45.031 (2006); that the rights, title and interest of any Defendant, or any party claiming by, through, under or against any Defendant named herein or hereafter made a Defendant be forever barred and foreclosed; that the Court appoint a receiver of the Property and of the rents, issues, income and profits thereof, or in the alternative, order sequestration of rents, issues, income and profits pursuant to Florida Statutes §697.07 (2006); and that the Court retain jurisdiction of this action to make any and all further orders and judgments as may be necessary and proper, including the issuance of a writ of possession and the entry of a deficiency decree, when and if such deficiency decree shall appear proper, if borrower(s) has not been discharged in bankruptcy.

Echevarria, Codilis & Stawiarski
P.O. Box 25018
Tampa, Florida 33622-5018
(813) 251-4766

By:_____
E. Tyler Sansing
FLORIDA BAR NO. 0028380
Andrea D. Pidala
FLORIDA BAR NO. 0022048

INDYMAC-CONV-R-ejayska

4

Miami-Dade Official Records - Print Document

# Exh. D1

*1977*

...ared by:
...nes Buckman
...977 NE 119 Rd.
/Miami, Florida 33181

CFN  2004R0860746
OR Bk 22698 Pg 4158; (1pg)
RECORDED 10/01/2004 14:27:03
DEED DOC TAX 0.60
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
LAST PAGE

## Quit Claim Deed

**This Quit Claim Deed** made this September 30, 2004 between **ALEXANDER MORERA**, a single man, whose post office address is 1977 NE 119 Rd., North Miami, Florida 33181 grantor, and **ALEXANDER MORERA** a single man, whose post office address is 1977 NE 119 Rd., North Miami, Florida 33181, **TANNA CARTER** a single woman, whose post office address is 1977 NE 119 Rd., North Miami, Florida 33181, **JAMES BUCKMAN** a single man, whose post office address is 1977 NE 119 Rd., North Miami, Florida 33181, grantee:

(Whenever used herein the terms "grantor" and "grantee" include all the parties to this instrument and the heirs, legal representatives, and assigns of individuals, and the successors and assigns of corporations, trusts and trustees)

**Witnesseth,** that said grantor, for and in consideration of the sum TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration to said grantor in hand paid by said grantee, the receipt whereof is hereby acknowledged, does hereby remise, release, and quitclaim to said grantee, and grantee's heirs and assigns forever, all the right, title, interest, claim and demand which grantor has in and to the following described land, situated, lying and being in **Miami-Dade County, Florida** to-wit:

> LOT 103, BLOCK 14, OF SANS SOUCI ESTATES, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 50, AT PAGE 86, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA
>
> A/K/A: 1977 NE 119 Rd., North Miami, Florida 33181
> FOLIO NUMBER: 06-22-28-011-3400

THAT AT ANY TIME JAMES BUCKMAN OR TANNA CARTER CAN PAYOFF THE FIRST AND SECOND MORTGAGE AND BECOME THE SOLE OWNER OF THE PROPERTY WITHOUT ALEXANDER MORERA.

**To Have and to Hold,** the same together with all and singular the appurtenances thereto belonging or in anywise appertaining, and all the estate, right, title, interest, lien, equity, and claim whatsoever of grantors, either in law or equity, for the use, benefit and profit of the said grantee forever.

**In Witness Whereof,** grantor has hereunto set grantor's hand and seal the day and year first above written.

Signed, sealed and delivered in our presence:

Witness Name: EMILIO ALVAREZ

Witness Name: SONNY COLORADITOS

ALEXANDER MORERA

* ALEXANDER MORERA.

SATE OF FLORIDA
COUNTY OF MIAMI-DADE

The foregoing instrument was sworn to subscribed and acknowledge before me this ___1st___ day of ___October___, 2004 by all signors, who have produced their Florida Drivers License, as Identification.

[Notary Seal]

Notary Public
Print Name: Rachelle Rodriguez
Commission Expires: April 27, 2005

Page 1 of 1



Exh. A 2
(Pg- 3)

ORIGINAL

**NOTE**

Loan Number: [redacted]

OCTOBER 28, 2005      MARION       NEW JERSEY
[Date]      [City]      [State]

1977 NE 119TH ROAD, MIAMI, A/K/A NORTH MIAMI, FLORIDA 33181
[Property Address]

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ 1,500,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is LANCASTER MORTGAGE BANKERS, A LIMITED LIABILITY COMPANY
I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 8.250 %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**
(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the 1st day of each month beginning on DECEMBER 1, 2005. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on NOVEMBER 1, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at P.O. BOX 650305, DALLAS, TEXAS 75265-0305 or at a different place if required by the Note Holder.
(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $ 11,269.00

**4. BORROWER'S RIGHT TO PREPAY ** See attached Prepayment Note Addendum.**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

FLORIDA FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac
Document System, Inc. (800) 649-1362
Page 1 of 3

Form 3210 1/01

Exh. A2
Pg 4

**6.   BORROWER'S FAILURE TO PAY AS REQUIRED**

(A)   Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   15   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.000   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B)   Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C)   Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D)   No Waiver By Note Holder

Even if at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E)   Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

**7.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.   UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

*Exh. AAA*

# PREPAYMENT ADDENDUM TO NOTE

Loan Number: ▓▓▓▓▓▓

Date: OCTOBER 20, 2005

Borrower(s): LEROY WILLIAMS

THIS PREPAYMENT ADDENDUM TO NOTE (the "Addendum") is made this    20th      day of
OCTOBER,   2005            , and is incorporated into and shall be deemed to amend and supplement
that certain promissory note (the "Note") made by the undersigned ("Borrower") in favor of LANCASTER
MORTGAGE BANKERS, A LIMITED LIABILITY COMPANY

("Lender") and dated the same date as this Addendum. Repayment of the Note is secured by a Mortgage, Deed of
Trust, or Security Deed (the "Security Instrument") given by Borrower in favor of Lender and dated the same date
as this Addendum. To the extent that the provisions of this Addendum are inconsistent with the provisions of the
Note, the provisions of this Addendum shall supersede the inconsistent provisions of the Note.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower
and Lender further covenant and agree as follows:

Section 4   of the Note is amended to read in its entirety as follows:

**4   . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE**
    I have the right to make payments of Principal at any time before they are due. A payment
of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note
Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not
made all the monthly payments due under the Note.
    The Note Holder will use my Prepayments to reduce the amount of Principal that I owe
under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid
interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount
of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my
monthly payment unless the Note Holder agrees in writing to those changes.
    If the Note contains provisions for a variable interest rate, my partial Prepayment may
reduce the amount of my monthly payments after the first Change Date following my partial
Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest
rate increase. If this Note provides for a variable interest rate or finance charge, and the interest
rate or finance charge at any time exceeds the legal limit under which a Prepayment penalty is
allowed, then the Note Holder's right to assess a Prepayment penalty will be determined under
applicable law.
    If within TWELVE        ( 12    ) months from the date the Security Instrument is
executed I make a full Prepayment or one or more partial Prepayments, and the total of all such
Prepayments in any 12-month period exceeds twenty percent (20%) of the original Principal amount
of the loan, I will pay a Prepayment charge in an amount equal to    SIX      ( 6    )
months' advance interest on the amount by which the total of my Prepayments within any 12-month
period exceeds twenty percent (20%) of the original Principal amount of the loan.

DocMagic €Forms 800-649-1362
www.docmagic.com



LAN-1258
(WILLIAMS)
122540058
MFB1C

ExhAAA

**Allonge to Promissory Note**

**Loan Number:** ▮▮▮▮▮▮▮

**Borrower(s):**   **Leroy Williams**
**Property Address:**      1977 NE 119th Road, Miami A/K/A North Miami, Florida 33181
**Allonge to that certain Promissory Note dated:**      October 20, 2005

**Executed by:**

Leroy Williams
**WITHOUT RECOURSE, Pay to the Order of**

**IndyMac Bank, F.S.B.**

**Note holder:**
LANCASTER MORTGAGE BANKERS, LLC

By: _Darlene Pereira_

**Typed Name:**   **Darlene Pereira**

**Title:**   **Vice President**

Service List

JAMES LITTLEJOHN
18610 NW 22ND AVE
OPA LOCKA, FL  33056

LEROY WILLIAMS
8152 NW 15TH MNR # FC2R
Plantation, FL  33322-5422

ATTORNEYS' TITLE INSURANCE FUND, INC.
c/o Ellen Patterson, Esq.
12514 W. Atlantic Blvd
Coral Springs, FL  3307!

LANCASTER MORTGAGE BANKERS, LLC
20 INDEPENDENCE BLVD.
WARREN, NJ  07059

MACK WELLS
15020 South River Drive
Miami, FL  33167

FIRST COMMERCIAL CORP.
C/o Schrama, Alfred L, R.a.
100 Lakeshore Drive L2
N. Palm Beach, FL  33408

CITY OF NORTH MIAMI
c/o V Lynn Whitfield, Esq.
776 N.E. 125th Street
North Miami, FL  33161

STATE OF FLORIDA - DEPARTMENT OF REVENUE
C/o Jim Zingale, Executive Director R.a. Carlton Building
501 S Calhoun St.. Rm 104
Tallahassee, FL  32399

CYNTHIA L. WILCOXSON
4520 NW 185TH ST
OPA LOCKA, FL  33055

CAPITAL ONE BANK
C/o Legal Dept. 11011 West Broad Street
Glen Allen, VA  23233



Exh. "A"

CFN 2005R1193500
OR Bk 23966 Pss 3465 - 3482; (18pss)
RECORDED 11/16/2005 16:44:30
MTG DOC TAX 5,250.00
INTANG TAX 3,000.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

P9 1

This Instrument Prepared By:

After Recording Return To:
LANCASTER MORTGAGE BANKERS
20 INDEPENDENCE BLVD
WARREN, NEW JERSEY 07059
Loan Number: 150008387

[Space Above This Line For Recording Data]

## MORTGAGE

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated OCTOBER 20, 2005          , together with all Riders to this document.

(B) "Borrower" is  LEROY WILLIAMS, AN UNMARRIED MAN

Borrower is the mortgagor under this Security Instrument.

(C) "Lender" is LANCASTER MORTGAGE BANKERS

Lender is a LIMITED LIABILITY COMPANY                                       organized and existing under the laws of NEW JERSEY
Lender's address is 20 INDEPENDENCE BLVD, WARREN, NEW JERSEY 07059

Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated   OCTOBER 20, 2005      .
The Note states that Borrower owes Lender ONE MILLION FIVE HUNDRED THOUSAND AND 00/100                                                Dollars (U.S. $1,500,000.00         )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than NOVEMBER 1, 2035

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

FLORIDA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3010 1/01                                Page 1 of 18

DocMagic ☎Forms 800-649-1362
www.docmagic.com



**Exh. "A"**

#
pg. 2

(C) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- ☐ Adjustable Rate Rider    ☐ Condominium Rider    ☐ Second Home Rider
- ☐ Balloon Rider    ☐ Planned Unit Development Rider    ☒ Other(s) [specify]
- ☐ 1-4 Family Rider    ☐ Biweekly Payment Rider    PREPAYMENT RIDER TO SECURITY INST

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in the

COUNTY    of    MIAMI-DADE    :
[Type of Recording Jurisdiction]    [Name of Recording Jurisdiction]

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3010 1/01    Page 2 of 16    DocMagic ℮Forms 800-649-1362
www.docmagic.com

**Exh. "A"**
pg #3

A.P.N. #: 0622280113400

which currently has the address of 1977 NE 119TH ROAD

                                                    [Street]

MIAMI A/K/A NORTH MIAMI          , Florida      33181         ("Property Address"):
         [City]                                  [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3010 1/01                              Page 3 of 16                          DocMagic ℯℱℴℛℳℴ 800-649-1362
                                                                                 www.docmagic.com



**Exh. "A"**

PG #4

until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA.

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3010 1/01
Page 4 of 15
DocMagic





Exh. "A"
pg. 5 #

Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   Charges; Liens.   Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while these proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   Property Insurance.   Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan, either:  (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3010 1/01
Page 5 of 15
DocMagic eForms 800-649-1362
www.docmagic.com



Exh. "A"
pg. 6

any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which



Exh. "A"
pg #7

consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument; including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such

FLORIDA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3010 1/01
Page 7 of 15

DocMagic *DocMagic* 800-649-1362
www.docmagic.com



**Exh. "A"**

pg. 8#

Insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3010 1/01                                    Page 8 of 16



**Exh. "A"**
pg. 9

or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction:  (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value.  Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.  "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12.  Borrower Not Released; Forbearance By Lender Not a Waiver.  Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower.  Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower.  Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3010 1/01                                   Page 9 of 16                         DocMagic CForms 800-649-1362
                                                                                      www.docmagic.com





**Exh. "A"**

pg#10

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3010 1/01                          Page 10 of 15                          DocMagic eForms 800-649-1362
                                                                              www.docmagic.com





Exh. "A" #

pg. 11

Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations

FLORIDA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3010 1/01                                        Page 11 of 15                                        DocMagic eForms 800-649-1362
www.docmagic.com



Exh. "A"

pg. 12

to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances.  As used in this Section 21:  (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property.  If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.  Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS.  Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial

FLORIDA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3010 1/01                                    Page 12 of 15



Exh  "A"

proceeding and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23.  **Release.**  Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument.  Borrower shall pay any recordation costs.  Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24.  **Attorneys' Fees.**  As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

25.  **Jury Trial Waiver.**  The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.





BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
-Borrower
LEROY WILLIAMS
1977 NE 119TH ROAD, NORTH
MIAMI, FLORIDA 33181

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Signed, sealed and delivered in the presence of:



michelle Austin-wilks         Peggy O'Brien

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3010 1/01
Page 14 of 15

DocMagic ℮Forms 800-649-1362
www.docmagic.com

Exh. "A"

———————— [Space Below This Line For Acknowledgment] ————————

STATE OF FLORIDA
COUNTY OF Broward

The foregoing instrument was acknowledged before me this 20 day of October, 2005
by LEROY WILLIAMS, a single

who is personally known to me or who has produced valid D/L
as identification.
                                                        (Type of Identification)

Michelle Austin-Wilk
Commission # D0?
Expires Dec. 26, ?
Bonded T?.?
Atlantic Bond?.

(Seal)

_____
Signature

_____
Name of Notary

_____
Title

_____
Serial Number, if any

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3010 1/01                    Page 15 of 18

DocMagic eForms 800-649-1362
www.docmagic.com



**Exh. "A"**

*# pg.16*

# Exhibit A

**LOT 103, BLOCK 14, SANS SOUCI ESTATES, according to the Plat threof as recorded in Plat Book 50, Page 86 of the Public Records of Mami-Dade County, Florida**

**Parcel Identification Number: 0622280113400**



File Number: 05a-138

DoubleTimes



Exhibit "A"

# PREPAYMENT RIDER

Loan Number: 150008387

Date: OCTOBER 20, 2005

Borrower(s): LEROY WILLIAMS

THIS PREPAYMENT RIDER (the "Rider") is made this 20th day of OCTOBER 2005 . and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of LANCASTER MORTGAGE BANKERS, A LIMITED LIABILITY COMPANY

("Lender"). The Security Instrument encumbers the Property more specifically described in the Security Instrument and located at

1977 NE 119TH ROAD, MIAMA A/K/A NORTH MIAMI, FLORIDA 33181
[Property Address]

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.    PREPAYMENT CHARGE**

The Note provides for the payment of a prepayment charge as follows:

**4    . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.

If the Note contains provisions for a variable interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase. If this Note provides for a variable interest rate or finance charge, and the interest rate or finance charge at any time exceeds the legal limit under which a Prepayment penalty is allowed, then the Note Holder's right to assess a Prepayment penalty will be determined under applicable law.

---

MULTISTATE PREPAYMENT RIDER - SPP
6/03

Page 1 of 2

DocMagic €Forms 800-649-1362
www.docmagic.com



OR BK 23966 PG 3482
LAST PAGE

**Exh. "A"**

# pg. 18

If within TWELVE    ( 12   ) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan. I will pay a Prepayment charge in an amount equal to SIX    ( 6   ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan.

Notwithstanding the foregoing provisions, I may make a full Prepayment without paying a Prepayment charge in connection with a bona fide and arms-length sale of all or any part of, or any legal or beneficial interest in, the Property  within  the first  12 months of the term of the Note. The phrase "bona fide and arms-length sale" means a sale in which all of the parties involved in the transaction, including without limitation, the buyer, seller, lender, real estate agent or broker, are independent of one another and unrelated by familial or financial interests. I agree to provide the Note Holder with any and all evidence reasonably requested by the Note Holder to substantiate that the sale of the Property is bona fide and arms-length.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Rider.

_____ (Seal)                    _____ (Seal)
LEROY WILLIAMS            -Borrower                                          -Borrower

_____ (Seal)                    _____ (Seal)
                          -Borrower                                          -Borrower

_____ (Seal)                    _____ (Seal)
                          -Borrower                                          -Borrower

MULTISTATE PREPAYMENT RIDER - SPP                Page 2 of 2              DocMagic CFsms 800-649-1362
6/03                                                                      www.docmagic.com



STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the
original on file in this office.                        AD 20
HARVEY RUVIN, CLERK of Circuit and County Courts

JOSE SILVA #311082

# Exh. [CC1]

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CIVIL ACTION

DEUTSCHE BANK NATIONAL TRUST
COMPANY AS TRUSTEE UNDER THE POOLING
AND SERVICING AGREEMENT SERIES RAST
2006-A8 (CSFB),
    Plaintiff,

vs.

JAMES LITTLEJOHN , et al,
    Defendant(s).

CASE NO.: 2007-18226-CA
DIVISION: 2

## NOTICE OF FILING

Plaintiff, DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE UNDER THE POOLING
AND SERVICING AGREEMENT SERIES RAST 2006-A8 (CSFB), gives Notice of Filing of attached ALLONGE
TO PROMISSORY NOTE and PREPAYMENT ADDENDUM TO NOTE.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. Mail to all
parties listed on the attached service list on this _13_ day of August, 2010.

Florida Default Law Group, P.L.
P.O. Box 25018
Tampa, Florida 33622-5018
(813) 251-4766

By: _____
Justin J. Kelley
Florida Bar No. 32106
Jessica M. Lowe
Florida Bar No. 69668
Tamara M. Walters
Florida Bar No. 922951

FILE_NUMBER: F07015531



Serial: 14785937
DOC_ID: M003100



# Exh.CC2

## PREPAYMENT ADDENDUM TO NOTE

Loan Number: ▉▉▉▉▉▉

Date:  OCTOBER 20, 2005

Borrower(s):  LEROY WILLIAMS

THIS PREPAYMENT ADDENDUM TO NOTE (the "Addendum") is made this     20th        day of
OCTOBER,   2005         , and is incorporated into and shall be deemed to amend and supplement
that certain promissory note (the "Note") made by the undersigned ("Borrower") in favor of LANCASTER
MORTGAGE BANKERS, A LIMITED LIABILITY COMPANY

("Lender") and dated the same date as this Addendum.  Repayment of the Note is secured by a Mortgage, Deed of
Trust, or Security Deed (the "Security Instrument") given by Borrower in favor of Lender and dated the same date
as this Addendum.  To the extent that the provisions of this Addendum are inconsistent with the provisions of the
Note, the provisions of this Addendum shall supersede the inconsistent provisions of the Note.

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Note, Borrower
and Lender further covenant and agree as follows:

Section  4   of the Note is amended to read in its entirety as follows:

### 4 . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE

I have the right to make payments of Principal at any time before they are due.  A payment
of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note
Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not
made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe
under the Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid
interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount
of the Note.  If I make a partial Prepayment, there will be no changes in the due dates of my
monthly payment unless the Note Holder agrees in writing to those changes.

If the Note contains provisions for a variable interest rate, my partial Prepayment may
reduce the amount of my monthly payments after the first Change Date following my partial
Prepayment.  However, any reduction due to my partial Prepayment may be offset by an interest
rate increase.  If this Note provides for a variable interest rate or finance charge, and the interest
rate or finance charge at any time exceeds the legal limit under which a Prepayment penalty is
allowed, then the Note Holder's right to assess a Prepayment penalty will be determined under
applicable law.

If within TWELVE      ( 12   ) months from the date the Security Instrument is
executed I make a full Prepayment or one or more partial Prepayments, and the total of all such
Prepayments in any 12-month period exceeds twenty percent (20%) of the original Principal amount
of the loan, I will pay a Prepayment charge in an amount equal to    SIX        (  6   )
months' advance interest on the amount by which the total of my Prepayments within any 12-month
period exceeds twenty percent (20%) of the original Principal amount of the loan.



Exh.CC4

LAN-1258
(WILLIAM)
122540258
1MFB1C

Allonge to Promissory Note

Loan Number: ~~▓▓▓▓▓~~

Borrower(s):    Leroy Williams
Property Address:      1977 NE 119ᵗʰ Road, Miami A/K/A North Miami, Florida 33181
Allonge to that certain Promissory Note dated:         October 20, 2005

Executed by:

Leroy Williams
WITHOUT RECOURSE, Pay to the Order of

IndyMac Bank, F.S.B.

Note holder:
LANCASTER MORTGAGE BANKERS, LLC

By: _Darlene Pereira_

Typed Name:   Darlene Pereira

Title:   Vice President



**Exh.CC5**

**Service List**

JAMES LITTLEJOHN
18610 NW 22ND AVE
OPA LOCKA, FL 33056

LEROY WILLIAMS
8152 NW 15TH MNR # FC2R
Plantation, FL 33322-5422

ATTORNEYS' TITLE INSURANCE FUND, INC.
c/o Ellen Patterson, Esq.
12514 W. Atlantic Blvd
Coral Springs, FL 3307!

LANCASTER MORTGAGE BANKERS, LLC
20 INDEPENDENCE BLVD.
WARREN, NJ 07059

MACK WELLS
15020 South River Drive
Miami, FL 33167

FIRST COMMERCIAL CORP.
C/o Schrema, Alfred L. R.a.
100 Lakeshore Drive 12
N. Palm Beach, FL 33408

CITY OF NORTH MIAMI
c/o V Lynn Whitfield, Esq.
776 N.E. 125th Street
North Miami, FL 33161

STATE OF FLORIDA - DEPARTMENT OF REVENUE
C/o Jim Zingale, Executive Director R.a. Carlton Building
501 S Calhoun St., Rm 104
Tallahassee, FL 32399

CYNTHIA L. WILCOXSON
4520 NW 185TH ST
OPA LOCKA, FL 33055

CAPITAL ONE BANK
C/o Legal Dept. 11011 West Broad Street
Glen Allen, VA 23233



Miami-Dade Official Records - Print Document

# Exh. D1

*1977*

ared by:
nes Buckman
977 NE 119 Rd.
Miami, Florida 33181

CFN 2004R0860746
OR Bk 22698 Pg 4158 (1ps)
RECORDED 10/01/2004 14:27:03
DEED DOC TAX 0.60
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
LAST PAGE

## Quit Claim Deed

**This Quit Claim Deed** made this September 30, 2004 between **ALEXANDER MORERA**, a single man, whose post office address is 1977 NE 119 Rd., North Miami, Florida 33181 grantor, and **ALEXANDER MORERA** a single man, whose post office address is 1977 NE 119 Rd., North Miami, Florida 33181, **TANNA CARTER** a single woman, whose post office address is 1977 NE 119 Rd., North Miami, Florida 33181, **JAMES BUCKMAN** a single man, whose post office address is 1977 NE 119 Rd., North Miami, Florida 33181, grantee:

(Whenever used herein the terms "grantor" and "grantee" include all the parties to this instrument and the heirs, legal representatives, and assigns of individuals, and the successors and assigns of corporations, trusts and trustees)

**Witnesseth**, that said grantor, for and in consideration of the sum TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration to said grantor in hand paid by said grantee, the receipt whereof is hereby acknowledged, does hereby remise, release, and quitclaim to said grantee, and grantee's heirs and assigns forever, all the right, title, interest, claim and demand which grantor has in and to the following described land, situated, lying and being in **Miami-Dade County, Florida** to-wit:

> LOT 103, BLOCK 14, OF SANS SOUCI ESTATES, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 50, AT PAGE 86, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA
>
> A/K/A: 1977 NE 119 Rd., North Miami, Florida 33181
> FOLIO NUMBER: 06-22-28-011-3400

THAT AT ANY TIME JAMES BUCKMAN OR TANNA CARTER CAN PAYOFF THE FIRST AND SECOND MORTGAGE AND BECOME THE SOLE OWNER OF THE PROPERTY WITHOUT ALEXANDER MORERA.

**To Have and to Hold**, the same together with all and singular the appurtenances thereto belonging or in anywise appertaining, and all the estate, right, title, interest, lien, equity, and claim whatsoever of grantors, either in law or equity, for the use, benefit and profit of the said grantee forever.

**In Witness Whereof**, grantor has hereunto set grantor's hand and seal the day and year first above written.

Signed, sealed and delivered in our presence:

Witness Name: _____                    ALEXANDER MORERA

Witness Name: _____

SATE OF FLORIDA
COUNTY OF MIAMI-DADE                    * ALEXANDER MORERA

The foregoing instrument was sworn to/subscribed and acknowledge before me this 1st day of October , 2004 by all signors, who have produced their Florida Drivers License, as identification.

[Notary Seal]

Notary Public
Print Name: Rachelle Rodriguez
Commission Expires: April 22, 2005

# Exh. D2

When recorded return to: _____

# Quitclaim Deed:

PrepareR: MicAhiel NichlosoN
1228 NW 200 th st MiAmi FL 33169

THIS QUITCLAIM DEED, executed this _6th_ day of _December_, 20 _04_.
by first party, Grantor, _Alexander Morera, JAMES BucKMAN AND TANNA CARTER_
whose post office address is _1977 NE 119th Rd Miami FLA 33181_
to second party, Grantee, _James LittleJohN And LeRoy WilliAms_
whose post office address is _1977 NE 119th Rd Miami FLA 33181_

WITNESSETH, That the said first party, for good consideration and for the sum of _TEN DollARS_
_TEN_ Dollars ($ _10.00_ )
paid by the said second party, the receipt whereof is hereby acknowledged, does hereby remise, release and quitclaim unto the
said second party forever, all the right, title, interest and claim which the said first party has in and to the following described
parcel of land, and improvements and appurtenances thereto in the County of _MiAMi, DADE_
State of _FloridA_ to wit: _Folio-06-2228-011-3400_
_283352 42 SANS Souci ESTS PB 50-86 Lot_
_103 BlK 14 Lot Size 75000 x 125 OR 20516-_
_4414  05 20021 CO COC 26198-1620-16 2011_
_2005 5_

© 2004, Socrates Media, LLC

# Exh. D2

Assessor's Property Tax Parcel/Account Number(s): _____

IN WITNESS WHEREOF, The said first party has signed and sealed these presents the day and year first above written. Signed, sealed and delivered in presence of:

Signature of Witness: _____

Printed Name of Witness: _Ayton White_

Signature of First Party: _____

Printed Name of First Party: _Alexander Mason, John Buckner and Tameca Carter_

Address of Witness: _14100 NW 14th AVE. Miami Fla. 33167_

Signature of Notary: _Barline Williams_

Affiant _____ Known _____ Produced ID
Type of ID _____
                                    (Seal)

State of
County of
On
appeared
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature of Notary: _Barline Williams_

Affiant _____ Known _____ Produced ID
Type of ID _____
                                    (Seal)

Signature of Preparer: _Barline Williams_

Address of Preparer: _13040 NW 5st_

Print name of Preparer: _Carline Williams_

City, State, Zip: _Pembroke Pines Fl 33028_

# Exh. D3

When recorded return to: _____

# Quitclaim Deed:

PrePAreR: MICAHIEL NichLosoN
*Micahiel Nichloson*
1220 NW 200th St MIAMI FL. 33169

THIS QUITCLAIM DEED, executed this **1st** day of **November**, 20 **05**.
by first party, Grantor, **LEROY WILLIAMS**
whose post office address is **1977 NE 119th Rd MIAMI FLA 33181**
to second party, Grantee, **JAMES LittleJohN**
whose post office address is **1977 NE 119TH Rd MIAMI FLA. 33181**

WITNESSETH, That the said first party, for good consideration and for the sum of **TEN DollArS**
**TEN** Dollars ($ **10.00** )
paid by the said second party, the receipt whereof is hereby acknowledged, does hereby remise, release and quitclaim unto the
said second party forever, all the right, title, interest and claim which the said first party has in and to the following described
parcel of land, and improvements and appurtenances thereto in the County of **MIAMI, DADE**
State of _____ to wit: **Folio - 06 - 2288 - 011 - 3400**
**28  33  52  42  SANS  Souci  ESTS  DB 50-86  LOT**
**103  BLK 14  Lot Size  75000 X 125  OR 20516-4414**
**05 20021 Co CoO  26198-1680 - 162011  2005 5**

© 2004, Socrates Media, LLC

# Exh. D3

Assessor's Property Tax Parcel/Account Number(s): _____

**IN WITNESS WHEREOF,** The said first party has signed and sealed these presents the day and year first above written. Signed, sealed and delivered in presence of:

Signature of Witness: _Clyde McPhatter_

Printed Name of Witness: _Clyde McPhatter_

Signature of First Party: _Leroy Williams_

Printed Name of First Party: _Leroy Williams_

Address of Witness: _1977 NE 119TH Rd Miami FLA. 33151_

State of _____
County of _____ } ss.

I certify that I know or have satisfactory evidence that _____ (name of person) is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as _____ (officer, trustee, etc.) of _____
of whom instrument was executed) to be the free and voluntary act of such party for the uses and purposes mentioned in the _____ (name of party on behalf instrument.

Dated: _____          Signature: _____

(Seal or Stamp)                         Title: _____

                                        My appointment expires: _____

© 2004, Socrates Media, LLC

# Exh. D4

Prepared by
TAL DAVIS
14100 NW 14 Ave
Miami, FL 33167

```
CFN  2008R0096564
OR Bk 26198 Pgs 1620 - 1621; (2pgs)
RECORDED 02/05/2008 13:11:00
DEED DOC TAX 0.60
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
```

Above Space Reserved for Recording
(If required by your jurisdiction, list above the name & address of: 1) where to return this form; 2) preparer; 3) party requesting recording.)

# Quitclaim Deed

Date of this Document: __November 10, 2005__

Reference Number of Any Related Documents: _____

**Grantor:**

| | |
|---|---|
| **Name** | James Littlejohn |
| **Street Address** | 1977 NE 119th Rd |
| **City/State/Zip** | Miami, FL 33181 |

**Grantee:**

| | |
|---|---|
| **Name** | James Littlejohn, Robert Clark, Leroy Williams |
| **Street Address** | 1977 NE 119th Rd |
| **City/State/Zip** | Miami, FL 33181 |

Abbreviated Legal Description (i.e., lot, block, plat or section, township, range, quarter/quarter or unit, building and condo name): 28 83 52 42 Sans Souci Ests PB 50-96 Lot 103 Blk 14 Lot

Assessor's Property Tax Parcel/Account Number(s): 06-2228-011-3400

THIS QUITCLAIM DEED, executed this __10th__ day of __November__ 20 __05__, by first party, Grantor __James Littlejohn__, whose mailing address is __1977 NE 119th Rd Miami FL 33181__ to second party, Grantee, __James Littlejohn Robert Clark Leroy Williams__ whose mailing address is __1977 NE 119th Rd Miami FL 33181__

WITNESSETH that the said first party, for good consideration and for the sum of __Ten Dollars__ Dollars ($ __10.00__ ) paid by the said second party, the receipt whereof is hereby acknowledged, does hereby remise, release and quitclaim unto the said second party forever, all the right, title, interest and claim,

3/20/2019                                  Miami-Dade Official Records - Print Document

# Exh. D4

OR BK 26198 PG 1621
LAST PAGE

which the said first party has in and to the following described parcel of land, and improvements and appurtenances thereto in the County of ___DADE___, State of ___Florida___ to wit 29 33 52 42 SANS SOUCi EStS PB 50-86 Lot 103 BLK 14 Lot Size 75000 X 125 OR 20516-4414 05 2002 1 OOO 25192-3749 07 2006 4

**IN WITNESS WHEREOF,** the said first party has signed and sealed these presents the day and year first written above. Signed, . sealed and delivered in the presence of:

Signature of Witness _____
Print Name of Witness   ADILIAS SIMONETTE

Signature of Witness _____
Print Name of Witness   CARfel CORNiLeus

Signature of Grantor _____
Print Name of Grantor   James L LittleJohn

State of ___Florida___
County of ___Dade___

On ___November 10 2005___, before me, ___Andrea Chenault___ appeared ___James Littlejohn Robert Clark LeRoy William___ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Signature of Notary

ANDREA M CHENAULT
MY COMMISSION # DD484766
EXPIRES December 25, 2010

Affiant ___ Known ✓ ___ Produced ID
Type of ID _____
          (Seal)       DL# L 342-453-51-444-0

www.modmko.com                    Page 2 of ?              © 2005 Socrates Media, LLC
                                                           LF258-1 ▪ Rev 08/05

3/12/2019      Miami-Dade Official Records - Print Document      **Exh. D5**

```
CFN  2004R1333173
OR Bk 25192 Pgs 3749 - 3750 (2pgs)
RECORDED 12/15/2006 10:14:58
DEED DOC TAX 0.60
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
```

## QUITCLAIM DEED

**THIS QUITCLAIM DEED,** Executed this 8th day of July

(year) 2006

by first party, Grantor, Leroy Williams

whose post office address is 1977 NE 119 Rd miami 33181

to second party, Grantee, James Little John

whose post office address is 1977 NE 119 Rd. Miami Fla 33181

**WITNESSETH,** That the said first party, for good consideration and for the sum of
Dollars ($ 10.00 ) paid by the said second
party, the receipt whereof is hereby acknowledged, does hereby remise, release and quitclaim
unto the said second party forever, all the right, title, interest and claim which the said first party
has in and to the following described parcel of land, and improvements and appurtenances there-
to in the County of Dade , State of Florida to wit:

Lot 103 Block 14 of SansSouci Estates, According to the Plat thereof,
As recorded in Plat Book 50, At Page 86, of the Public Records
of Miami-Dade County, Florida. 1977 NE 119 Rd Miami Fla
33181

Folio # 06-2228011-3400

3/12/2019                          Miami-Dade Official Records - Print Document        **Exh. D5**

OR BK 25192 PG 3750
LAST PAGE

**IN WITNESS WHEREOF,** The said first party has signed and sealed these presents the day and year first above
written. Signed, sealed and delivered in presence of:

Signature of Witness

Printed name of Witness    Steve Cruz

Signature of Witness    Billy Williams

Bill Williams
Print name of Witness

Signature of First Party

Leroy Williams
Print name of First Party

Signature of First Party

Print name of First Party

State of Florida
County of Dade
On 7/8/06                    before me,
appeared Leroy Williams
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Carline William
Signature of Notary

Affiant ____ Known ____ Produced ID
Type of ID _____
                                    (Seal)

State of
County of
On
appeared
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Carline Williams
Signature of Notary

Affiant ____ Known ____ Produced ID
Type of ID _____
                                    (Seal)

Carline Williams
Signature of Preparer

Carline Williams
Print name of Preparer

13040 NW 5st
Address of Preparer

PemBroke Pines Fl 33028
City, State, Zip

James Buckman
1977 NE 119th Rd
Miami, Florida 33181

# Exh. D6

## Quit Claim Deed

**This Quit Claim Deed** made this November 1st, 2005 between Robert Clark, a single man, whose address is 1977 NE 119 Rd., North Miami, Florida 33181 grantor, and James Littlejohn a single man, whose address 1977 NE 1 19 Rd., North Miami, Florida 33181. grantee:

(Whenever used herein the terms "grantor" and "grantee" include all the parties to this instrument and the heirs, legal representatives, and assigns of individuals, and the successors and assigns of corporations, trusts and trustees)

**Witnesseth**, that said grantor, for and in consideration of the sum TEN AND NO/ 100 DOLLARS ($10.00) and other good and valuable consideration to said grantor in hand paid by said grantee, the receipt whereof is hereby **acknowledged, does hereby remise, release, and quitclaim to said** grantee, and grantee's heirs and assigns forever, all the right, title, interest, claim and demand which grantor has in and to the Following described land, situated, lying and being in **Miami-Dade** County, **Florida** to-wit:

    LOT 103, BLOCK 14, OF SANS SOUCI ESTATES, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT **BOOK 50**, AT PAGE 86, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA

    A/K/A: 1977 NE 119 Rd., North Miami, Florida 33181
    FOLIO NUMBER: 06-22-28-011-3400

    **To Have and to Hold**, the same together with all and singular the appurtenances thereto belonging or in anywise appertaining, and all the estate, right, title, interest, lien, equity, and claim whatsoever of grantors, either in law or equity, for the use, benefit and profit of the said grantee forever.

**In Witness Whereof**, grantor has hereunto set grantor's hand and seal the day and year first above written.

Signed, sealed and delivered in our presence:

_Micahiel Nicholson_            _Robert Clark_
Witness Name: Micahiel Nicholson      ROBERT CLARK

_Antione White_
Witness Name: Antione White           _____

The foregoing instrument was sworn to subscribed and acknowledged before me this _1st_ day of November, 2005 by all signors, who have produced their Florida Drivers license, as identification.

           _Rachelle_
           Notary Public
           Print Name: _Rachelle_
           Commission Expires: _April_

Page 1 of 1

# Exh. D7

When recorded return to: _Prepared by James Buckman_
_3320 NE 119th St RD Miam, FL 33160_

# Quitclaim Deed:

THIS QUITCLAIM DEED, executed this ___1___ day of ___January___, 20_07_,
by first party, Grantor, ___James M. Littlejohn___
whose post office address is _1977 NE 119th Rd, Miami FL, 33181_
to second party, Grantee, _Maurica Symonette, James M. Littlejohn and Mishid Nichlason_
whose post office address is _1977 NE 119th Rd, Miami Fl. 33181_
_Maurica Symonette has the right to sell the property without James Littlejohn's_
_consent. James Littlejohn gives only own percent interest in the property is Maurica Symonette_
_for James Buckman & Maurica to sign for anything concerning his property._
WITNESSETH, that the said first party, for good consideration and for the sum of
___Ten___ Dollars ($ _10.00_ )
paid by the said second party, the receipt whereof is hereby acknowledged, does hereby remise, release and quitclaim unto the
said second party forever, all the right, title, interest and claim which the said first party has in and to the following described
parcel of land, and improvements and appurtenances thereto in the County of _Miami Dade_
State of _Florida_   to wit:   _Folio: 06-2224011-3400_

_Lot 103 Block 14 of Sansoucci Estates_
_According to the Plat Therof as recorded in Plat_
_Book 50 at Page 86 of the Public Records of Miami_
_Dade County Florida, 1977 NE 119th rd, Miami Fl. 33181_

Page 1

© 2004, Socrates Media, LLC

**Exh. D7**

Assessor's Property Tax Parcel/Account Number(s): _____

**IN WITNESS WHEREOF,** The said first party has signed and sealed these presents the day and year first above written. Signed, sealed and delivered in presence of:

Signature of Witness: *Mack Wells*

Printed Name of Witness: *Mack Wells*

Signature of First Party: *James M. Littlejohn*

Printed Name of First Party: *James M. Littlejohn*

Address of Witness: *15020 S. River Dr. Miami Fl. 33167*

*Second witness: Clyde Ward Clyde Ward*
*1220 NW 20 St Miami Fl. 33168*

State of
County of *Broward*            } SS.

I certify that I know or have satisfactory evidence that *James M. Littlejohn* _____ (name of person) is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as *James M. Littlejohn* _____ (officer, trustee, etc.) of *James M. Littlejohn, Maurice Symonette, Mariciel Richason* _____ (name of party on behalf of whom instrument was executed) to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: *1-1-2007*            Signature: *Fannie Mitchell*

(Seal or Stamp)            Title: _____

My appointment expires: *3-8-2011*

© 2004, Socrates Media, LLC.

3/24/2019                        Miami-Dade Official Records - Print Document         **Exh. D7**

*1977*

Prepared By and Return to:
Mack Wells - 736- 839- 9491
PO Box 222692
Hollywood, Florida 33022

CFN 2007R0017713
OR Bk 25253 Ps 3151; (1ea)
RECORDED 01/05/2007 11:26:30
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
LAST PAGE

<u>CLAIM OF LIEN</u>

State of Florida
County of Miami-Dade

BEFORE ME, the undersigned authority, personally appeared this day Mack Wells, who, upon being first duly sworn, says that; he is Lienor herein whose address P.O. Box 222692 Hollywood, Florida 33022 and that in accordance with a contract. Lienor furnished labor, services, and/or materials on the following described real property:

**1977 NE 119 RD MIAMI FL 33161**

**28 33 52 42 SANS SOUCI ESTS PB 50-86 LOT 103 BLK 14 LOT SIZE 75.000 X 125 OR 20516-4414 05 2002 1 COC 23966-3463 10 2005 1**

Property Folio Number: 06-2228-011-3400
**Which property is owned by: LEROY WILLIAMS**

**Said labor, materials, and/or services were of total value of $321,000.46 of which there remains unpaid $321,000.46, for labor materials, and/or services plus interest furnished since December 4, 2005.**

                                          By: *Mack L. Wells*
                                              Mack Wells

State of Florida
County of Miami-Dade

THE FOLLOWING DOCUMENTS SUBSCRIBED AND SWORN BEFORE ME 4 TH day of Auy 2007 by Mack Wells. Who has produced a Florida Drivers License as identification W400-552-57-225-0 and who has been personally sworn therein.

                                          Printed Name of Notary

My Commission Expires: _____

*Exhibit* **E**

# RESIDENTIAL LEASE AGREEMENT

1. **IDENTIFICATION OF PARTIES AND PREMISES** This Agreement is made and entered into this _1st_ day of _October_, 20__, between the following named persons:

   _Jona Buckman, James Littlejohn_
   _Tavon Carter and Leroy Williams_

   (herein called "Tenant") and _Alejandro Morera_ (herein called "Landlord"). Subject to the terms and conditions set forth in this Agreement, Landlord rents to Tenants, and Tenants rent from Landlord, the premises located at _1972 N.E. 119th Rd. Miami FL 33181_, California (herein called "the premises"). The premises shall be occupied only by the above mentioned Tenants. Tenants shall use the premises for residential purposes only and for no other purpose without Landlord's prior written consent. Occupancy by guests for more than ten days in any six-month period is prohibited without Landlord's written consent and shall be considered a breach of this Agreement.

2. **INDIVIDUAL LIABILITY** Each tenant who signs this Agreement, whether or not said person is or remains in possession, shall be jointly and severally liable for the full performance of each and every obligation of this Agreement, but not limited to, the payment of all rent due and the payment of costs to remedy damages to the premises regardless of whether such damages were caused by a Tenant or invitee of a Tenant.

3. **TERM OF THE TENANCY** The term of this Agreement shall commence on _10/1/_, 20__, and shall continue from that date
   □ a. on a month-to-month basis. This Agreement will continue for successive terms of one month each until either Landlord or Tenants terminate the tenancy by giving the other thirty (30) days written notice of an intention to terminate the premises. In the event such notice is given, Tenants agree to pay all rent up to and including the notice period.
   □ b. for a period of _12_ months expiring on _11/1/_, 20_25_. Should Tenants vacate before the expiration of the term, Tenants shall be liable for the balance of the rent for the remainder of the term, less any rent Landlord collects or could have collected from a replacement tenant by reasonably attempting to re-rent. Tenants who vacate before expiration of the term are also responsible for Landlord's costs of advertising for a replacement tenant. In the event Tenants fail to give written notice of an intention to vacate the premises at the end of the term, the tenancy shall become one of month-to-month on all terms specified in section (a) of this clause.

4. **PAYMENT OF RENT** Tenants shall pay Landlord rent of $ _14,800.00_ per month, payable in advance on the _10th_ day of each month. If that day falls on a weekend or legal holiday, the rent is due on the next business day. Rent shall be paid by personal check, money order or cashier's check only, to _P.O. Box 222682_ at, _Hollywood FL 33022_, or at such other place as Landlord shall designate from time to time.

5. **LATE CHARGES AND RETURNED CHECKS** If rent is paid after the _20th_ day of the month, there will be a late charge of $ _111.00_ assessed. If any check given by Tenants to Landlord for the payment of rent or for any other sum due under this Agreement is returned for insufficient funds, a "stop payment" or any other reason, Tenants shall pay Landlord a returned check charge of $ _35.00_.

6. **FAILURE TO PAY** As required by law, Tenants are hereby notified that a negative credit report reflecting on Tenants' credit history may be submitted to a credit reporting agency if Tenants fail to fulfill the terms of their credit obligations, such as their financial obligations under the terms of this Agreement.

7. **SECURITY DEPOSIT** Before the commencement of this Agreement, Tenants shall pay Landlord $ _8,600.00_ as a security deposit. Landlord may use therefrom such amounts as are reasonably necessary to remedy Tenants' default in the payment of rent, repair damages to the premises exclusive of ordinary wear and tear, and to clean the premises if necessary. Landlord shall refund Tenants the balance of the security deposit after such deductions within

**Exh. E**

twenty-one (21) days after the expiration of this Agreement. If deductions have been made, Landlord shall provide Tenants with an itemized account of each deduction including the reasons for and the dollar amount of each deduction.

Interest payments on security deposits accrue as follows:

   ☑ a. Local law does not require Landlord to pay interest on security deposits.
   ☐ b. Local law requires Landlord to pay Tenants interest payments on security deposits as follows:

_____

_____

8. **UTILITIES**  Tenants shall pay directly for all utilities, services and charges provided to the premises, including any and all deposits required, except for the following, which shall be paid by Landlord:

   ☑ a. None.
   ☐ b. _____

9. **PARKING**  Tenants are assigned parking as follows:

   ☑ a. None.
   ☐ b. _____

   This space shall be used for the parking of _____ car(s) only. Tenants may not repair vehicles of any kind in any parking space or anywhere else on or about the property. Grease, oil and any other drippings must be cleaned by Tenants when they occur and at Tenants' expense. Cars are not to be washed on or about the premises. In addition to rent, Tenants shall pay Landlord a parking fee of $ _____ per month. This fee is payable in advance along with the rent and shall be paid at the same address as designated by Landlord for payment of rent.

10. **PETS**  No animal, bird or other pet shall be brought on or kept on the premises without Landlord's prior written consent, except for the following:

   ☐ a. None.
   ☑ b.  *Written Consent or Verbal Consent*

11. **QUIET ENJOYMENT**  Tenants shall be entitled to quiet enjoyment of the premises. Tenants shall not use the premises in such a way as to violate any law or ordinance, commit waste or nuisance, or annoy, disturb, inconvenience, or interfere with the quiet enjoyment of any other or nearby resident.

12. **ASSIGNMENT AND SUBLETTING**  No portion of the premises shall be sublet nor this Agreement assigned without the prior written consent of the Landlord. Any attempted subletting or assignment by Tenants shall, at the election of Landlord, be an irremediable breach of this Agreement and cause for immediate termination as provided here and by law.

13. **POSSESSION OF THE PREMISES**  The failure of Tenants to take possession of the premises shall not relieve them of their obligation to pay rent. If Landlord is unable to deliver possession of the premises for any reason not within Landlord's control, Landlord shall not be liable for any damage caused thereby, nor will this Agreement be void or voidable, but Tenants shall not be liable for any rent until possession is delivered. If Landlord is unable to deliver possession within _____ calendar days after the agreed commencement date, Tenants may terminate this Agreement by giving written notice to Landlord, and shall receive a refund of all rent and security deposits paid.

14. **CONDITION OF THE PREMISES**  Tenants agree to

   (i)   properly use, operate and safeguard the premises and all furniture and furnishings, appliances and fixtures within the premises,

   (ii)  maintain the premises in clean and sanitary condition, and upon termination of the tenancy, to surrender the premises to Landlord in the same condition as when Tenants first took occupancy, except for ordinary wear and tear,

   (iii) if the surrounding grounds are part of the premises and for exclusive use of Tenants, Tenants agree to irrigate and maintain the surrounding grounds in a clean and safe manner, keeping the grounds clear of rubbish and weeds and trimming all grass and shrubbery as necessary to effect a neat and orderly appearance to the property,

**Exh. E**

(iv)   notify Landlord in writing upon discovery of any damages, defects or dangerous conditions in and about the premises; and

(v)   reimburse Landlord for the cost of any repairs to the premises of damages caused by misuse or negligence of Tenants or their guests or invitees.

Tenants acknowledge that they have examined the entire interior and exterior of the premises, including plumbing, heating and electrical appliances, smoke detector(s), fixtures, carpets, drapes and paint, and have found them to be in good, safe and clean condition and repair, with the following exceptions: (Specify "none" if there are no exceptions)

OK

15. **REPAIRS, ALTERATIONS AND DAMAGES** Except as provided by law or as authorized by the prior written consent of Landlord, Tenants shall not make any repairs or alterations to the premises, including but not limited to, painting the walls, installing wallpaper, murals, paneling, tile, or hanging posters or pictures weighing in excess of twenty pounds.

If the premises are damaged or destroyed as to render them uninhabitable, then either Landlord or Tenants shall have the right to terminate this Agreement as of the date on which such damage occurs, through written notice to the other party to be given within fifteen days of occurrence of such damage. However, if such damage should occur as the result of the conduct or negligence of Tenants or Tenants' guests or invitees, Landlord only shall have the right to termination and Tenants shall be responsible for all losses, including, but not limited to, damage and repair costs as well as loss of rental income.

16. **EMERGENCY ENTRY AND INSPECTION** Tenants shall make the premises available to Landlord or Landlord's agents for the purposes of making repairs or improvements, or to supply agreed services or show the premises to prospective buyers or tenants, or in case of emergency. Except in case of emergency, Landlord shall give Tenants reasonable notice of intent to enter. For these purposes, twenty-four (24) hour written notice shall be deemed reasonable, and reasonable hours shall be defined as 8:PM to 4:PM Monday through Friday and 12 AM to 4:PM on Saturdays. In order to facilitate Landlord's right of access, Tenants shall not, without Landlord's prior written consent, add, alter or re-key any locks to the premises. At all times Landlord shall be provided with a key or keys capable of unlocking all such locks and gaining entry. Tenants further agree to notify Landlord in writing if Tenants install any burglar alarm system, including instructions on how to disarm it in case of emergency entry.

17. **EXTENDED ABSENCES AND ABANDONMENT** In the event Tenants will be away from the premises for more than ____7____ consecutive days, Tenants agree to notify Landlord in writing of the absence. During such absence, Landlord may enter the premises at times reasonably necessary to maintain the property and inspect for damages and needed repairs.

Abandonment is defined as absence of the Tenants from the premises, for at least ___15___ consecutive days without notice to Landlord. If the rent is outstanding and unpaid for fourteen (14) days and there is no reasonable evidence, other than the presence of the Tenants' personal property, that the Tenants are occupying the unit, Landlord may at Landlord's option terminate this agreement and regain possession in the manner prescribed by law.

18. **INSURANCE DISCLAIMERS** Tenants assume full responsibility for all personal property placed, stored or located on or about the premises. Tenants' personal property is not insured by Landlord. Landlord recommends that Tenants obtain insurance to protect against risk of loss from harm to Tenants' personal property. Landlord shall not be responsible for any harm to Tenants' property resulting from fire, theft, burglary, strikes, riots, orders or acts of public authorities, acts of nature or any other circumstance or event beyond Landlord's control.

19. **HOLD HARMLESS** Tenants expressly release Landlord from any and all liability for any damages or injury to Tenants, or any other person, or to any property, occurring on the premises unless such damage is the direct result of the negligence or unlawful act of Landlord or Landlord's agents.

20. **SMOKE DETECTORS** The premises are equipped with a smoke detection device(s), and Tenants shall be responsible for reporting any problems, maintenance or repairs to Landlord. Replacing batteries is the responsibility of Tenants.

# Exh. E

21. **LEAD BASED PAINT DISCLOSURE** By initialing, Tenant acknowledges receipt of disclosure of information on lead-based paint and lead-based paint hazards. Landlord has no reports or knowledge of lead-based paint on the premises.

Tenants initial here: _JB_ _JL_ _TC_ _LW_

22. **LIQUID-FILLED FURNITURE** Tenant shall not use or have any liquid-filled furniture on the premises without Landlord's prior written consent.

23. **ADDITIONAL PROVISIONS** (Specify "none" if there are no additional provisions)

_(None)_

24. **ENTIRE AGREEMENT** This document constitutes the entire Agreement between the Tenants and Landlord. This Agreement cannot be modified except in writing and must be signed by all parties. Neither Landlord nor Tenants have made any promises or representations, other than those set forth in this Agreement and those implied by law. The failure of Tenants or their guests or invitees to comply with any term of this Agreement is grounds for termination of the tenancy, with appropriate notice to Tenants and procedures as required by law.

_Alexander Morera_
Landlord/Manager

_1977 NE 119th Rd._
_Miami FL 33181_
Landlord/Manager's Street Address, City, State & ZIP

Date _10/1/2004_

_James Buckman, Jon Buckman Jr._
Tenant

Date _10/1/2004_

_Tanam Carter, Tanna Carter_
Tenant

Date _10/1/2004_

_James Littlejohn, James Littlejohn_
Tenant

Date _10/1/2004_

_Leroy Williams, Leroy Williams_
Tenant

Date _10/1/2004_

**Exh. E**

21. **LEAD BASED PAINT DISCLOSURE** By initialing, Tenant acknowledges receipt of disclosure of information on lead-based paint and lead-based paint hazards. Landlord has no reports or knowledge of lead-based paint on the premises.

Tenants initial here: _JB.  dL.  Jc.  LW._

22. **LIQUID-FILLED FURNITURE** Tenant shall not use or have any liquid-filled furniture on the premises without Landlord's prior written consent.

23. **ADDITIONAL PROVISIONS** (Specify "none" if there are no additional provisions)

_(None)_

24. **ENTIRE AGREEMENT** This document constitutes the entire Agreement between the Tenants and Landlord. This Agreement cannot be modified except in writing and must be signed by all parties. Neither Landlord nor Tenants have made any promises or representations, other than those set forth in this Agreement and those implied by law. The failure of Tenants or their guests or invitees to comply with any term of this Agreement is grounds for termination of the tenancy, with appropriate notice to Tenants and procedures as required by law.

_Alexander Morera_
Landlord/Manager                                           Date _10/1/2004_

_1977 NE 119th Rd._
_Miami Fl. 33181_
Landlord/Manager's Street Address, City, State & ZIP

_James Buckman, Jim Buckman Jr._
Tenant                                                     Date _10/1/2004_

_Tanair Corter, Tanna Carter_
Tenant                                                     Date _10/1/2004_

_James Littlejohn, James Littlejohn_
Tenant                                                     Date _10/1/2004_

_Leroy Williams, Leroy Williams_
Tenant                                                     Date _10/1/2004_

_2019                                    Miami-Dade Official Records - Print Document

VOID
1-3

# Exh. [E-2]

## IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR
## MIAMI-DADE COUNTY, FLORIDA

ATTORNEYS' TITLE INSURANCE FUND
    Plaintiff,

                              Case No.: 06-14625 CA 05
                              Division: General Jurisdiction

vs.

JAMES BUCKMAN, ALEXANDER MORERA
& TANNA CARTER
        Defendant.

_____/

## NOTICE OF VOLUNTARY DISMISSAL

    COMES NOW, Defendant/Counter Plaintiff, Tanna Carter, by and through undersigned counsel and files a Voluntary Dismissal as to the Counterclaim against Plaintiff/Counter Defendant, Attorney's Title Insurance Fund, without prejudice.


    I HEREBY CERTIFY that a true and correct copy of the foregoing was sent by mail this _1st_ day of _November_, 2006 to: Ellen Patterson, Esquire, Rothman & Tobin, P.A., 12514 W. Atlantic Blvd., Coral Springs, FL 33071, James Buckman 15020 S. River Drive, Miami, FL 33167 and Alexander Morera, 410 SE 1st Street, Hialeah FL 33010.

                MCFARLANE & NIXON-CALAMARI, P.A.,
                7481 W. Oakland Park Blvd.
                Suite 302
                Ft. Lauderdale, FL 33319
                (954) 742-5991
                (954) 742-5992 (fax)

                By: _____
                Christine Nixon-Calamari, Esquire
                FBN. 0046541

3/18/2019

Miami-Dade Official Records - Print Document

**Exh. E**

Ldoc

IN THE CIRCUIT COURT OF THE 11th
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.: 06-14625 CA 05

ATTORNEYS' TITLE INSURANCE FUND,
INC.,

     Plaintiff,

vs.

JAMES BUCKMAN; ALEXANDER MORERA;
TANNA CARTER; FLAMINGO TITLE
SERVICES, INC.

     Defendants.

_____/

### NOTICE OF VOLUNTARY DISMISSAL OF COUNT IV
### AND OF DROPPING PARTY DEFENDANT

    Pursuant to Fla. R. Civ. P. 1.420(a)(1), Plaintiff hereby dismisses COUNT IV only of the Third-Amended Complaint filed in the above-styled cause and drops Defendant, FLAMINGO TITLE SERVICES, INC., as a Defendant in the instant action for the reason that the dispute subject of COUNT IV has been resolved, finalized or otherwise concluded. Each party shall bear its/his/her on fees and costs. All other counts and claims against all Defendants other than FLAMINGO TITLE SERVICES, INC., shall remain in force and shall be unaffected by this Notice of Voluntary Dismissal of Count IV.

### CERTIFICATE OF SERVICE

    WE HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 13 day of _____, 2008 to: James Buckman, 15020 S. River Drive, Miami, Florida 33167 and 1977 NE 119th Road, North Miami, Florida 33181; Alexander Morera, 410 SE 1st Street, Hialeah, Florida 33010; Tanna Carter 2070 Reston Circle, Royal Palm Beach, FL 33411; and Michael Sastre, Esq., Wilson Elser Moskowitz Edelman & Dicker, LLP, 100 SE 2nd Street, Suite 3800, Miami, FL 33131; Edward S.Polk, Esq., Cole, Scott & Kissane, P.A., 1390 Brickell Avenue, 3rd Floor, Miami, Florida 33131.

                    ROTHMAN & TOBIN, P.A.
                    Attorneys for Plaintiff
                    12514 W. Atlantic Blvd.
                    Coral Springs, Florida 33071
                    Telephone: 954-510-0500
                    Telefax: 954-510-0440
                    By:_____
                      Ellen Patterson
                      Florida Bar No. 0520012

08 FEB 19 PM 1: 53

15020

Exh."B1"

Pg 1

CFN 2005R0793767
OR Bk 23423 Pgs 2221 - 2250; (30pgs)
RECORDED 07/29/2005 12:41:05
MTG DOC TAX 1,568.00
INTANG TAX 896.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

Return To:
Axiom Financial Services
Attn: Post Closing Dept.
16550 West Bernardo Dr., Bldg 1
San Diego, CA 92127-1870

This document was prepared by:
Axiom Financial Services
10000 Stonelake Blvd Suite 350
Austin, TX 78759-5867

-------[Space Above This Line For Recording Data]-------

## MORTGAGE

MIN 100176105062733202

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated June 30, 2005 together with all Riders to this document.

(B) "Borrower" is LEROY WILLIAMS, AN UNMARRIED MAN

Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is Axiom Financial Services

100176105062733                    0506273320

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3010 1/01

-6A(FL) (0005).01

Page 1 of 16          Initials: _____

VMP MORTGAGE FORMS - (800)521-7291

20

Exh. "B1"

pg.#2

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the County     [Type of Recording Jurisdiction]
of MIAMI-DADE                                                                      [Name of Recording Jurisdiction]
See Legal Description Addendum Page Attached

Parcel ID Number: 3021230221050                              which currently has the address of
15020 SOUTH RIVER DRIVE                                                                    [Street]
MIAMI                                              [City], Florida 33167              [Zip Code]
("Property Address"):

       TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

                                         100176105062733                              0506273320

-6A(FL) (0005).01                       Page 2 of 16                              Form 3010   1/01

Exh. "B1"   pg #3

STATE OF FLORIDA, Broward County ss:
The foregoing instrument was acknowledged before me this June 30, 2005 by
LEROY WILLIAMS, a single man.

who is personally known to me or who has produced Valid ID/L as Identification.

_____
Notary Public

180176105062733

Page 19 of 19

0505273320

Form 3010   1/01

-6A(FL) (0005.02)

pg #4

Exh."B1"

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Security Instrument and in any Rider executed by Borrower and recorded with it.
Signed, sealed and delivered in the presence of:

_Carrelta Robinson_
CArretha Robinson

_Leroy Williams_                          (Seal)
LEROY WILLIAMS                           -Borrower

_Midele Austin-Wilks_
Midele Austin-wilks

6152 NORTH WEST 15 HARBOR
FORT LAUDERDALE, FL 33322
                                          (Address)

_____  (Seal)
                          -Borrower

                                          (Address)

_____  (Seal)            _____  (Seal)
                          -Borrower                                   -Borrower

             (Address)                                  (Address)

_____  (Seal)            _____  (Seal)
                          -Borrower                                   -Borrower

             (Address)                                  (Address)

_____  (Seal)            _____  (Seal)
                          -Borrower                                   -Borrower

             (Address)                                  (Address)

                    100176105062733                    0506273320

                      Page 15 of 16                    Form 3010   1/01

**Exh."B2"**

pg #5

RESPECTFULLY SUBMITTED

*Leroy Williams*
LEROY WILLIAMS

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that a true and correct copy of the foregoing was served by U.S. Mail to Franklin Credit Management Corporation, c/o Corporation Service Company, 1201 Hays Street, Suite 105, Tallahassee, FL 32301-2525, City of North Miami c/o V. Lynn Whitfield, Esq., 776 N.E. 125th Street, N. Miami, FL 33161 and to Mark Wells, 15020 South River Drive, Miami, FL 33167 this 28th day of June, 2010.

*Leroy Williams*
LEROY WILLIAMS

# Exh. [F1]



COLE, SCOTT
&KISSANE, P.A.

PACIFIC NATIONAL BANK BUILDING
1390 BRICKELL AVENUE, THIRD FLOOR
MIAMI, FLORIDA 33131

TELEPHONE (305) 350-5300
FACSIMILE (305) 373-2294

WEBSITE www.csklegal.com
DIRECT LINE (305) 960-8358
EMAIL edward.polk@csklegal.com

Attorneys at Law
MIAMI · WEST PALM BEACH · TAMPA · KEY WEST · FT. LAUDERDALE · NAPLES · JACKSONVILLE · SOUTH MIAMI · ORLANDO

April 4, 2008

**U.S. Mail and Certified Mail**
**Return Receipt Requested**

James Little John
1977 NE 119 Road
Miami, Florida 33181

     RE:  Attorneys' Title Insurance Fund, Inc.
           v. James Buckman, Alexander Morera and Tanna Carter
           Case # 06-14625 CA 05
           Our File No.: 3467-0078-00

Dear Mr. John,

    This firm represents Landmark American Insurance Company ("Landmark"). Landmark is now the owner and holder of the following interests which operate as liens against your property located at 1977 NE 119th Road, North Miami, Florida 33181:

1.    *MORTGAGE DATED SEPTEMBER 30, 2004, BETWEEN ALEXANDER MORERA AND COUNTRYWIDE HOME LOANS, INC. (copy attached)*

2.    *JUDGMENT ON THE PLEADINGS ENTERED AGAINST ALEXANDER MORERA (copy attached)*

    For your convenience, please also find enclosed copies of the Assignment of Judgment, Assignment of Mortgage, and the Mortgage, which operate to transfer the assignment from Attorneys' Title Insurance Fund to Landmark.

    It is important that you contact me to discuss this matter as soon as possible in order to discuss a means of resolving Landmark's claims in this matter. If we are unable to resolve this matter, it may become necessary to file mortgage foreclosure or to execute against the property on the judgment. I can be reached at the address and telephone numbers set forth above, and I look forward to hearing from you at your earliest opportunity.

                            Sincerely,

                            Edward S. Polk

L:\3467-0078-00\L\Little John 001.doc

**Exh. F2**

# ᴿthman & ᵀobin
### ATTORNEYS AT LAW

Michael Rothman
Michael S. Tobin

Ellen Patterson

Reply to Coral Springs

October 4, 2007

The Honorable Judge Jon I. Gordon
Miami-Dade County Courthouse
73 W. Flagler Street
Room 400
Miami, Florida 33130

Re:  *Attorneys' Title Insurance Fund, Inc. v. James Buckman, et. al.*
     **Miami-Dade Circuit Case No.: 06-14625 CA 05**

Dear Judge Gordon:

Enclosed please find a courtesy copy of Defendant's, Flamingo Title Service, Inc., Motion to Dismiss, along with a proposed Agreed Order regarding same. Should Your Honor deem it appropriate, kindly enter the enclosed Order. Copies for conforming, along with pre-addressed and stamped envelopes, are enclosed for your convenience.

Thank you for your consideration of the enclosed. Should Your Honor have any questions or require any additional information, please do not hesitate to contact the undersigned.

Respectfully yours,

ROTHMAN & TOBIN, P.A.

Ellen Patterson, Esq.

Encl.
cc:  all interested parties

**Exh. F3**

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIVIL DIVISION

CASE NO.: 06-14625 CA 05

ATTORNEYS' TITLE INSURANCE FUND,

      Plaintiff,

v.

JAMES BUCKMAN; ALEXANDER MORERA;
and TANNA CARTER,

      Defendants.

_____/

TANNA CARTER,

      Third Party Plaintiff,

v.

FLAMINGO TITLE SERVICES, INC.,

      Third Party Defendant.

_____/

## FLAMINGO TITLE SERVICES, INC.'S MOTION TO DISMISS
## COUNT IV OF THE SECOND AMENDED COMPLAINT

    Defendant, FLAMINGO TITLE SERVICES, INC. ("Flamingo"), by and through undersigned counsel and pursuant to the Florida Rules of Civil Procedure, moves this Court to dismiss Count IV of the Second Amended Complaint, and as grounds therefore states as follows:

    1.   Plaintiff ATTORNEYS' TITLE INSURANCE FUND (the "Fund") is a title insurer, and Defendant Flamingo is an agent of the Fund.

    2.   In Count IV of the Second Amended Complaint (the only Count directed to Flamingo), the Fund purports to assert a claim for breach of contract against Flamingo.

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
100 SOUTHEAST SECOND STREET · SUITE 3800 · MIAMI, FLORIDA 35131
TELEPHONE (305) 374-4400 · FACSIMILE (305) 579-026 1

# Exh. F5

CASE NO.: 06-~~~23 CA 05

3.   At Paragraph No. 47 of the Second Amended Complaint, the Fund alleges that

Flamingo's Agency Application to the Fund constitutes the operative contract between the

parties.

4.   The Fund has failed to attach a copy of the alleged contract to the Second Amended

Complaint.

5.   Accordingly, Flamingo cannot properly evaluate whether or not the alleged actions

complained of by the Fund constitute a breach of the terms of the alleged contract.

6.   Fla. R. Civ. P. 1.130(a) states as follows:

**(a) Instruments Attached.**   All bonds, notes, bills of exchange, *contracts*, accounts, or documents upon which action be brought or defense made, or a copy thereof or a copy of the portions thereof material to the pleadings, shall be incorporated in or attached to the pleadings...

Emphasis added.

7.   The Fund's failure to comply in any way with Fla. R. Civ. P. 1.130(a) has made it

impossible for Flamingo to formulate a meaningful response to the Second Amended Complaint.

WHEREFORE, Flamingo respectfully requests this Court to enter an Order dismissing

Count IV of the Second Amended Complaint and granting such other and further relief as the

Court shall deem just and proper.

-2-

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
100 SOUTHEAST SECOND STREET · SUITE 3800 · MIAMI, FLORIDA 33131
TELEPHONE (305) 374-4400 · FACSIMILE (305) 579-0261

248307.1

**Exh. F6**

CASE NO.: 06-14625 CA 05

Respectfully submitted,

**WILSON, ELSER, MOSKOWITZ,**
**EDELMAN & DICKER LLP**
*Attorneys for Third*
*FLAMINGO TITLE SER*
Bank of America Tower
100 SE Second Street - S ........
Miami, FL 33131
Telephone:    (305) 374-4400
Facsimile:    (305) 579-0261

By: _____
       WILLIAM H. STROP
       Florida Bar No. 052477

### CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that a true and complete copy of the foregoing was furnished via U.S. Mail this _____ day of August 2007, to: **ELLEN PATTERSON ESQ.**, Rothman & Tobin, P.A., *Counsel for Attorneys' Title Insurance Fund*, 12514 West Atlantic Blvd., Coral Springs, FL 33071; **TANA CARTER**, 2070 Reston Circle, Royal Palm Beach, FL 33411; **JAMES BUCKMAN**, 15020 South River Drive, Miami, FL 33167; and **ALEXANDER MORERA**, 410 S.E. 1ˢᵗ St., Hialeah, FL 33010.

By: _____
       WILLIAM H. STROP

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
100 SOUTHEAST SECOND STREET · SUITE 3800 · MIAMI, FLORIDA 33131
TELEPHONE (305) 374-4400 · FACSIMILE (305) 579-0261

# Exh. G

CFN 2005R1193499
OR Bk 23966 Pgs 3443 - 3464; (2pgs)
RECORDED 11/16/2005 16:44:30
DEED DOC TAX 12,000.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

Prepared by and return to:

Flamingo Title Services, Inc.
1236 SE 4th Avenue
Fort Lauderdale, FL 33316
352-374-4588
File Number: 05a-135
Will Call No.:

_____ [Space Above This Line For Recording Data] _____

# Warranty Deed

**This Warranty Deed** made this 20th day of October, 2005 between Morers Alexander, a single man and Tanaa Carter, a single woman and James Buckman, a single man whose post office address is 15030 S. River Drive , Miami, FL 33167, grantor, and Leroy Williams, a single man whose post office address is 1977 NE 119 Road, Miami, FL 33161, grantee:

(Whenever used herein the terms "grantor" and "grantee" include all the parties to this instrument and the heirs, legal representatives, and assigns of individuals, and the successors and assigns of corporations, trusts and trustees)

**Witnesseth**, that said grantor, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable considerations to said grantor in hand paid by said grantee, the receipt whereof is hereby acknowledged, has granted, bargained, and sold to the said grantee, and grantee's heirs and assigns forever, the following described land, situate, lying and being in Miami-Dade County, Florida to-wit:

LOT 183, BLOCK 14, SANS SOUCI ESTATES, according to the Plat thereof as recorded in Plat Book 50, Page 86 of the Public Records of Miami-Dade County, Florida

Parcel Identification Number: 0622280113400

**Together** with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

**To Have and to Hold**, the same in fee simple forever.

**And** the grantor hereby covenants with said grantee that the grantor is lawfully seized of said land in fee simple; that the grantor has good right and lawful authority to sell and convey said land; that the grantor hereby fully warrants the title to said land and will defend the same against the lawful claims of all persons whomsoever; and that said land is free of all encumbrances, except taxes accruing subsequent to December 31, 2004.

**In Witness Whereof**, grantor has hereunto set grantor's hand and seal the day and year first above written.

Signed, sealed and delivered in our presence:

Witness Name: _____

Witness Name: _____

Morers Alexander

Witness Name: _____

Witness Name: _____

Tanaa Carter (Seal)

Witness Name: _____

Witness Name: _____

JAMES BUCKMAN (Seal)

Double Time®

2

# Exh. H1

## AFFIDAVIT

I  James Buckman Jr. was not at the closing that was to have taken place

For the house at 1977 NE 119th rd. Miami, Florida on Oct. 20, 2005.

James Buckman Jr.
1977 NE 119th rd.
Miami, Florida 33181

Dated: _Feb 9. 2008_

(Seal or Stamp)

Signature: _Fannie Mitchell_

Title: _____

My appointment expires: _2011_



**Exh. L**

## AFFIDAVIT

I Maurice Symonette, was there at the closing that that was done on October 20, 2005, for the property at 1977 NE 119th Rd. Miami Fla. 33181 , and Witness that James Buckman, Leroy Williams and Tanner Carter did not attend the closing for Lancaster Bank.

Maurice Symonettee

1977 NE 119th Rd.

Miami, Fla. 33181

March 9, 2016

Fla. Notary

7/28/19



PAGE 1 OF 1

**Exh. S1**

P.O. Box 293150
Lewisville, TX 75029-3150

## BILLING STATEMENT

Statement Date: 03/02/07
Loan Number: 0014596589

 Automated Information Line:
1-800-723-3004

Visit our Web Site:
www.emcmortgageservicing.com

 Pay by Phone:
1-877-472-9362
*Pay by phone at no cost!*

86702-0010386-003

LEROY WILLIAMS
1977 NE 119TH RD
NORTH MIAMI FL 33181-3319

☐ Check here if your address or phone numbers have changed and complete the form on the reverse side

PROPERTY ADDRESS:   1977 NE 119TH RD
MIAMI FL 33181

## ACCOUNT INFORMATION

| | |
|---|---|
| Loan Number | 0014596589 |
| Interest Rate | 10.1250% |
| Current Principal Balance* | 397,632.88 |
| Current Escrow Balance | 0.00 |
| Year-to-Date: Principal Paid | -713.94 |
| Year-to-Date: Interest Paid | -4,068.97 |
| Year-to-Date: Taxes Paid | 0.00 |
| Year-to-Date: Hazard Insurance Paid | 0.00 |
| Late Charge Fee (per month) | 177.36 |

*This is your Principal Balance only, not the amount required to pay your loan in full.

## PAYMENT SUMMARY

| | |
|---|---|
| Payment Due Date | 01/01/07 |
| Principal & Interest | $3,547.29 |
| Escrow Payment | 0.00 |
| Total Past Due | 10,641.87 |
| Late Charge | 354.72 |
| Returned Check Fee | 75.00 |
| Speedpay Fee | 19.90 |
| Total Amount Due | 14,638.78 |

## IMPORTANT MESSAGES

EMC is writing regarding the collection of your loan, and any information obtained will be used for that purpose.

## ACCOUNT ACTIVITY

| TRANSACTION DESCRIPTION | DUE DATE | TRAN DATE | TOTAL RECEIVED | PRINCIPAL | INTEREST | ESCROW | OPTIONAL PRODUCTS | OTHER | SUSPENSE |
|---|---|---|---|---|---|---|---|---|---|
| Returned Check | 03/07 | 03/02 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -9.95 | 0.00 |
| Returned Check | 02/07 | 03/02 | 0.00 | -193.88 | -3,353.41 | 0.00 | 0.00 | 0.00 | 0.00 |
| Returned Check | 01/07 | 03/02 | 0.00 | -192.26 | -3,355.03 | 0.00 | 0.00 | 0.00 | 0.00 |
| Speedpay Fee | | 03/02 | 9.95 | 0.00 | 0.00 | 0.00 | 0.00 | 9.95 | 0.00 |
| Returned Check Fee | | 03/02 | 25.00 | 0.00 | 0.00 | 0.00 | 0.00 | 25.00 | 0.00 |



**imb indymac** Bank

**Exh. S2**

**Property Address:** 1977 NE 119TH RD,
NORTH MIAMI, FL 33181

#BNNDECT          015016 RE
#5682195851003020#

LERDY WILLIAMS
1977 NE 119TH RD
MIAMI  FL  33181-3318

| Account Information as of | 02/26/07 |
|---|---|
| Loan Number | 3001585912 |
| Interest Rate | 8.250% |
| Loan Balance | $1,484,924.50 |
| Escrow Balance | $8,792.21 |
| Unapplied Funds | $4,613.19 |
| Funds Advanced by IMB (1,2) | $.00 |
| Principal Paid YTD | $2,098.63 |
| Interest Paid YTD | $20,439.37 |
| Property Taxes Paid YTD | $.00 |
| Hazard Insurance Paid YTD | $4,293.75 |
| | |
| Primary Phone Number | (305) 895 3505 |
| Secondary Phone Number | (305) 654 0888 |

For statement questions,
please call Customer Service at
1.800.781.7399.

**Payment Information**

| | |
|---|---|
| | $11,269.00 |
| | $3,169.17 |
| | $.00 |
| | $.00 |
| | $14,438.17 |
| | $.00 |
| | $14,438.17 |
| | $563.45 |
| | $40.00 |
| | $15.00 |
| | $.00 |
| | $15,056.62 |
| | $16,620.07 |

**Payment Due:**
**03/01/07**

**Additional Information**

1 Unless otherwise agreed upon, additional funds may be applied to advance prior to being applied to fees/charges.

2 Itemized detail available upon request.

3 Payment calculation includes Late Charge fee.

| Date | Transaction | Total | Principal/Deferred Interest | Interest | Escrow | Fees/Misc. |
|---|---|---|---|---|---|---|
| 07/26/07 | Funds Applied | 14,438.17 | 1,052.91 | 10,216.09 | 3,169.17 | |
| 07/26/07 | Funds Applied | 14,453.17 | 1,045.72 | 10,223.28 | 3,169.17 | 15.00 |

**Important Messages**

**TAX SEASON IS JUST AROUND THE CORNER – ARE YOU PREPARED?**
If you already know you're getting a refund, you don't have anything to worry about. But for many of us, tax season means that we'll owe money, and not a small amount either. Know your options. An Indymac Bank Home Equity Line is the perfect solution to cover a variety of expenses including income tax. It's easy to open with no application fees or bank related closing costs. Use only what you need, when you need it, and the interest you pay may be up to 100% tax deductible (You may wish to consult with your financial advisor to see how this loan may benefit you). Call us toll free at 1.877.307.0178 to find out more.

**AS AN INDYMAC CUSTOMER, YOU GET EXTRA SAVINGS.**
For a limited time, we are offering you $500 off our already low closing costs when you originate a new first mortgage through Indymac Bank Home Loan Servicing (offer does not apply to home equity loans, Mod Xpress or Indymac Xpress). To get started, just call us today at 1.866.217.2834.

**ACCESS YOUR 2006 YEAR-END INTEREST STATEMENT ONLINE!**
Did you know that by registering your mortgage loan online, not only can you have convenient, 24/7 access to your mortgage information, but to your 2006 Year-End Interest Statement as well? Read the back of this statement to find out more.





PAGE 1 OF 3

**EMC**
Mortgage Corporation

P.O. Box 141358
Irving, TX 75014-1358

**Exh. S3**

## BILLING STATEMENT

Statement Date:          11/29/06
Loan Number:          0014596589

Automated Information Line:
1-800-723-3004

Visit our Web Site:
www.emcmortgageservicing.com

65526-0000041-001

LEROY WILLIAMS
1977 NE 119TH RD
NORTH MIAMI FL 33181-3319

☐ Check here if your address or phone numbers have changed and complete
the form on the reverse side.

PROPERTY ADDRESS:   1977 NE 119TH RD
MIAMI FL 33181

### ACCOUNT INFORMATION

| | |
|---|---|
| Loan Number | 0014596589 |
| Interest Rate | 10.1250% |
| Current Principal Balance* | 397,823.53 |
| Current Escrow Balance | |
| Year-to-Date: Principal Paid | 0.00 |
| Year-to-Date: Interest Paid | 1,830.44 |
| Year-to-Date: Taxes Paid | 33,652.41 |
| Year-to-Date: Hazard Insurance Paid | 0.00 |
| Late Charge Fee (per month) | 177.36 |

*This is your Principal Balance only, not the amount required to pay your loan in full.

### PAYMENT SUMMARY

| | |
|---|---|
| Payment Due Date | 12/01/0 |
| Principal & Interest | $3,547.2 |
| Escrow Payment | |
| Late Charge | 0.0 |
| Speedpay Fee | 354.7 |
| Total Amount Due | 9.9 |
| | 3,911.9 |

### IMPORTANT MESSAGES

Beginning 11/07/2006 make your payment through our automated phone system or online, at no cost! Call 1-800-723-3004 or visit www.speedpay.com. Standard fees apply for payments made with the assistance of a Customer Service Representative.

Your mortgage payment for the current month has not been received. A late charge has been assessed. Please remit the total amount due to reinstate your account. If you cannot remit the total amount due, please contact our office at 1-800-436-7397.

We have reviewed the items included in the total amount of advances made by your previous servicer that carried over when your loan transferred to EMC. For your convience, we have initialized these amounts as shown in the Account Activity.

**IMPORTANT YEAR-END INFORMATION**

In order for us to report your deductible mortgage interest paid in 2006, the Internal Revenue Service (IRS) requires that you furnish your Social Security Number(s) to us. Failure to provide this information may result in a $50 penalty assessed by the IRS. Please take a moment to update the W9 Certification form on the back of your monthly mortgage statement and return it with your mortgage payment. Or, contact our Customer Service Department at 1-800-723-3004.

Your monthly billing statement is new and improved, giving you more information about your account.

**BEAR STEARNS** RESIDENTIAL MORTGAGE

ANNOUNCING: Bear Stearns Residential Mortgage Corporation, an affiliate of EMC, now offers mortgage refinancing. Call 1-800-658-BEAR today!

### ACCOUNT ACTIVITY

| TRANSACTION DESCRIPTION | DUE DATE | TRAN DATE | TOTAL RECEIVED | PRINCIPAL | INTEREST | ESCROW | OPTIONAL PRODUCTS | OTHER | SUSPENSE |
|---|---|---|---|---|---|---|---|---|---|
| Late Charge | | 11/14 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 177.36 | 0.00 |
| Late Charge | | 11/16 | 177.36 | 0.00 | 0.00 | 0.00 | 0.00 | 177.36 | 0.00 |
| Payment | 11/08 | 11/29 | 3,547.29 | 189.06 | 1,358.23 | 0.00 | 0.00 | 0.00 | 0.00 |

(Continued on the following page)

16478--0
N

**Exh. K1**

IndyMac Bank
6900 Beatrice Drive
PO BOX 4045
Kalamazoo Michigan  49003-4045



**IndyMac Bank.**
Home Loan Servicing

LEROY WILLIAMS
1977 NE 119TH RD
NORTH MIAMI FL 33161-3319

Speedpay Date: 06/19/07

RE: Account Number: 3001585912

Dear Leroy Williams,

This letter is to confirm the transaction that you authorized by phone to make payment to IndyMac Bank.

Details regarding the transaction appear below:

Payment Amount:              $15,720.66
Transaction fee:             $15.00
Total Transaction Amount:    $15,735.66

ACH Date:                    06/19/07
ACH Draw On:                 Washington Mutual Bank
Last Four Digits of
Checking/Savings Account:    9156
Confirmation Number:         0002091863

The ACH draft to make this payment will draw funds from your checking account.  Please retain this letter for your records.

If you have any questions, please contact us at 1-800-781-7399 or send an e-mail to servicing@indymacbank.com.

Sincerely,

Home Loan Servicing

08929-2
N

**Exh. K2**

IndyMac Bank
6900 Beatrice Drive
PO BOX 4045
Kalamazoo Michigan 49003-4045



**IndyMac Bank.**
Home Loan Servicing

LEROY WILLIAMS
1977 NE 119TH RD
NORTH MIAMI FL 33181-3319

Speedpay Date: 09/29/07

RE: Account Number: 3001585912

Dear Leroy Williams,

This letter is to confirm the transaction that you authorized by phone to make payment to IndyMac Bank.

Details regarding the transaction appear below:

| | |
|---|---|
| Payment Amount: | $43,314.51 |
| Transaction fee: | $15.00 |
| Total Transaction Amount: | $43,329.51 |
| | |
| ACH Date: | 09/29/07 |
| ACH Draw On: | Suntrust Bank |
| Last Four Digits of Checking/Savings Account: | 7107 |
| Confirmation Number: | 0002396518 |

The ACH draft to make this payment will draw funds from your checking account. Please retain this letter for your records.

If you have any questions, please contact us at 1-800-781-7399 or send an e-mail to servicing@indymacbank.com.

Sincerely,

Home Loan Servicing

15348-6
N

**Exh. K3**

IndyMac Bank
8900 Beatrice Drive
PO BOX 4045
Kalamazoo Michigan 49003-4045

**IndyMac Bank.**
Home Loan Servicing

LEROY WILLIAMS
1977 NE 119TH RD
NORTH MIAMI FL 33181-3319

Speedpay Date: 08/09/07

RE: Account Number: 3001585912

Dear Leroy Williams,

This letter is to confirm the transaction that you authorized by phone to make payment to IndyMac Bank.

Details regarding the transaction appear below:

| | |
|---|---|
| Payment Amount: | $14,438.17 |
| Transaction fee: | $15.00 |
| Total Transaction Amount: | $14,453.17 |
| | |
| ACH Date: | 08/09/07 |
| ACH Draw On: | Wachovia Bank, Na |
| Last Four Digits of Checking/Savings Account: | 2850 |
| Confirmation Number: | 0002331941 |

The ACH draft to make this payment will draw funds from your checking account. Please retain this letter for your records.

If you have any questions, please contact us at 1-800-781-7399 or send an e-mail to servicing@indymacbank.com.

Sincerely,

Home Loan Servicing

15348-6
N

**Exh. K3**

IndyMac Bank
8900 Beatrice Drive
PO BOX 4045
Kalamazoo Michigan 49003-4045

# IndyMac Bank.
Home Loan Servicing

LEROY WILLIAMS
1977 NE 119TH RD
NORTH MIAMI FL 33181-3319

Speedpay Date: 08/09/07

RE: Account Number: 3001585912

Dear Leroy Williams:

This letter is to confirm the transaction that you authorized by phone to make payment to IndyMac Bank.

Details regarding the transaction appear below:

Payment Amount:                $14,438.17
Transaction fee:               $15.00
Total Transaction Amount:      $14,453.17

ACH Date:                      08/09/07
ACH Draw On:                   Wachovia Bank, Na
Last Four Digits of
Checking/Savings Account:      2850
Confirmation Number:           0002331941

The ACH draft to make this payment will draw funds from your checking account.  Please retain this letter for your records.

If you have any questions, please contact us at 1-800-781-7399 or send an e-mail to servicing@indymacbank.com.

Sincerely,

Home Loan Servicing

26764—1
N

# Exh. K4

IndyMac Bank
5900 Beatrice Drive
PO BOX 4045
Kalamazoo Michigan 49003-4045



**IndyMac Bank.**
Home Loan Servicing

LEROY WILLIAMS
1977 NE 119TH RD
NORTH MIAMI FL 33181-3319

Speedpay Date: 07/29/07

RE: Account Number: 3001585912

Dear Leroy Williams,

This letter is to confirm the transaction that you authorized by phone to make payment to IndyMac Bank.

Details regarding the transaction appear below:

Payment Amount:                     $15,818.09
Transaction fee:                    $15.00
Total Transaction Amount:           $15,833.09

ACH Date:                           07/29/07
ACH Draw On:                        First Tennessee Bank, Na
Last Four Digits of
Checking/Savings Account:           7330
Confirmation Number:                0002286192

The ACH draft to make this payment will draw funds from your checking account. Please retain this letter for your records.

If you have any questions, please contact us at 1-800-781-7399 or send an e-mail to servicing@indymacbank.com.

Sincerely,

Home Loan Servicing

26764—1
N

IndyMac Bank
5900 Beatrice Drive
PO BOX 4045
Kalamazoo Michigan 49003-4045





IndyMac Bank.
Home Loan Servicing

LEROY WILLIAMS
1977 NE 119TH RD
NORTH MIAMI FL 33181-3319

Speedpay Date: 07/29/07

RE: Account Number: 3001585912

Dear Leroy Williams,

This letter is to confirm the transaction that you authorized by phone to make payment to IndyMac Bank.

Details regarding the transaction appear below:

| | |
|---|---|
| Payment Amount: | $15,818.09 |
| Transaction fee: | $15.00 |
| Total Transaction Amount: | $15,833.09 |

| | |
|---|---|
| ACH Date: | 07/29/07 |
| ACH Draw On: | First Tennessee Bank, Na |
| Last Four Digits of Checking/Savings Account: | 7330 |
| Confirmation Number: | 0002288192 |

The ACH draft to make this payment will draw funds from your checking account. Please retain this letter for your records.

If you have any questions, please contact us at 1-800-781-7399 or send an e-mail to servicing@indymacbank.com.

Sincerely,

Home Loan Servicing



EXHIBIT [ ] (1)
IndymacBank

**Exh. K5**

February 10, 2007

Leroy Williams
1977 NW 115th Rd
Miami FL 33181

SUBJECT: Credit Reporting Dispute for Loan Number 3001585912

Dear Leroy Williams :

After reviewing your account history, I understand the events surrounding the late reporting of the December 1, 2006 payment.

A correction has been submitted to the credit bureaus in order to remove the 30 day late payment reported to the credit bureaus on January 5, 2007 for the December 1, 2006 payment.

Please allow 15 to 30 business days for each credit reporting agency to update your credit report with this information. Please retain a copy of this letter for your records.

If you have questions or would like more information about your loan, please visit our website at www.indymacbank.com. By clicking on Log In To My Mortgage, you will be directed to My Mortgage Login where you can register your account, view loan information and contact us via Secure Messaging.

Sincerely,

*Lena Anderson*

Lena Anderson
Correspondence/Research Dept.

R9078 012
011



**MIAMI-DADE COUNTY CLERK OF THE COURTS**
HARVEY RUVIN



Contact Us     My Account

# CIVIL, FAMILY AND PROBATE COURTS ONLINE SYSTEM

◀◀ BACK

**DEUTSCHE BANK NATL TR CO (TR) VS JOHN, JAMES LITTLE**

| | | | |
|---|---|---|---|
| **Local Case Number:** | 2007-018226-CA-01 | **Filing Date:** | 06/18/2007 |
| **State Case Number:** | 132007CA018226000001 | **Judicial Section:** | CA02 |
| **Consolidated Case No.:** | N/A | **Case Type:** | z DO NOT USE - Legacy Mortgage Foreclosure |
| **Case Status:** | CLOSED | | |

👥 **Parties**                                                                 Total Of Parties: 14  ➕

🔧 **Hearing Details**                                                         Total Of Hearings: 10  ➕

📶 **Dockets**                                                                 Total Of Dockets: 317  ➖

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| 📄 | 115 | 06/05/2020 | | Motion: | Event | AND AFFIDAVIT FOR RELIEF, RECUSAL, VACATION OF ORDERS AND MEMORANDUM OF LAW |
| 📄 | 114 | 03/06/2020 | | Notice of Intent | Event | |
| 📄 | 113 | 02/29/2020 | | Notice of Intent | Event | TO SUE. |
| 📄 | 112 | 02/28/2020 | | Notice: | Event | TO MIAMI COUNTY JUDGE MIGUEL DE LA O OF INTENT TO SUE AND TO GIVE 30 DAY NOTICE. |
| 📄 | 111 | 10/25/2019 | | Certificate of Indigency / Insolvency | Event | Parties: Buckman James Jr |
| 📄 | 110 | 10/25/2019 | | Affidavit of Indigency | Event | (APPROVED) |
| 📄 | 109 | 10/25/2019 | 31672:653 | Notice of Appeal Non-Final Order | Event | FILED BY: JAMES BUCKMAN & MAURICE SYMONETTE |
| | 107 | 10/11/2019 | | Receipt: | Event | RECEIPT#:2750005 AMT PAID:$120.00 COMMENT: ALLOCATION CODE QUANTITY UNIT AMOUNT 3120-COPY 90 $1.00 $90.00 3121-CERTIFIED 15 $2.00 $30.00 TENDER TYPE:CASH TENDER AMT:$200.00 TENDER TYPE:CHANGE TENDER AMT |
| 📄 | 106 | 06/28/2019 | 31511:2209 | Mandate From Appeals Court | Event | (AFFIRMED) (3D19-0761) |
| 📄 | 105 | 06/26/2019 | | Text | Event | APPEALS LETTER |

**Exh.O**

OCS Search

#2017

| Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|
| | 03/24/2008 | | Motion: | Event | FOR LEAVE TO AMEND COMPLAINT |
| ⚫ | 11/28/2007 | | Proof of Publication | Event | PUB DATE : |
| | 11/09/2007 | | Notice of Action - Publication | Event | PUB DATE :12/17/2007 COPY OF NOTICE AND COMP MAILED 3 Parties: John James Little; Williams Leroy; Wilcoxson Cynthia L |
| | 11/09/2007 | | Affidavit of Diligent Search | Event | |
| | 11/09/2007 | | Affidavit of Diligent Search | Event | NO SERVICE |
| | 11/09/2007 | | Text | Event | INSTRUCTIONS TO CLERK OF COURT |
| | 09/18/2007 | | Affidavit of: | Event | W/OUT SUMMONS RTD. NOT SERVED ON JAMES LITTLE |
| | 09/19/2007 | | Affidavit of Lost Instrument | Event | |
| | 09/18/2007 | | Affidavit of: | Event | W/OUT SUMMONS RTD. SERVE DON UNK SPOUSE JAMES LITTLE JOH |
| | 09/19/2007 | | Affidavit of Lost Instrument | Event | |
| | 09/18/2007 | | Affidavit of: | Event | W/OUT SUMMONS RTD. NOT SERVED ON CYNTHIA WILCOXSON |
| | 09/18/2007 | | Affidavit of Lost Instrument | Event | |
| | 09/18/2007 | | Affidavit of: | Event | W/OUT SUMMONS NOT SERVE DON LEROY WILLIAMS |
| | 09/19/2007 | | Affidavit of Lost Instrument | Event | |
| | 09/28/2007 | | Service Returned | Event | BADGE # 866296 P 08/21/2007 Parties: Capital One Bank |
| | 09/28/2007 | | Service Returned | Event | BADGE # 118 P 08/20/2007 Parties: State Of Fle (dor) |
| | 08/28/2007 | | Text | Event | SUMMONS RTD NON-SERVED TENANT #2 |
| | 08/28/2007 | | Text | Event | SUMMON RTD NON-SERVED TENANT #1 |
| | 08/24/2007 | | Service Returned | Event | BADGE # 55555 S 08/20/2007 Parties: Attorneys Title Ins Fund Inc |
| | 08/24/2007 | | Service Returned | Event | BADGE # 55555 S 08/21/2007 Parties: Wells Mech |
| | 08/24/2007 | | Service Returned | Event | BADGE # 55555 S 08/18/2007 Parties: City Of No Mia |
| | 08/24/2007 | | Service Returned | Event | BADGE # 55555 S 08/21/2007 Parties: First Commercial Corp |
| | 08/24/2007 | | Service Returned | Event | BADGE # 498 S 08/21/2007 Parties: Lancaster Mort Bankers (llc) |
| ⚫ | 07/11/2007 | | Answer | Event | ATTORNEY:00314621 Parties: City Of No Mia |
| ⚫ | 07/06/2007 | | Answer and Affirmative Defense | Event | ATTORNEY:00526012 Parties: Attorneys Title Ins Fund Inc |
| | 06/29/2007 | | Notice of Appearance | Event | ATTORNEY:00526012 Parties: Attorneys Title Ins Fund Inc |
| | 06/29/2007 | | Notice of Service of Process | Event | W/OO SUMMONS,ATTORNEYS TITLE INS FUND,INC,SERV 6/22/07 |

Exhibit [P1]

IN THE CIRCUIT COURT OF THE ELEVENTH
JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CIVIL DIVISION

Deutsche (Bank NAT R CO (TR)

Plaintiff                                    #2007-18226-CA div.2

vs.

James Littlejohn et al,

Defendants.

FILED
JAN 26 '11
CLERK, CIRCUIT & COUNTY COURTS
ANGELA MOORER

## OPPOSITION TO PLAINTIFFS MORTGAGE FORECLOSURE COMPLAINT, AND PLEA OF NUL TIEL RECORD

Comes now,   James Littlejohn   I hereby deny the existence of Plaintiff's ownership of the subject Promissory Note or any such record of alleged ownership by the Plaintiff. Under Florida Unfair Trade and Deceptive Practices Act, the Florida Credit Disclosure Act, Fraudulent Concealment, and under the common law of fraud and negligence. My sale and credit documents, including credit applications, promissory notes, and certificates of insurance, were altered, falsified and forged. The forgeries are part of a scheme by the plaintiff and their attorney

to shield the true nature of the transaction; source of funding, illegal use of the Promissory Note and Mortgage", and the improper and misleading reporting of the ownership status of the alleged Promissory Note and Mortgage.

The true construction of that part of the constitution and laws of the United States will confine their operation to evidence only, and will not justify such an alteration in the rules of pleading. The 'effect' to be given to such copies is their 'effect' as evidence, for it [11 U.S. 481, 482] is not pretended that an execution could issue here upon such a record. [T]he record as alleged in this case is not the original, it is not certified or authenticated as a copy; and therefore it can not be offered to the Court upon the plea of Nul Tiel Record, for under that issue this record can not be admitted. The original must be produced and inspected. In every case

of debt or contract the form and effect of the plea are determined by the dignity of that debt or contract; in other words by the dignity of the evidence, whether it be of record, by specialty, or simple contract."
**MILLS v. DURYEE, 11 U.S. 481 (1813)**

"**NUL TIEL RECORD,** pleading. No such record- 2.When a party claims to recover on the evidence of a record, as in an action on scire facias, or when he sets up his defence on matter of record, as a former acquittal or former recovery, the opposite party may plead or, reply nul tiel record, there is no such record; in which case the issue thus raised is called an issue of nul tiel record, and it is tried by the court by the inspec- tion, of the record. Vide 1 Saund. 92, n. 3 12Vin. Ab.188; 1 Phil. Ev. 307,8; Com. Dig. Bail, R. 8 - Certiorari, A l Pleader, 2 W 13, 38 - Record, C; 2 McLean, 511; 7 Port. 110; 1 Spencer, 114. Bouviers Law Dictionary 1856 Edition "

"**NUL TIEL RECORD.** No such record. A plea denying the existence of any such record as that alleged by the plaintiff. It is the general plea in an action of debt on a judgment, *Hoffheimer v. Stiefel,* 17 Misc. 236, 39 N.Y.S. 714; *Watters v. Freeman Bros.,* 16 Ga.App. 595, 85 S.E. 931. Judgment of nul tiel record occurs when some pleading denies the existence of a record and issue is joined thereon; the record being produced is compared by the court with the statement in the pleading which alleges it; and if they correspond, the party asserting its existence obtains judgment; if they do not correspond, the other party obtains judgment of nul tiel record (no such record)." *Black's Law Dict. 4th ed.*

## MEMORANDUMS OF LAW

## MEMORANDUM OF LAW IN SUPPORT OF THE POINT OF LAW THAT PARTY ALLEGING TO BE PLAINTIFF AND CREDITOR MUST PROVE STANDING

## PLAINTIFF BANK HAS NO STANDING TO MAINTAIN THIS ACTION WITHOUT APPEARING AND PRESENTING THE ORIGINAL NOTE TO PROVE STANDING UNDER PLEA OF NULTIEL RECORD

1.   I/we, *James Littlejohn* will observe that existing rules of court and law in Florida  requires that the Plaintiff Bank in a collection action demonstrate standing to collect by establishing the fact of their beneficial interest in the Promissory Note. In example, in Kane Plaza Associates and Northwestern Mutual

Life Insurance Co. v. Chadwick, 486 S.E.2d 465, 126 N.C.App. 661 (N.C.App. 07/01/1997), (See attached "Exhibit "A" a true copy of Kane Plaza, etc.) the North Carolina court of appeals held for Chadwick against collection of a note improperly asserted by the Plaintiff. In pertinent part the court held that:

> "In its first cause of action, Kane Plaza has sought payment of a promissory note. In order to recover on such an instrument, the party seeking relief must show execution, delivery, consideration, demand, and nonpayment. Sam Stockton Grading Co. v. Hall, 111 N.C. App. 630, 632, 433 S.E.2d 7, 8 (1993). **Likewise, that party** [*ie: party seeking enforcement*] **must be a real party in interest, i.e., it must assert legal rights that will be determined by the litigation.** See N.C.G.S. § 1-57 (1996); N.C.R. Civ. P. 17(a) (1990); Parnell v. Insurance Co., 263 N.C. 445, 448-49, 139 S.E.2d 723, 725 (1965)." See: Kane Plaza, supra, at paragraph 28, etc. **[boldface and underlined emphasis added to original text]**

2.   As in Kane Plaza, the Plaintiff in this case seeking enforcement has utterly failed to assert its standing to collect on this alleged note by production of the said note as evidence of its *bona fide* and *standing as a real party in interest* and *holder* of a beneficial interest in the subject note.

3.   As was further made explicit in Kane, supra,

> [t]he note was made payable to "J. M. Kane & Co. or order," and thus constituted an order note, N.C.G.S. § 25-3-110 (1986), which may be negotiated by delivery only upon indorsement on the instrument or a firmly attached writing, N.C.G.S. § 25-3-202 (1986). **Absent the requisite indorsement, no presumption exists that the holder, even if a transferee, qualifies as owner of the note.** G.S. § 25-3-201(3) and Official Comment 8 (1986). See: Kane Plaza, supra, at paragraph 31. **[boldface and underlined emphasis added to original text]**

4.   Again, as in **Kane Plaza**, supra, the problem here is that the Plaintiff has repeatedly ignored my attempts to establish that Plaintiff Bank is the bona fide holder in due course, the real party in interest, and/or the true, correct and lawful holder of beneficial interest in the subject note sufficient to maintain an action in collection. And, as was stated above, the reason believed for Plaintiff's failure is simply because Plaintiff Bank does not possess the Note for the following simple reason that Plaintiff bank does not have an ownership or beneficial interest in the

Note.

5.    In short, the Plaintiff Bank has failed utterly to demonstrate standing in the manner required by existing Florida law.

6.    Many cases support my argument that Plaintiff Bank in this case has no standing to maintain a collection action on a Note not before the court. For example, and citing the above discussed Kane Plaza case, in <u>Walker v. Sloan</u>, 137 N.C.App. 387, 529 S.E.2d 236 (N.C.App. 04/18/2000) the North Carolina appellant court said in pertinent part...

> "[a] **motion to dismiss a complaint pursuant to Rule 12(b)(6)** for failure to state a claim upon which relief may be granted challenges the legal sufficiency of the pleading. <u>Kane Plaza Associates v. Chadwick</u>, 126 N.C. App. 661, 486 S.E.2d 465 (1997). Dismissal is warranted "(1) when the face of the complaint reveals that no law supports plaintiff[s'] claim; (2) when the face of the complaint reveals that some fact essential to plaintiff[s'] claim is missing; or (3) when some fact disclosed in the complaint defeats plaintiff[s'] claim." <u>Peterkin v. Columbus County Bd. Of Educ.</u>, 126 N.C. App. 826, 828, 486 S.E.2d 733, 735 (1997) (emphasis omitted). In ruling on a Rule 12(b)(6) motion to dismiss, the trial court regards all factual allegations of the complaint as true. <u>Kane Plaza</u>, 126 N.C. App. At 664, 486 S.E.2d at 467.

7.    Further, in <u>Barclays Bank PLC v. Johnson</u>, 499 S.E.2d 768 (N.C.App. 04/30/1998), the North Carolina court of appeals stated in pertinent part, again citing <u>Kane Plaza</u> as follows:

> "[t]o recover on a promissory note, the party seeking relief must show execution, delivery, consideration, demand, and nonpayment. Sam Stockton Grading Co. v. Hall, 111 N.C. App. 630, 632, 433 S.E.2d 7, 8 (1993). Moreover, the **party seeking to enforce the promissory note "must be a real party in interest."** <u>Kane Plaza Associates v. Chadwick</u>, 126 N.C. App. 661, 664, 486 S.E.2d 465, 467 (1997); N.C. Gen. Stat. § 1-57; N.C. R. Civ. P. 17(a)." See: **Barclays Bank**, supra. [**boldface and underlined emphasis added to original text**]

6 of 16

8.    And in, <u>Musselwhite v. McNeill</u>, 154 N.C.App. 742, 572 S.E.2d 874 (N.C.App. 12/17/2002, the North Carolina court of appeals held, uniformly with <u>Kane Plaza</u> and <u>Walker</u>, and <u>Barklays Bank</u>, supra,  that "...the party seeking to enforce the

promissory note 'must be a real party in interest'." Citing from <u>Kane Plaza</u>. Supra.

9.   I/we,  *James Littlejohn*   will further Note that like in the Florida MERS cases, each of the above cited cases from North Carolina Courts of Appeal have each apparently relied upon the underlying expressly stated section of the ***Uniform Commercial Code*** respecting negotiable instruments as codified in North Carolina at N.C. Gen. Stat. § 25-3-109 (1986). Since, it is the ***"Uniformity"*** of the fundamental law upon which the North Carolina Appellate Court have relied, I am comfortable in citing for its supporting and persuading rational the Pinellas County Florida Circuit Court case of: <u>In re MERS</u> (ie: <u>IN RE MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.</u> (MERS), (See attached list of Defendants/Case#), which was rendered out of the Circuit Court of Judge Walt Logan on 18 August 2005. (See "**Exhibit "B"**" already filed into this case and attached to Defendant's Motion To Dismiss, a true copy of the opinion rendered and entered by Judge Walt Logan in the Pinellas County Florida Circuit Court case styled <u>In Re MERS</u>) That consolidated case of some twenty (20) separate cases in which MERS was the moving party in a foreclosure action, the court, on its own motion, initiated a show cause hearing, again on its own motion, to dismiss and held extensive hearings accordingly which in the end found disposition of all twenty (20) cases by dismissal with prejudice for want of MERS standing to proceed in a collection action by foreclosure. See: <u>In Re MERS</u>, supra. As stated in the MERS case in the Pinellas County Florida Circuit Court of Judge Walt Logan:

> "[b]ased upon information gained at the return hearing, it appears that the real party in interest in many of these cases is not known at the time Complaint for Mortgage Foreclosure is filed. The concept is foreign to this court. Careful review of the argument presented by attorney Brochin does not convince the Court that MERS is a real party in interest in any sense."

10.   The court went on to conclude that

> "Based upon the above analysis, the Court finds it appropriate to dismiss with prejudice as to MERS the complaints as not having been filed by the proper party and therefore the Complaints do not state a cause of action and are dismissed. Morales and Dollar Systems, Inc. supra."

11.   I/we  *James Littlejohn*   are also comfortable in citing for its

supporting and persuading rational the Miami-Dade County, Florida Circuit Court Case of <u>MERS</u> ie. <u>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., vs ENZO CABRERA, ET AL.,</u> (see attached list of defendants case #s) also (see true and correct copy of transcript of that proceeding) which was rendered out of the Circuit Court of Miami-Dade County Florida by Judge Jon I. Gordon on the 28th day of September 2005.(**See Exhibit "C"** attached hereto and made a permanent part of the record in the present case. In these consolidated cases Judge Gordon's Order on page 9 under **SHAM PLEADINGS** states:

> "Now we address the more troubling question of whether MERS has committed fraud upon the Court by knowingly filing pleadings which contain allegations which are clearly false, as a mere pretense set up in bad faith and without color of fact. ""A plea is considered 'sham' when it is palpably or inherently false, and from the plain or conceded facts in the case, must have been known to the party interposing it to be untrue."" <u>See Rhea v. Halkney</u>, 157 So. 190, 193 (Fla.1934).

Further Judge Gordon went on to say in MERS vs. Cabrera Supra:

> "[T] he Court has the inherent authority to present evidence or to call witnesses in the interest of justice and in the ascertainment of the truth. <u>See Ritter v. Jimenez</u>, 343 So. 2d 659 (3d D.C. A. Fla. 1977)."

On page 12 of Judge Gordon's Order Supra, he states:

> "[T]he problem for MERS is obvious; **it is not the "owner", ought not to have ever plead it and cannot prove it.**" MERS v. Cabrera Supra.    **Emphasis Added**

Also on page 15 Supra, Judge Gordon states:

> "The evidence is clear and convincing the MERS's allegations that it "owned" "held" and "possessed" the Mortgage Notes in questions are clearly, palpably and inherently false based upon the plain and conceded facts in this case. The evidence is likewise clear and convincing that MERS at all time prior to making these allegations acted in bad faith knowing them to be false and indeed, it was forewarned of the potential consequences for making such false allegations. The falsity of the allegations is readily apparent from a cursory review of their own documents readily available on their official web site and incorpated by reference into the Amended Complaint in Case # 05-11570. MERS created a world of electronic

transactions which does not readily integrate into existing Florida law and procedure: **it chose to fabricate the facts and to create a charade to give it appearance of proceeding lawfully**————in short, the ends justified the means." <u>MERS v. Cabrera Supra</u>.  **Emphasis added**

Further in Judge Gordon's order beginning on page page 16 and continues on page 17 in # 4:

"[i]t is ORDER and ADJUDGED as follows: [T]hat the above consolidated actions are hereby dismissed **as a sham and/or a frivolous pleading** without prejudice..." <u>MERS v. Cabrera Supra</u>.  **Emphasis added**

## DECLARATION

As soon as possible an order shall be prepared and submitted to the court for ratification, unless prior to that time, Deutsche Bank, presents a competent fact witness to produce the Original Promissory Note to prove they are the real party in interest and rebut all other facts presented in this pleading making their statements **Under penalty of perjury**, supporting all the rebutted articles with evidence which would be admissible at trial and prove that their filings are not a "SHAM". Without the proper parties before the court, this honorable court lacks jurisdiction to Proceed and this case should be dismissed with prejudice if Plaintiff fails to appear and produce the Promissory Note in Question under plea of nul tiel record.

**WHEREFORE PREMISES CONSIDERED,** I, James Littlejohn requests that this court grant the following relief:

a) As soon as possible, a hearing should be ordered to examine the Promissory Note in question in this case unless prior to that time, dismiss this case with prejudice,

b) That the court find counsel for Plaintiffs and Plaintiffs guilty of fraud upon the court and at a minimum sanction them for having filed palpably or inherently false pleas into this case they must have known to be untrue,

c) That this court grant dismissal of this case with prejudice as to the Plaintiff re-filing in this case, and

d) That this court grant to James Littlejohn any and all other relief to which is just in law and/or in equity, and

e) demand Justice.

Respectfully Prepared and Submitted

by James Littlejohn

James Littlejohn
1977 N.E. 119th Rd.
By: N. Miami, FL 33180

### Certificate of service

I/we, James Littlejohn, certify that on Jan 26, 2007 I/we caused to be mailed a true and correct copy of the above and foregoing **OPPOSITION TO PLAINTIFFS MORTGAGE FORECLOSURE COMPLAINT, AND PLEA OF NUL TIEL RECORD**

by certified mail, return receipt requested to Florida Default Law Group PL
his personal capacity,                                  P.O. Box  25 018
Tampa, FL 33622-5018

James Littlejohn
James Littlejohn
1977 N.E. 119th Rd
N. Miami, Florida 33181

**Exh. [P]**



16478-0
N

**Exh. K1**

IndyMac Bank
8900 Bastion Drive
PO BOX 4045
Kalamazoo Michigan 48003-4045



**IndyMac Bank.**
Home Loan Servicing

LEROY WILLIAMS
1977 NE 119TH RD
NORTH MIAMI FL 33161-3319

Speedpay Date: 06/19/07

RE: Account Number: 3001585912

Dear Leroy Williams,

This letter is to confirm the transaction that you authorized by phone to make payment to IndyMac Bank.

Details regarding the transaction appear below:

Payment Amount:              $15,720.66
Transaction fee:             $15.00
Total Transaction Amount:    $15,735.66

ACH Date:                    06/19/07
ACH Draw On:                 Washington Mutual Bank
Last Four Digits of
Checking/Savings Account:    9156
Confirmation Number:         0002091863

The ACH draft to make this payment will draw funds from your checking account. Please retain this letter for your records.

If you have any questions, please contact us at 1-800-781-7399 or send an e-mail to servicing@indymacbank.com.

Sincerely,

Home Loan Servicing

08929-2
N

IndyMac Bank
8900 Beatrice Drive
PO BOX 4045
Kalamazoo Michigan 49003-4045

# Exh. K2



**IndyMac Bank.**

Home Loan Servicing

LEROY WILLIAMS
1977 NE 119TH RD
NORTH MIAMI FL 33181-3319

Speedpay Date: 09/29/07

RE: Account Number: 3001585912

Dear Leroy Williams,

This letter is to confirm the transaction that you authorized by phone to make payment to IndyMac Bank.

Details regarding the transaction appear below:

| | |
|---|---|
| Payment Amount: | $43,314.51 |
| Transaction fee: | $15.00 |
| Total Transaction Amount: | $43,329.51 |

| | |
|---|---|
| ACH Date: | 09/29/07 |
| ACH Draw On: | Suntrust Bank |
| Last Four Digits of Checking/Savings Account: | 7107 |
| Confirmation Number: | 0002396516 |

The ACH draft to make this payment will draw funds from your checking account. Please retain this letter for your records.

If you have any questions, please contact us at 1-800-781-7399 or send an e-mail to servicing@indymacbank.com.

Sincerely,

Home Loan Servicing

15348—6
N

IndyMac Bank
8900 Beatrice Drive
PO BOX 4045
Kalamazoo Michigan 49003-4045

**Exh. K3**



**IndyMac Bank.**
Home Loan Servicing

LEROY WILLIAMS
1977 NE 119TH RD
NORTH MIAMI FL 33181-3319

Speedpay Date: 08/09/07

RE: Account Number: 3001585912

Dear Leroy Williams,

This letter is to confirm the transaction that you authorized by phone to make payment to IndyMac Bank.

Details regarding the transaction appear below:

Payment Amount:              $14,438.17
Transaction fee:              $15.00
Total Transaction Amount:     $14,453.17

ACH Date:                     08/09/07
ACH Draw On:                  Wachovia Bank, Na
Last Four Digits of
Checking/Savings Account:     2850
Confirmation Number:          0002331941

The ACH draft to make this payment will draw funds from your checking account.  Please retain this letter for your records.

If you have any questions, please contact us at 1-800-781-7399 or send an e-mail to servicing@indymacbank.com.

Sincerely,

Home Loan Servicing

# Exh. K4

26764—1
N

IndyMac Bank
6900 Beatrice Drive
PO BOX 4045
Kalamazoo Michigan 49003-4045



**IndyMac Bank.**
Home Loan Servicing

LEROY WILLIAMS
1977 NE 119TH RD
NORTH MIAMI FL 33181-3319

**Speedpay Date:** 07/29/07

RE: Account Number: 3001585912

Dear Leroy Williams,

This letter is to confirm the transaction that you authorized by phone to make payment to IndyMac Bank.

Details regarding the transaction appear below:

| | |
|---|---|
| Payment Amount: | $15,818.09 |
| Transaction fee: | $15.00 |
| Total Transaction Amount: | $15,833.09 |
| | |
| ACH Date: | 07/29/07 |
| ACH Draw On: | First Tennessee Bank, Na |
| Last Four Digits of Checking/Savings Account: | 7330 |
| Confirmation Number: | 0002286192 |

The ACH draft to make this payment will draw funds from your checking account. Please retain this letter for your records.

If you have any questions, please contact us at 1-800-781-7399 or send an e-mail to servicing@indymacbank.com.

Sincerely,

Home Loan Servicing



EXHIBIT [ ] (1)
IndymacBank pg

**Exh. K5**

February 10, 2007

Leroy Williams
1977 NE 119th Rd
Miami FL 33181

SUBJECT: Credit Reporting Dispute for Loan Number 3001585912

Dear Leroy Williams :

After reviewing your account history, I understand the events surrounding the late reporting of the December 1, 2006 payment.

A correction has been submitted to the credit bureaus in order to remove the 30 day late payment reported to the credit bureaus on January 5, 2007 for the December 1, 2006 payment.

Please allow 15 to 30 business days for each credit reporting agency to update your credit report with this information.  Please retain a copy of this letter for your records.

If you have questions or would like more information about your loan, please visit our website at www.indymacbank.com.  By clicking on Log In to My Mortgage, you will be directed to My Mortgage Login where you can register your account, view loan information and contact us via Secure Messaging.

Sincerely,

Tena Anderson
Correspondence/Research Dept.

R9078 012
011

www.indymacbank.com

2/12/2019                                Miami-Dade Official Records - Print Document **Exh. M**

CFN 2007R0615640 OR BK 25716 Pa 1859 (1pa)
RECORDED 06/20/2007 08:57:58
HARVEY RUVIN, CLERK OF COURT, MIAMI-DADE COUNTY, FLORIDA
LAST PAGE

IN THE CIRCUIT COURT OF THE ELEVENTH
JUDICIAL CIRCUIT IN AND FOR DADE COUNTY, FLORIDA
CIVIL ACTION

DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE
UNDER THE POOLING AND SERVICING AGREEMENT SERIES
EAST 2006-A3 (CSFB),

            Plaintiff

vs.                     DIVISION

                  07 - 18226 CA 02

JAMES LITTLE JOHN A/K/A JAMES LITTLEJOHN;  THE UNKNOWN SPOUSE OF JAMES LITTLE
JOHN A/K/A JAMES LITTLEJOHN;  LEROY WILLIAMS; MACK WELLS;  CYNTHIA L
WILCOXSON; ANY AND ALL UNKNOWN PARTIES CLAIMING BY, THROUGH, UNDER, AND
AGAINST THE HEREIN NAMED INDIVIDUAL DEFENDANT(S) WHO ARE NOT KNOWN TO BE
DEAD OR ALIVE, WHETHER SAID UNKNOWN PARTIES MAY CLAIM AN INTEREST AS SPOUSES,
HEIRS, DEVISEES, GRANTEES, OR OTHER CLAIMANTS; ATTORNEYS' TITLE INSURANCE FUND,
INC.; LANCASTER MORTGAGE BANKERS, LLC; FIRST COMMERCIAL CORP.; CITY OF NORTH
MIAMI;  STATE OF FLORIDA - DEPARTMENT OF REVENUE; CAPITAL ONE BANK; TENANT #1,
TENANT #2, TENANT #3, and  TENANT #4 the names being fictitious to account for parties in possession
            Defendant(s).
      _____ /   **NOTICE OF LIS PENDENS**

To the above-named Defendant(s) and all others whom it may concern:

    You are notified of the institution of this action by the above-named Plaintiff, against you seeking to foreclose a
mortgage recorded in Official Records Book 23966, Page 3465, on the following property in DADE County, Florida:

    LOT 103, BLOCK 14 OF THE SANS SOUCI ESTATES, ACCORDING TO THE PLAT THEREOF,
    AS RECORDED IN PLAT BOOK 50, AT PAGE 86, OF THE PUBLIC RECORDS OF MIAMI-DADE
    COUNTY, FLORIDA

Dated this 14th day of ___June___, 2007.

                        Echevarria, Codilis & Stawiarski
                        P.O. Box 25018
                        Tampa, Florida 33622-5018
                        (813) 251-4766

                        By: _____
                        E. Tyler Sansing
                        FLORIDA BAR NO. 0028380
                        Andrea D. Pidala
                        FLORIDA BAR NO. 0022848

INDYMAC-CONV~R-ejaysha

FILE NUMBER: F07016531                    DOC_ID: M000105

**Book25716/Page1859      CFN#20070615640**                **Page 1 of 1**



# Exh. [N]

CFN  2007R0831508
OR Bk 25873 Ps 26241 (1ps)
RECORDED 08/22/2007 08:58:38
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
LAST PAGE

# ASSIGNMENT OF MORTGAGE

SPACE FOR RECORDING ONLY F.S.695.25

**FOR VALUE RECEIVED**, on or before May 15, 2007, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED**, ("Assignor") whose address is **DON BRADLEY** 7700 W. Parmer Lane, Bldg D, Austin, Texas 78729, assigned, transferred and conveyed to: **DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE UNDER THE POOLING AND SERVICING AGREEMENT SERIES 2005-AB (CHF),** ("Assignee") whose address is 460 Sierra Madre Villa Ave, Suite 101, Mail Stop HB 01-04, Pasadena, CA 91107, its successors and/or assigns, all of the right, title, and interest of Assignor in and to that certain Mortgage (the "Mortgage") dated October 20, 2005 and recorded November 16, 2005 in Official Records Book 23965 at Page 3465 of the public records of DADE County, Florida, encumbering the following-described real property:

>    **LOT 103, BLOCK 14 OF THE SANS SOUCI ESTATES, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 90, AT PAGE 86, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA**

as the same may have been amended from time to time; together with the Note and indebtedness secured thereby.

    MORTGAGOR(S):  LEROY WILLIAMS

    **IN WITNESS WHEREOF,** Assignor has executed and delivered this Instrument on _July 31_____, 2007.

Signed, sealed and delivered
in the presence of:

Witness
Typed Name _Georgia Salinor_.

Witness
Typed Name _Sherry Brown_

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED
By: _____

Typed Name: _D.L. Bradley_
Title: Vice President

Attest: _____

Typed Name: _Paige Holen_
Title: Vice President

(Affix Corporate Seal)

**STATE OF TEXAS**
**COUNTY OF WILLIAMSON**

    **BEFORE ME,** the undersigned, personally appeared _Don Bradley_ and _Paige Holen_ as Vice President and Vice President respectively, of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED** known to me to be the persons that executed the foregoing instrument, and acknowledged that they executed the foregoing as its duly authorized officers and that such execution was done as the free act and deed of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED** this _31_ day of _July_____, 2007.

_____
Notary Public: _Mai T. L. Thao_
My commission expires:



Recording requested by, prepared by and return to:
Echeverria, Codilis & Stawiarski
P.O. Box 25018

FILE_NUMBER: F07015531

**\*F07015531\***

DOC_ID: M001100

**\*M001100\***



PAGE 1 OF 1

**EMC**
Mortgage Corporation
*Proven Performance*

P.O. Box 293150
Lewisville, TX 75029-3150

**Exh. S1**

## BILLING STATEMENT

Statement Date:                                        03/02/07
Loan Number:                                      0014596589

📞 Automated Information Line:
1-800-723-3004

💻 Visit our Web Site:
www.emcmortgageservicing.com

**WESTERN UNION** Pay by Phone:
1-877-472-9362
*Pay by phone at no cost!*

☐ Check here if your address or phone numbers have changed and complete the form on the reverse side

86702-0010386-003

LEROY WILLIAMS
1977 NE 119TH RD
NORTH MIAMI FL 33181-3319

PROPERTY ADDRESS:   1977 NE 119TH RD
MIAMI FL 33181

### ACCOUNT INFORMATION

| | |
|---|---|
| Loan Number | 0014596589 |
| Interest Rate | 10.1250% |
| Current Principal Balance* | 397,632.88 |
| Current Escrow Balance | 0.00 |
| Year-to-Date: Principal Paid | -713.94 |
| Year-to-Date: Interest Paid | -4,068.97 |
| Year-to-Date: Taxes Paid | 0.00 |
| Year-to-Date: Hazard Insurance Paid | 0.00 |
| Late Charge Fee (per month) | 177.36 |

*This is your Principal Balance only, not the amount required to pay your loan in full.

### PAYMENT SUMMARY

| | |
|---|---|
| Payment Due Date | 01/01/07 |
| Principal & Interest | $3,547.29 |
| Escrow Payment | 0.00 |
| Total Past Due | 10,641.87 |
| Late Charge | 354.72 |
| Returned Check Fee | 75.00 |
| Speedpay Fee | 19.90 |
| Total Amount Due | 14,638.78 |

### IMPORTANT MESSAGES

EMC is writing regarding the collection of your loan, and any information obtained will be used for that purpose.

### ACCOUNT ACTIVITY

| TRANSACTION DESCRIPTION | DUE DATE | TRAN DATE | TOTAL RECEIVED | PRINCIPAL | INTEREST | ESCROW | OPTIONAL PRODUCTS | OTHER | SUSPENSE |
|---|---|---|---|---|---|---|---|---|---|
| Returned Check | 03/07 | 03/02 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -9.95 | 0.00 |
| Returned Check | 02/07 | 03/02 | 0.00 | -193.88 | -3,353.41 | 0.00 | 0.00 | 0.00 | 0.00 |
| Returned Check | 01/07 | 03/02 | 0.00 | -192.26 | -3,355.03 | 0.00 | 0.00 | 0.00 | 0.00 |
| Speedpay Fee | | 03/02 | 9.95 | 0.00 | 0.00 | 0.00 | 0.00 | 9.95 | 0.00 |
| Returned Check Fee | | 03/02 | -25.00 | 0.00 | 0.00 | 0.00 | 0.00 | 25.00 | 0.00 |



**IndyMac Bank**

**Exh. S2**

Property Address: 1977 NE 119TH RD,
NORTH MIAMI, FL 33181

015616  RE

#BNDDXCT
#6682195851003020#

LERDY WILLIAMS
1877 NE 118TH RD
MIAMI  FL  33181-3318

### Account Information

| Account Information as of | 02/26/07 |
|---|---|
| Loan Number | 3001585912 |
| Interest Rate | 8.250% |
| Loan Balance | $1,484,924.50 |
| Escrow Balance | $8,792.21 |
| Unapplied Funds | $4,613.19 |
| Funds Advanced by IMB (T.Z) | $ .00 |
| Principal Paid YTD | $2,098.63 |
| Interest Paid YTD | $20,439.37 |
| Property Taxes Paid YTD | $ .00 |
| Hazard Insurance Paid YTD | $4,293.75 |

| Primary Phone Number | (305) 695 3505 |
|---|---|
| Secondary Phone Number | (305) 654 0888 |

For statement questions,
please call Customer Service at
1.800.781.7399.

### Payment Information

|  |  |
|---|---|
|  | $11,269.00 |
|  | $3,169.17 |
|  | $ .00 |
|  | $ .00 |
|  | $14,438.17 |
|  | $ .00 |
|  | $14,438.17 |
|  | $563.45 |
|  | $40.00 |
|  | $15.00 |
|  | $ .00 |
|  | $15,056.62 |
|  | $16,620.07 |

**Payment Due:**
**03/01/07**

### Additional Information

Unless otherwise agreed upon, additional funds may be applied to advances prior to being applied to fees/charges.

Itemized detail available upon request.

Payment calculation includes Late Charge fee.

| Date | Transaction | Total | Principal/Deferred Interest | Interest | Escrow | Fees/Misc. |
|---|---|---|---|---|---|---|
| 02/26/07 | Funds Applied | 14,438.17 | 1,052.91 | 10,236.09 | 3,169.17 |  |
| 02/26/07 | Funds Applied | 14,453.17 | 1,045.72 | 10,223.28 | 3,169.17 | 15.00 |

### Important Messages

**TAX SEASON IS JUST AROUND THE CORNER – ARE YOU PREPARED?**
If you already know you're getting a refund, you don't have anything to worry about. But for many of us, tax season means that we'll owe money, and not a small amount either. Know your options. An Indymac Bank Home Equity Line is the perfect solution to cover a variety of expenses including income tax. It's easy to open with no application fees or bank related closing costs. Use only what you need, when you need it, and the interest you pay may be up to 100% tax deductible (You may wish to consult with your financial advisor to see how this loan may benefit you). Call us toll free at 1.877.307.0178 to find out more.

**AS AN INDYMAC CUSTOMER, YOU GET EXTRA SAVINGS.**
For a limited time, we are offering you $500 off our already low closing costs when you originate a new first mortgage through Indymac Bank Home Loan Servicing (offer does not apply to home equity loans, Mod Xpress or Indymac Xpress). To get started, just call us today at 1.866.217.2834.

**ACCESS YOUR 2006 YEAR-END INTEREST STATEMENT ONLINE!**
Did you know that by registering your mortgage loan online, not only can you have convenient, 24/7 access to your mortgage information, but to your 2006 Year-End Interest Statement as well? Read the back of this statement to find out more.





**EMC**
Mortgage Corporation

PAGE 1 OF 3

P.O. Box 141358
Irving, TX 75014-1358

**Exh. S3**

## BILLING STATEMENT

| Statement Date: | 11/29/06 |
|---|---|
| Loan Number: | 0014596589 |

☎ Automated Information Line:
1-800-723-3004

💻 Visit our Web Site:
www.emcmortgageservicing.com

65526-0000041-001

LEROY WILLIAMS
1977 NE 119TH RD
NORTH MIAMI FL 33161-3319

☐ Check here if your address or phone numbers have changed and complete the form on the reverse side.

PROPERTY ADDRESS:   1977 NE 119TH RD
MIAMI FL 33181

## ACCOUNT INFORMATION

| | |
|---|---|
| Loan Number | 0014596589 |
| Interest Rate | 10.1250% |
| Current Principal Balance* | 397,823.53 |
| Current Escrow Balance | 0.00 |
| Year-to-Date: Principal Paid | 1,830.44 |
| Year-to-Date: Interest Paid | 33,662.41 |
| Year-to-Date: Taxes Paid | 0.00 |
| Year-to-Date: Hazard Insurance Paid | 0.00 |
| Late Charge Fee (per month) | 177.36 |

*This is your Principal Balance only, not the amount required to pay your loan in full.

## PAYMENT SUMMARY

| | |
|---|---|
| Payment Due Date | 12/01/0 |
| Principal & Interest | $3,547.2 |
| Escrow Payment | 0.0 |
| Late Charge | 354.7 |
| Speedpay Fee | 9.9 |
| Total Amount Due | 3,911.9 |

## IMPORTANT MESSAGES

Beginning 11/07/2006 make your payment through our automated phone system or online at no cost! Call 1-800-723-3004 or visit www.speedpay.com. Standard fees apply for payments made with the assistance of a Customer Service Representative.

Your mortgage payment for the current month has not been received. A late charge has been assessed. Please remit the total amount due to reinstate your account. If you cannot remit the total amount due, please contact our office at 1-800-436-7397.

We have reviewed the items included in the total amount of advances made by your previous servicer that carried over when your loan transferred to EMC. For your convience, we have initialized these amounts as shown in the Account Activity.

**IMPORTANT YEAR-END INFORMATION**

In order for us to report your deductible mortgage interest paid in 2006, the Internal Revenue Service (IRS) requires that you furnish your Social Security Number(s) to us. Failure to provide this information may result in a $50 penalty assessed by the IRS. Please take a moment to update the W9 Certification form on the back of your monthly mortgage statement and return it with your mortgage payment. Or, contact our Customer Service Department at 1-800-723-3004.

Your monthly billing statement is new and improved, giving you more information about your account.

**BEAR STEARNS** | RESIDENTIAL MORTGAGE

ANNOUNCING: Bear Stearns Residential Mortgage Corporation, an affiliate of EMC, now offers mortgage refinancing. Call 1-866-658-BEAR today!

## ACCOUNT ACTIVITY

| TRANSACTION DESCRIPTION | DUE DATE | TRAN DATE | TOTAL RECEIVED | PRINCIPAL | INTEREST | ESCROW | OPTIONAL PRODUCTS | OTHER | SUSPENSE |
|---|---|---|---|---|---|---|---|---|---|
| Late Charge | | 11/14 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 177.36 | 0.00 |
| Late Charge | | 11/16 | 177.36 | 0.00 | 0.00 | 0.00 | 0.00 | 177.36 | 0.00 |
| Payment | 11/06 | 11/29 | 3,547.29 | 189.06 | 3,358.23 | 0.00 | 0.00 | 0.00 | 0.00 |

(Continued on the following page)



**Exh. T.**

LEROY WILLIAMS
1977 NE 119th RD
MIAMI FL 33181

Dear Customer(s)

Effective 05/01/2007, EMC Mortgage Corporation, EMC Mortgage Corporation will transfer the servicing of your mortgage loan to Indy Mac, a division of One West Bank. The transfer or the servicing of your loan does not affect any term or condition of your mortgage contract, other than terms directly related to the servicing of your account. Your account number will change and the new account number is noted above. Key information regarding the servicing of your account is provided below.

Should you have questions relating to the transfer of servicing or need information regarding your account prior to 05/01/2007. please contact Indy Mac's Customer Call Center at (800) 781-7399.

New Servicer Contact Information :
As of 05/01/2007, EMC's Customer Care Center will assist you with questions regarding the transfer or servicing or any other questions relating to your account. You may reach EMC's Customer Care Center at (800) 723-3004, between 7:30 a.m. - 6:00 p.m. Central Standard Time Information concerning EMC. You can also obtain information using EMC's Automated Telephone system or by speaking with a Customer Care Center Representative. Please be sure to have your account number available when you call.

As of 05/01/2007, all written inquiries should be sent to EMC at the following address. Please be sure to indicate your account number on all correspondence to ensure prompt response to your inquiry

> EMC Mortgage Corporation
> PO Box 293150
> Lewisville, TX  75029-3150

Making Payments:
**The date that IndyMac will stop accepting a payment from you is 06/3/2007. The date that EMC will start accepting payments from you is 0605/2007. Please make all checks payable to EMC and send all payments due on or after 06/05/2007 to the address on the reverse side. If you use a Bill Pay Service, you will also need to inform them of this new payment address.**

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is inactive bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.



# Exh. Y



# North Miami Police Report
## Summary

North Miami Police Department
FLD131800

Print Date/Time: 01/31/2018 10:28
Login ID: ndesir
Case Number: 2008-00032762

ORI Number:

## Case

Case Number: 2008-00032762
Location: 1977 NE 119TH RD
NORTH MIAMI, FL 33181
Reporting Officer ID: 2051 - Cravero

Incident Type: Burglary, Structure
Occurred From: 10/21/2008 14:00
Occurred Thru: 10/22/2008 14:30
Disposition:
Disposition Date:
Reported Date: 10/22/2008 14:35 Wednesday

## Offenses

| No. | Group/ORI | Crime Code | Statute | Description | Counts |
|-----|-----------|------------|---------|-------------|--------|
| 1 | State | 2200 | 810.02(4)(a) | Burglary of Structure | 1 |

## Subjects

| Type | No. | Name | Address | Phone | Race | Sex | DOB/Age |
|------|-----|------|---------|-------|------|-----|---------|
| Suspect | 1 | Leoni, Jonathan D | 1397 CONSERVANCY DR E TALLAHASSEE | | White | Male | 08/05/1961 47 |
| Victim | 1 | Gordon, Richard Anthony | 1977 NE 119TH RD NORTH MIAMI, FL 33181 | (786)278-1235 | Black | Male | 01/22/1984 24 |
| Victim | 2 | Littlejohn, James Melvin | 1977 NE 119TH RD NORTH MIAMI, FL 33181 | (786)222-1168 | Black | Male | 12/04/1951 56 |
| Victim | 3 | Symonette, Maurice | 1977 NE 119TH RD NORTH MIAMI, FL 33181 | (786)859-9421 | Black | Male | 04/24/1959 49 |

## Arrests

| Arrest No. | Name | Address | Date/Time | Type | Age |
|------------|------|---------|-----------|------|-----|

## Property

| Date | Code | Type | Make | Model | Description | Tag No. | Item No. |
|------|------|------|------|-------|-------------|---------|----------|
| 10/22/2008 | Stolen | Jewelry/Precious Metal | | | EBEL WATCH | | 5 |
| 10/22/2008 | Stolen | US Currency | | | $20 | | 2 |
| 10/22/2008 | Stolen | Tools/Equipment | | | POWER TOOLS | | 3 |
| 10/22/2008 | Stolen | Wallet | | | BLACK WALLET | | 1 |
| 10/22/2008 | Stolen | Radio | | | BOSH RADIO | | 4 |

## Vehicles

| No. | Role | Vehicle Type | Year | Make | Model | Color | License Plate | State |
|-----|------|--------------|------|------|-------|-------|---------------|-------|
| 1 | | Light Truck | 2008 | Ford | | Silver | 424KJG | FL |

②

Exh. Y

IncidentNarratives.txt

Incident Number:  2008-00032782

I/O Code    = O
Call Date   = 10/22/2008
Call Time   = 14:36
Shift Code  = B
Time Disp   = 14:50
Time Arrv   = 15:00
Time Comp   = 17:00
Grid        = 630X
Occurred
From Date   = 10/21/2008
From Time   = 14:00
To Date     = 10/22/2008
To Time     = 14:30
SRC/Call    = 1
Agency      = NM
1st Loc/Occurred = 1977 NE 119 RD, NORTH MIAMI, FL 33181
2nd Loc/Occurred = ,,
Bus/Area    =
1st Disp To    = 1977 NE 119 RD, NORTH MIAMI, FL 33181
2nd Disp To    = ,,
Report Officer  = GCRAVERO - CRAVERO,GARY
Backup Officer  = MNOEL - NOEL, MERCY
Approved By      = KBETHEL - BETHEL,KENNETH
Drug Type   =
Drug Qty    =
Drug UoM    =
Drug Value  =
Firearm Fin =
Other Responding Officers:
MREID - REID, MILTON

| TYPE | DESCRIPTION | AC STATUTE | UCR |
|------|-------------|------------|-----|
| 1 | BURGLARY-STRUCTURE | C 810.02 | 100 |

Comment:

Narrative:
MEMBERS OF THE NMPD STRIKE TEAM WERE DISPATCHED REFERENCE SUSPICIOUS PERSONS
IN THE SAN SOUCI AREA. IT WAS DETERMINED THAT THE SUSPICIOUS PERSONS WERE
RESIDENTS AT 1977 NE 119 RD. A MARKED UNIT WAS REQUESTED REFERENCE A
FORECLOSURE DISPUTE AT LISTED LOCATION. CONTACT WAS MADE WITH TWO WHITE
MALES AT THE LISTED LOCATION. THEY PROVIDED DOCUMENTATION REGARDING THE
ON-GOING FORECLOSURE AND CIVIL DISPUTE WITH THE RESIDENTS AND OWNER. THE
BANK REPRESENTATIVES ADVISED THAT PER THE BANK, THEY WERE ON THE PREMISES TO
REPLACE THE FRONT DOOR LOCK AND TAKE INTERIOR PICTURES. THEY CLAIMED THAT
THE HOUSE WAS SUPPOSED TO BE VACANT.THEY FURTHER STATED THAT THEY DID CHANGE
THE LOCKS ,AND ENTERED THE HOUSE AND COMPLETED PHOTOGRAPHS. LITTLEJOHN AND
GORDON STATED THAT DRAWERS WERE RANSACKED AND SOME ITEMS WERE TAKEN. THEY
ALLEGE THAT THE BANK REPRESENTATIVES TOOK THE PROPERTY. THE TRUCK AND
TRAILER WERE INSPECTED BY THE VICTIMS BUT NONE OF THE MISSING PROPERTY WAS
LOCATED IN THE TRUCK. BECAUSE OF THE CIVIL DISPUTE INVOLVING THE
FORECLOSURE, THE BANK REPS REMOVED THE PAD LOCK FROM THE FRONT DOOR ALLOWING
ACCESS TO THE RESIDENTS. AS A RESULT OF THE SETTLED DISPUTE, THE TWO W/M
BANK REPS WERE ALLOWED TO LEAVE. THEY WERE ADVISED TO HAVE THE BANK OBTAIN
PROPER COURT ORDERS OR EVICTION PAPERS IN THE FUTURE TO AVOID ANY
CONFLICTS.NOT UNTIL AFTER THEY LEFT THE SCENE, WITNESS SYMONETT ADVISED



THESE OFFICERS THAT HE OBSERVED THE TWO W/M'S CARRYING A BLACK BOX FROM THE
HOUSE, BUT COULD NOT IDENTIFY THE ITEM. HE BELIEVES THAT THE BOX WAS A
"BOSH" RADIO. GORDON ADVISED THAT HE IS MISSING A BLACK WALLET CONTAINING
$20.00. LITTLEJOHN ADVISED THAT HE IS MISSING SOME POWER TOOLS AND WILL
COMPLETE A LOSS LISTING FORM. SYMONETT ADVISED THAT HE IS MISSING A "EBEL"
WATCH WORTH $8000.00. THE PICK UP TRUCK IS REGISTERED TO ENTERPRISE LEASING
5105 JOHNSON RD COCONUT CREEK, FL. CRIME SCENE WAS NOT REQUESTED REFERENCE
THE ALLEGED SUSPECTS ADMITTED TO HAVING BEEN INSIDE THE RESIDENCE.

